# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

Rebekah J. Maurer, *et. al.,*

        *Plaintiffs,*

    v.

Garrett D. Zulauf *et. al.,*

        *Defendants.*

8:26-CV-359
(AMN/MJK)

---

Rebekah J. Maurer, Plaintiff *pro se*
Lauren C. Maurer Plaintiff *pro se*

Mitchell J. Katz, U.S. Magistrate Judge

To The Honorable Anne M. Nardacci, U.S. District Judge:

## ORDER AND REPORT-RECOMMENDATION

Plaintiffs commenced this action on March 6, 2026, by filing a Complaint. ("Compl.," Dkt. 1). Plaintiffs also filed motions for leave to proceed *in forma pauperis* ("*IFP*") and for the appointment of counsel. (Dkts. 2, 3, 6). The Clerk sent the Complaint, *IFP* applications and motion for the appointment of counsel to the Court for review.

## I.    BACKGROUND

The Complaint alleges that an officer stopped the car Plaintiffs were in for an inspection "ignor[ing] [the] valid inspection." (Dkt. 1, ¶ 4). The officer "held" Plaintiffs "for about 30 minutes" and "demanded

1

[Plaintiffs] both to show identification." (*Id.*). There was a large police presence and a false citation was later issued. (*Id.*). Plaintiffs were "told [] to try to prove to the judge that [the] inspection was valid." (*Id.*). Plaintiffs were "[t]errified and upset" because of the false citation and the "excessive police presence." (*Id.*). Plaintiffs allege violations of their Fourth and Fourteenth Amendment rights, and each seeks monetary damages.

## II.   *IFP* APPLICATION

Plaintiffs declare in their *IFP* application that they are unable to pay the filing fee. (Dkt. 2). After reviewing their applications, this Court finds that Plaintiffs are financially eligible for *IFP* status.

## III.   STANDARD OF REVIEW

In addition to determining whether Plaintiffs meet the financial criteria to proceed *IFP,* courts must consider the sufficiency of the allegations set forth in the complaint. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii). Courts shall dismiss a case, at any time, if they determine that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *Id.*

When determining whether an action is frivolous, a court must consider whether the complaint lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also* 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process and discourage the waste of judicial resources. *See Neitzke*, 490 U.S. at 327; *see also Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Courts have a duty to show liberality toward *pro se* litigants and must use extreme caution when ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000). But courts must still determine that a claim is not frivolous before permitting a plaintiff to proceed. *See Id.* (finding that a district court may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

3

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

Additionally, Fed. R. Civ. P. 8(a)(2) requires pleadings to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Ashcroft*, 556 U.S. at 678). A pleading that contains allegations that "'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)).

## IV.  DISCUSSION

The Court denies Plaintiffs' motion for the appointment of counsel *without prejudice* and recommends the District Court:

> A. dismiss the Complaint under Fed. R. Civ. P. 8 *without prejudice and with leave to amend*;

4

B. dismiss the Complaint under Fed. R. Civ. P. 10 *without prejudice and with leave to amend*;

C. dismiss the Complaint *without prejudice and with leave to amend* because the Complaint is silent as to when Plaintiffs' purported claims accrued, not allowing the Court to ascertain whether their claims are timely;

D. dismiss the Complaint against the St. Lawrence County Sheriff's Department *with prejudice and without leave to amend*;

E. dismiss the Complaint *without prejudice and with leave to amend* to the extent it alleges a claim against St. Lawrence County;

F. dismiss the Complaint *without prejudice and with leave to amend* to the extent it alleges a claim against Defendant Zulauf, in his individual capacity; and

G. dismiss the Complaint *with prejudice and without leave to amend* to the extent it alleges a claim against Defendant Zulauf in his official capacity; and

H. allow Plaintiffs the opportunity to amend their Complaint.

### A.    Fed. R. Civ. P. 8

The Court recommends dismissal of the Complaint *without prejudice and with leave to amend* under Fed. R. Civ. P. 8. Pleadings must contain, among other things, three things: first "a short and plain statement of the claim showing that the pleader is entitled to relief," second, "a short and plain statement of the grounds for the court's jurisdiction," and third, "a demand for the relief sought[.]" Fed. R. Civ.

5

P. 8(a)(1)-(3). "Although 'no technical form is required,' the Federal Rules make clear that each allegation contained in the pleading 'must be simple, concise, and direct.'" *Cole v. Smrtic*, No. 1:24-CV-847, 2024 WL 4870495 (MAD/CFH), at \*2 (N.D.N.Y. 2024) (quoting Fed. R. Civ. P. 8(d)). Allegations "so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Here, the Court cannot glean from the Complaint as pleaded when the traffic stop took place, whether Defendant Zulauf, or some other law enforcement officer, issued Plaintiffs the citation they complain about, and asked Plaintiffs for their identification and/or "held" them. (Dkt. 1, ¶ 4). As pleaded, the Complaint does not comply with Rule 8 and the Court therefore recommends dismissal *without prejudice and with leave to amend.*

### B.  Fed. R. Civ. P. 10

The Court recommends dismissal of the Complaint *without prejudice and with leave to amend* under Fed. R. Civ. P. 10. "[T]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). A party not named in the caption of the complaint is not a party to the

action. *See Abbas v. U.S.*, No. 10-CV-0141, 2014 WL 3858398, at \*2 (W.D.N.Y. Aug. 1, 2014) (holding that the failure to name the individual defendants against whom the plaintiff intends to assert claims makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims").

Here, the Complaint refers to "two sheriff vehicles, a NY State Trooper, and a border patrol vehicle." (Dkt. 1, pg. 3). With such scant information, the Court is unable to discern whether Plaintiffs intended to name as defendants the sheriffs who operated the "two sheriff vehicles", the NY State Trooper, and/or the officers who operated the "border patrol vehicle." (Dkt. 1). Thus, the Court recommends dismissal of the Complaint *without prejudice and with leave to amend.*

### C.    Statute of Limitations

"In section 1983 actions, the applicable limitations period is found in the general or residual [state] statute [of limitations] for personal injury actions." *Dibenedetto v. Coley*, No. 24-CV-1029, 2024 WL 4662979, at \*1 (2d Cir. 2024) (quoting *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) (quotation marks omitted). So "New York's three-year

7

statute of limitations for unspecified personal injury actions governs section 1983 actions in New York." *Id.* (citation omitted). However, "federal law governs the determination of the accrual date (that is, the date the statute of limitations begins to run) for purposes of the statute of limitations in a section 1983 action." *Ormiston*, 117 F.3d at 71.

As pleaded, the Complaint is silent as to when Plaintiffs' purported claims accrued, not allowing the Court to ascertain whether their claims are timely. And if untimely, whether equitable tolling would be applicable to save Plaintiffs' claims. The Court therefore recommends dismissal *without prejudice and with leave to amend*. If the District Court accepts this recommendation and permits Plaintiffs to file an amended pleading, they should be directed to include the date on which the underlying events took place.

> **D.   The Complaint should be dismissed against the St. Lawrence County Sheriff's Department.**

The Court recommends dismissal of the Complaint against Defendant St. Lawrence County Sheriff's Department *with prejudice and without leave to amend* because they are not a proper party to this action. "A department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore,

municipal departments . . . are not amenable to suit[.]" *Coston v. Conway*, No. 19-CV-1552 (GLS/ATB), 2020 U.S. Dist.LEXIS 131785, at *8 (N.D.N.Y. June 15, 2020) (quoting *Hoisington v. County of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999)). Accordingly, the Court recommends dismissal of any claims asserted against Defendant St. Lawrence County Sheriff's Department.

The Court assumes that the Plaintiffs intended to name St. Lawrence County as a defendant. With that assumption, the Complaint still fails to state a claim against the County. "[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012). A plaintiff establishes the existence of a policy or custom by plausibly alleging: "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a

9

failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Kurtz v. Hansell*, No. 20-CV-3401, 2021 WL 1143619, at *18 (S.D.N.Y. Mar. 24, 2021) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)). Here, the Complaint lacks any allegations plausibly suggesting that St. Lawrence County has a policy, custom or practice that caused the purported deprivation of Plaintiffs' constitutional rights. The Court therefore recommends dismissal *without prejudice and with leave to amend.*

### E. The Complaint should be dismissed against Defendant Zulauf in his official capacity.

The Court recommends dismissal of the Complaint against Defendant Zulauf *with prejudice and without leave to amend* to the extent it alleges claims against him in his official capacity. "It is settled that a suit against a municipal officer in his official capacity is functionally equivalent to a suit against the entity of which the officer is an agent." *Ware v. City of Lackawanna,* No. 08-CV-2009, 2009 WL 3464057, at *2 (W.D.N.Y. Oct. 21, 2009) (cleaned up). So official capacity suits are treated as "another way of pleading an action against

an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (internal citation omitted). Therefore, "[a]s long as the government entity receives notice and an opportunity to respond, an official[ ]capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Ware*, 2009 WL 3464057, at *2 (quoting *Graham*, 473 U.S. at 166). And for that reason, courts routinely dismiss official capacity claims as redundant or duplicative of claims against the municipality itself. *See Tuff v. Vill. Of Yorkville Police Dep't*, No. 16-CV-473 (TJM), 2017 WL 401241 (N.D.N.Y. Jan. 30, 2017).

Here, the Complaint alleges claims against Defendant Zulauf in his official capacity and possibly St. Lawrence County. Therefore, the Court recommends dismissing the claims against Defendant Zulauf, in his official capacity, *with prejudice and without leave to amend.*

### F. The Complaint should be dismissed against Defendant Zulauf in his individual capacity.

The Court recommends dismissal of the Complaint *without prejudice and with leave to amend* to the extent it seeks to impose liability against Defendant Zulauf in his individual capacity because there are no allegations that describe his personal involvement in the

11

purported deprivation of Plaintiffs' constitutional rights. To establish individual liability under § 1983, "a plaintiff must show . . . that the defendant caused the plaintiff to be deprived of a federal right." *Raspardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014). Plaintiffs can establish "personal involvement" by plausibly alleging that: (1) "[t]he defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring." *Littlejohn v. City of New York*, 795 F.3d 29, 314 (2d. Cir. 2015).

Here, there are no allegations establishing Defendant Zulauf's personal involvement in the purported deprivation of Plaintiffs' constitutional rights. So the Court recommends dismissal of the

Complaint as to Defendant Zulauf, in his individual capacity, *without prejudice and with leave to amend.*

### G. Plaintiffs' motion for counsel is denied without prejudice.

There is no right to the appointment of counsel in civil matters. *See Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). Appointment of counsel must be done carefully to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance. *See Cooper v. A. Sargenti, Inc.*, 877 F.2d 170, at 172-73 (2d. Cir. 1989). Before the Court conducts a substantive analysis of Plaintiffs' request, Plaintiffs must make a showing that they have sought representation and that their requests have been declined. *See Cooper,* 877 F.2d at 173 (citing *Jenkins v. Chemical Bank,* 721 F.2d 876 (2d Cir. 1983). This showing is typically satisfied when a plaintiff identifies the attorneys they have contacted and attaches to their motion letters from attorneys declining their request for representation. *See Terpening v. McGinty*, No. 1:21-CV-1215 (GTS/CFH), 2022 WL 2115265, at *1 (N.D.N.Y. June 13, 2022) (citations omitted); *see also* N.D.N.Y. Pro Se Handbook, at 5.

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *See Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, several factors must be carefully considered by the Court in ruling upon such a motion. As a threshold matter, the Court should ascertain whether the indigent's claims seem likely to be of substance. Even in a case in which a litigant's position seems likely of substance, the appointment of counsel is made only in "exceptional circumstances." *Cardona v. Comm'r of Soc. Sec.,* No. 3:20-CV-558, 2020 WL 8575100, at *2 (D. Conn. Dec. 2, 2020) (quoting *Kirkpatrick v. Astrue,* Civ. No. 08-0407, 2008 WL 879407, at *1 (W.D. La. Mar. 31, 2008)). When considering whether such circumstances exist, the court should then consider:

> The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). This is

14

not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *See Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge*, 802 F.2d at 61).

Plaintiffs have not met their initial burden. Although Plaintiffs allege that they contacted the Legal Aid Society (Canton, New York) and Alexander Coffin & Associates, LLC, Plaintiffs do not include any declination letters. (Dkt. 6, at ¶ 1). Even if Plaintiffs' motion did include the requisite declination letters, that does not end the Court's inquiry. *See* Local Rule 83.2(c). This action is in its earliest stages, and, as discussed above, the Court recommends dismissal of the Complaint. For that reason, Plaintiffs' motion for the appointment of counsel is denied without prejudice.

### H. Plaintiffs should be given the opportunity to Amend.

Generally, before the court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the court should afford a plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present

when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, there is no futility. The Court therefore recommends that the Complaint be dismissed *without prejudice and with leave to amend except* as to Plaintiffs' claim against the St. Lawrence County Sheriff's Department and Defendant Zulauf in his official capacity which the Court recommends be dismissed *with prejudice and without leave to amend.*

If the District Court permits this action to proceed and Plaintiffs amend their pleading, they are reminded of their obligations under Fed. R. Civ. P. 8, which requires their amended complaint to contain a short and plain statement showing that they are entitled to relief. Plaintiffs are also reminded of their obligations under Fed. R. Civ. P. 10 to specifically identify all potential defendants in the caption of the action. While the amended pleading should contain sufficient facts to provide Defendants with notice of the claims against them, it should not contain material that is not germane to their claims.

## VI.   CONCLUSION

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Plaintiffs' motions to proceed *in forma pauperis*

(Dkts. 2, 3) are **GRANTED**, and it is further

**ORDERED**, Plaintiffs' motion for the appointment of counsel **IS**

**DENIED WITHOUT** PREJUDICE; and it is further

**RECOMMENDED** that the District Court:

A. **DISMISS** the Complaint under Fed. R. Civ. P. 8 **WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**;

B. **DISMISS** the Complaint under Fed. R. Civ. P. 10 **WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**;

C. **DISMISS** the Complaint **WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** because the Complaint is silent as to when Plaintiffs' claims accrued, not allowing the Court to ascertain whether their claims are timely;

D. **DISMISS** the Complaint as to the St. Lawrence County Sheriff's Department **WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**;

E. **DISMISS** the Complaint **WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** to the extent it alleges a claim against St. Lawrence County;

F. **DISMISS** the Complaint **WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** to the extent it alleges a claim against Defendant Zulauf, in his individual capacity;

17

G. **DISMISS** the Complaint **WITH PREJUDICE AND WITHOUT LEAVE TO AMEND** to the extent it alleges a claim against Defendant Zulauf in his official capacity; and

H. allow Plaintiffs the opportunity to amend their Complaint.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: April 30, 2026

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge

18

Case 8:26-cv-00359-AMN-MJK   Document 8   Filed 04/30/26   Page 19 of 112

Houston v. Collerman, Not Reported in Fed. Supp. (2016)
2016 WL 6267968

2016 WL 6267968
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eddie HOUSTON, Plaintiff,
v.
COLLERMAN, et. al., Defendants.

9:16-CV-1009 (BKS/ATB)
|
Signed 10/26/2016

**Attorneys and Law Firms**

EDDIE HOUSTON, 08-A-3122, Mid-State Correctional Facility, P.O. Box 2500, Marcy, New York 13403, Plaintiff, pro se.

### AMENDED DECISION AND ORDER [1]

[1] On October 20, 2016, the Court issued a Decision and Order upon initial review of plaintiff's complaint. Dkt. No. 4. This Amended Decision and Order is issued to correct clerical errors in the Conclusion of the Order.

BRENDA K. SANNES, United States District Judge

**I. Introduction**

**\*1** The Clerk has sent to the Court for review a civil rights action filed by pro se plaintiff Eddie Houston. Dkt. No. 1 ("Compl."). Plaintiff has not paid the statutory filing fee for this action and seeks leave to proceed in forma pauperis. Dkt. No. 2 ("IFP Application").

**II. IFP Application**

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 W L 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). Upon review of plaintiff's IFP Application, the Court finds that plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York. Plaintiff's IFP application (Dkt. No. 2) is granted. [2]

[2] Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

**III. Initial Screening**

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

[3] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

**\*2** Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 20 of 112

Houston v. Collerman, Not Reported in Fed. Supp. (2016)
2016 WL 6267968

the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown,* 335 Fed.Appx. 102, 104 (2d Cir. 2009).

## IV. Summary of the Complaint[4]

[4] Plaintiff annexed exhibits to the complaint. Dkt. No. 1-1. To the extent that the exhibits are relevant to the incidents described in the complaint, the Court will consider the complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.,* 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz,* No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in plaintiff's complaint with the utmost leniency. *See*, *e.g.*, *Haines v. Kerner,* 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**\*3** Plaintiff, an inmate currently being held at Mid-State Correctional Facility ("Mid-State C.F."), asserts claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). The incidents that form the foundation for this complaint occurred while plaintiff was confined at Elmira Correctional Facility ("Elmira C.F."). *See* Compl., *generally.* On July 13, 2013, plaintiff filed a grievance claiming that defendants Officer Copestick ("Copestick") and Officer Schieber ("Schieber") harassed him, on more than one occasion, about his medication. *See id.* at 6; *see* Dkt. No. 1-1 at 3-5. On August 5, 2013, after an investigation into the allegations, the Superintendent of Elmira C.F. denied plaintiff's grievance. *See* Dkt. No. 1-1 at 5.

On September 30, 2013, plaintiff was on his way to the masjid to participate in Ramadan when he was stopped by Copestick and Schieber and directed to the wall for a pat-frisk. *See* Compl. at 5. While plaintiff's hands were on the wall, Schieber "violently kicked" his legs from underneath him. *See id.* Schieber "stomped" on plaintiff's ankles while Copestick attempted to choke plaintiff. *See id.* During the assault, the officers yelled racial slurs. *See id.* Defendant Sergeant Collerman ("Collerman") watched the officers beat plaintiff. *See* Compl. at 5. As a result of the attack, plaintiff's eyeglasses were broken, his ankle was swollen, and he could not walk. *See id.* at 5, 9.

At approximately 5:00 p.m., plaintiff received medical treatment for complaints of pain in his right big toe and swelling in his right foot. *See* Dkt. No. 1-1 at 19. Plaintiff

Case 8:26-cv-00359-AMN-MJK   Document 8   Filed 04/30/26   Page 21 of 112

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

received Motrin and was advised to follow with sick call requests, if needed. *See id.* A "use of force/inmate injury" report was compiled.[5] *See id.* At approximately 7:15 p.m., plaintiff, a diabetic, told a medical provider that he had not received his daily "medication." *See id.* The provider ordered various medications to be delivered to plaintiff on a daily basis. *See id.*

[5]   The Use of Force report was not annexed as an exhibit to the complaint.

On October 1, 2013, plaintiff received a misbehavior report charging him with assault on staff and with refusing a direct order and search.[6] *See* Compl. at 5. On the same day, plaintiff was placed in confinement in the Special Housing Unit ("SHU"). *See* Dkt. No. 1-1 at 19. On October 3, 2013, plaintiff attended a Hearing regarding the misbehavior report.[7] *See* Dkt. No. 1-1 at 10. On November 3, 2013, plaintiff received a copy of the hearing disposition dismissing all charges. *See* Dkt. No. 1-1 at 11; Dkt. No. 1 at 5.

[6]   The name of the officer who served the misbehavior report is not clearly legible on the Hearing Disposition annexed as an exhibit. *See* Dkt. No. 1-1 at 10. Plaintiff does not allege that Copestick, Schieber, or Collerman delivered the report. The disposition form indicates that the charges were reported by Schieber. *Id.* The misbehavior report was not annexed as an exhibit to the complaint.

[7]   The officer who presided over the hearing was a Captain at Elmira C.F. However, the name of the hearing officer is not clearly legible. *See* Dkt. No. 1-1 at 10-11.

On November 3, 2013, plaintiff was released from the SHU. *See* Compl. at 5. While plaintiff was in the SHU, he was unable to participate in Ramadan, denied religious meals, denied parole, and excluded from mental health programs. *See id.*

Construed liberally, the complaint contains the following claims: (1) Copestick and Schieber violated plaintiff's Eighth Amendment rights with use of excessive force (Fifth, Fifteenth, Twentieth, and Twenty-Second Causes of Action); (2) Collerman failed to protect plaintiff from the assault in violation of plaintiff's Eighth Amendment rights (Fifteenth Cause of Action); (3) defendants were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment (Sixth, Seventh, and Fifteenth Causes of Action); (4) Copestick and Schieber retaliated against plaintiff in violation of plaintiff's First Amendment rights (Twenty-First Cause of Action); (5) plaintiff's First Amendment rights to religious freedom were violated (Fourth Cause of Action); (6) plaintiff's Fourteenth Amendment rights to due process and equal protection were violated (First, Second, Third, Sixth, Sixteenth, and Eighteenth Causes of Action); (7) defendants failed to investigate plaintiff's complaints and follow grievance procedures (Tenth and Thirteenth Causes of Action); (8) perjury claims against officers who filed the misbehavior report (Eleventh and Seventeenth Causes of Action); and (9) supervisory claims against DOCCS (Eighth, Ninth, Twelfth, Fourteenth, Nineteenth, Twenty-Third, Twenty-Fourth, Twenty-Fifth, and Twenty Sixth Causes of Action). *See* Compl., *generally.* Plaintiff seeks compensatory damages, injunctive relief, and criminal charges against defendants (Eleventh and Seventeenth Causes of Action). *See* Compl. at 9-13.

## V. Analysis

### A. Eleventh Amendment

**\*4** The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer,* 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, *see Quern v. Jordan,* 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York,* No. 93-CV-1298 (RSP/GJD), 1996 W L 156764 at \*2 (N.D.N.Y. 1996).

Here, insofar as plaintiff seeks an award of money damages pursuant to Section 1983 against DOCCS, those claims are

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 22 of 112

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

dismissed as plaintiff seeks relief from a defendant immune from suit under section 1983. *See LeGrand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983); *see Meehan v. Kenville*, 555 Fed.Appx. 116 (2d Cir. 2014); *see Simmons v. Gowanda Corr. Facility*, No. 13-CV-0647, 2013 WL 3340646, at \*1 (W.D.N.Y. July 1, 2013) ("the New York State Department of Corrections and [the named correctional facility] enjoy the same Eleventh Amendment immunity from suit in federal court as enjoyed by the state itself") (quoting *Posr. v. Court Officer Shield No. 207*, 180 F.3d 409, 411 (2d Cir. 1999)).

### B. Eighth Amendment

### 1. Excessive Force Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases —not whether a certain quantum of injury was sustained."). "Accordingly, when considering the subjective element of the governing Eighth Amendment test, a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness." *Wynter v. Ramey,* No. 11-CV-0257 (DNH/DEP), 2013 W L 5465343, at \*5 (N.D.N.Y. Sept. 30, 2013) (citations omitted).

Plaintiff has identified the time, location and individuals involved in the alleged assault. Thus, the Court finds that plaintiff's Eighth Amendment excessive force claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Failure To Intervene

**\*5** The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985). Moreover, allegations that an officer failed to intervene and prevent assaults are sufficient to state an Eighth Amendment failure to protect claim. *See Rogers v. Artus*, No. 13-CV-21, 2013 WL 5175570, at \*3 (W.D.N.Y. Sept. 11, 2013). To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). In order to succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew of and consciously disregarded that risk." *See Walsh v. Goord*, No. 07-CV-0246, 2007 WL 1572146, at \*9 (W.D.N.Y. May 23, 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1970)). In addition, a failure-to-protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety. *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988).

At this early stage of the proceeding, plaintiff has alleged enough to require a response from Collerman to plaintiff's claim that he failed to protect plaintiff from the assault by Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 3. Deliberate Indifference to Serious Medical Needs

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component of an Eighth Amendment deliberate indifference

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 23 of 112

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

medical claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted). Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.

In this instance, even assuming plaintiff's injuries were sufficiently serious, plaintiff must allege facts to demonstrate that defendants acted with a sufficiently culpable state of mind. *See Hathaway*, 99 F.3d at 553. Plaintiff claims that his medical treatment was inadequate because his ankle was not x-rayed until he was transferred to "his next facility," two months after the alleged incident. *See* Compl. at 10. "When the basis of a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702). "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." *Demata*

*v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (internal citations omitted).

**\*6** Here, the complaint is void of any facts establishing that any defendant deliberately delayed plaintiff's medical treatment. On the day of the alleged attack, plaintiff received medical attention and prescription medication. *See* Dkt. No. 1-1 at 19. Plaintiff was treated on three other occasions in October 2013 for foot pain before undergoing x-rays on November 14, 2013. Dkt. No. 1-1 at 20-21. During those visits, plaintiff received ice packs, Motrin, and refused Ibuprofen. See id. Plaintiff does not allege that his condition deteriorated during that time. *See Rodriguez v. City of New York*, 802 F.Supp. 477, 482 (S.D.N.Y. 2011) (finding that the plaintiff did not establish that his condition worsened as a result of a delay between his request and receipt of medical attention). Plaintiff does not allege that he sought and was refused medical treatment during this two month time period. *See Kee v. Hasty*, No. 01 Civ. 2123, 2004 W L 807071, at \*29 (S.D.N.Y. April 14, 2004) (holding that the plaintiff's Eighth Amendment claims were overly conclusory because the inmate failed to specify the dates on which he was denied proper treatment, the nature of his needs on those dates, and the nature of the treatment that was purportedly denied by the defendants). The complaint lacks any facts to plausibly suggest that any defendant knew of the severity of plaintiff's injury and the risk posed by any delay in his treatment.

Plaintiff, a diabetic, also claims that he was unable to read or see for over one year because his eye glasses were not replaced until over a year after the assault. *See* Compl. at 10. The complaint does not contain any facts suggesting that plaintiff made any complaints or sick call requests to any defendant related to his eyeglasses. Plaintiff also failed to assert facts suggesting that he made any defendant "aware of the serious harm could occur" if he was not provided with his glasses. *See Myrie v. Calvo/Calvoba*, 591 F.Supp.2d 620, 628 (S.D.N.Y. 2008) (holding that the complaint did not suggest that any defendant was deliberately indifferent to the plaintiff's vision problems).

Plaintiff's Eighth Amendment allegations are also subject to dismissal based upon the failure to plead personal involvement on the part of any defendant. It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, "a Section 1983

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 24 of 112

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 W L 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). The complaint lacks any facts suggesting that Copestick, Schieber, or Collerman were involved in plaintiff's medical treatment or refused to allow plaintiff to receive medical attention. In the absence of factual allegations sufficient to plausibly suggest that any defendant was personally involved, the complaint fails to state a cognizable claim against him. Consequently, plaintiff's Eighth Amendment claims for deliberate indifference to plaintiff's medical needs are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

## C. First Amendment

### 1. Retaliation

Plaintiff alleges that Copestick and Schieber assaulted him in retaliation for plaintiff's grievance against them. *See* Compl. at 6,13. To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).

**\*7** It is well-settled that filing a grievance is constitutionally protected conduct. *Johnson v. Eggersdorf*, 8 Fed.Appx. 140, 144 (2d Cir. 2001); *Graham v. R.J. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted). While there is no "bright line" defining the limits of the temporal relationship, courts in the Circuit have held that an adverse action taken within three months after a protected activity can reasonably be perceived as retaliatory. *See Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001); *see also Ashok v. Barnhart*, No. 01-CV-1311, 289 F.Supp.2d 305, 314 (E.D.N.Y. Oct. 30, 2003) (the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months).

At this juncture, the Court finds that plaintiff's retaliation claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Religious Claims

Plaintiff alleges that the defendants violated his religious rights because he was unable to participate in Ramadan and denied his religious meals as a direct result of the false misbehavior report. Dkt. No. 1 at 5-6.

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective. *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir.

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 25 of 112

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

1988) (citations omitted). A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591).[8] A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir. 1996). Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted).

[8]    The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

**\*8**  In this case, plaintiff has not alleged who issued the misbehavior report and it is not attached to the complaint. An inmate "has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997). While a false misbehavior report may give rise to a claim under § 1983 "when done in retaliation for the exercise of a

constitutional right," *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015), here there is no such allegation. While the deprivation of religious meals in SHU may be sufficient to state a claim, *see Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. 2016); *Skates v. Shusda*, No. 9:14-CV-1092 (TJM/DEP), 2016 WL 3882530, at \*\*4-5 (N.D.N.Y. May 31, 2016), here there is no indication that the defendants had any personal involvement in that conduct. The allegations, without more, fail to plausibly suggest that any defendant burdened plaintiff's right to freely practice his religion. Thus, plaintiff's First Amendment claims against are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### D. Fourteenth Amendment

#### 1. Equal Protection/Discrimination

Plaintiff claims that the September 30, 2013 assault was racially motivated. *See* Compl. at 6, 12. "When verbal harassment and simultaneous physical abuse ... are considered together, [courts] have little doubt concluding that plaintiff's allegations [are] sufficient to state a § 1983 claim for discrimination on the basis of race. *Cole v. Fischer*, 379 Fed.Appx. 40, 43 (2d Cir. 2010). "Under the Fourteenth Amendment's Equal Protection clause, a plaintiff may be able to recover for a physical assault that would not meet the objective threshold for Eighth Amendment excessive force claims, if the defendant's conduct was motivated by racial or religious discrimination." *Bhuiyan v. Wright*, No. 9:06-CV-409 ATB, 2011 WL 1870235, at \*9 (N.D.N.Y. May 13, 2011) (citation omitted).

At this juncture, plaintiff has sufficiently plead a Fourteenth Amendment equal protection claim to warrant a response from Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Due Process

Plaintiff claims that defendants violated his due process rights when they failed to replace plaintiff's eyeglasses. *See* Compl. at 10. Plaintiff also asserts that his Fourteenth Amendment rights were violated because he was improperly confined to the SHU without a hearing as a result of a

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 26 of 112

Houston v. Collerman, Not Reported in Fed. Supp. (2016)
2016 WL 6267968

false misbehavior report. *See id.* at 10. During his SHU confinement, was allegedly unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from mental health programs. *See id.*

### a. Property Claim

The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *Davis v. New York*, 311 Fed.Appx. 397, 400 (2d Cir. 2009) (An alleged loss of property, "whether intentional or negligent – will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.' ") (quoting *Hudson*, 468 U.S. 533). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983) (per curiam); *see also Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 360, 473-74 (S.D.N.Y. 1998) (dismissing the plaintiff's claim that defendants destroyed his eyeglasses in violation of his due process rights). Thus, plaintiff's due process claims related to his eyeglasses are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. SHU Confinement

**\*9** To establish a due process claim, plaintiff must establish: "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citation and internal quotation marks omitted). In this case plaintiff alleges that the false misbehavior report resulted in a SHU sentence. [9]

[9] The complaint contains conflicting factual allegations related to the length of plaintiff's SHU confinement. Plaintiff claims that after "one month of being housed in SHU," he was released. *See*

Compl. at 5. In the Third Cause of Action, plaintiff claims that he served "over 60 days in SHU." *See id.* at 9.

A prisoner "has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, (1995)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). In making this determination courts are to consider, "among other things, the duration and conditions of confinement." *J.S.*, 714 F.3d at 106; *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009). The conditions of confinement are to be considered "in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Davis*, 576 F.3d at 134; *Palmer*, 364 F.3d at 66 n.4.

Although the Second Circuit has "explicitly avoided" creating "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," the Court has established guidelines. *Palmer*, 364 F.3d at 65. Where the plaintiff is confined for "an intermediate duration –between 101 and 305 days – 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required.' " *Id.* (quoting *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000)). While confinements for less than 101 days "under normal SHU conditions may not implicate a prisoner's liberty interest," such confinements "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealy* or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer*, 364 F.3d at 65; *see Davis*, 576 F.3d at 133. [10]

[10] The Second Circuit has noted that "[i]n the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short –less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." *Palmer*, 364 F.3d at 65-66; *see Davis*, 576 F.3d at 133. Absent allegations in the complaint that the conditions of confinement were in some way

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 27 of 112
Houston v. Collerman, Not Reported in Fed. Supp. (2016)
2016 WL 6267968

atypical, however, many courts in this Circuit have granted motions to dismiss claims by plaintiffs with confinement exceeding thirty days when the plaintiffs failed to allege that the conditions of confinement were in some way atypical. *See, e.g., Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470 at *15 (S.D.N.Y. Sept. 29, 2014) (citing cases involving confinements of between forty and fifty days which were dismissed for failure to allege a protected liberty interest because there were no allegations of unusual confinement).

**\*10** In this case, the duration of the confinement, 30 to 60 days, "was not long enough to constitute an atypical and significant deprivation by itself," and the Court therefore must "look to the conditions of confinement." *Palmer*, 364 F.3d at 66; *see also Davis*, 576 F.3d at 133. Plaintiff claims that while he was confined in the SHU, he was unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from his mental health program. *See* Compl. at 5, 10; Dkt. No. 1-1 at 1.

It is well established that prisoners do not have a constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "Where a state has created a statutory scheme for parole, the Due Process Clause protects prisoners insofar as they 'have a legitimate expectancy of release that is grounded in the state's statutory scheme.' " *Barna v. Travis*, 239 F.3d 169, 170–72 (2d Cir. 2001) (per curiam) (citing *Greenholtz*, 442 U.S. at 11–13). "New York's parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna*, 239 F.3d at 171. Plaintiff has also failed to plead that his inability to participate in mental health programs impacted a protected liberty interest. *See Nieves v. Prack*, No. 6:15-CV-6101, 2016 W L 1165820, at *4 (W.D.N.Y. March 24, 2016) ("[Plaintiff's] claim that his inability ... to participate in various educational, vocational, rehabilitative or self-help programs might have hindered his ability to receive an early parole or release is ... speculative and fails to allege interference with a protected liberty interest.") (citations omitted). Here, the complaint lacks facts establishing when, how many times, and who deprived plaintiff of the right to attend his mental health program. With respect to plaintiff's religious claims, courts have found that the deprivation of communal religious services does not constitute an atypical and significant hardship. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998) (finding that eighteen days in administrative segregation, including loss of exercise and access to religious services, did not constitute atypical and significant hardship); *Holland v.*

*Goord*, No. 05-CV-6295, 2006 WL 1983382, at *7 (W.D.N.Y. July 13, 2006) (holding the inability to attend Muslim services and celebrate the end of Ramadan while confined in the SHU for seventy-seven days is not an atypical hardship).

Even assuming that plaintiff had pled facts sufficient to show that his confinement imposed an atypical and significant hardship, however, and therefore pled the existence of a valid liberty interest, the complaint fails to state a claim based upon the Fourteenth Amendment and due process. It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). In this case, a hearing regarding the charges was held within two days of plaintiff's receipt of the misbehavior report. Plaintiff does not allege that he was denied any procedural due process during that hearing. Moreover, the complaint lacks facts suggesting that any named defendant issued the misbehavior report or presided over the disciplinary hearings. Based upon the aforementioned, plaintiff's Fourteenth Amendment claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See Livingston v. Kelly*, 561 F.Supp.2d 329, 332 (W.D.N.Y. 2008) (dismissing plaintiff's false-report claims because the plaintiff failed to allege that the disciplinary hearings on the reports did not meet constitutional due process standards).

## E. Failure to Respond to Grievances and Failure to Investigate

**\*11** Plaintiff also claims that his constitutional rights were violated because the facility grievance program is "never followed." *See* Compl. at 11. There is no constitutional right of access to the established inmate grievance program. *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[p]articipation in an inmate grievance process is not a constitutionally protected right"); *Shell v. Brzezniak*, 365 F.Supp.2d 362, 369-70 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim"); *Cancel v. Goord*, No. 00. Civ. 2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983"); *Mimms v. Carr*, No. 09-CV-5740, 2011 W L 2360059, at *10 (E.D.N.Y. June 9, 2011) ("It is well-established that

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 28 of 112

Houston v. Collerman, Not Reported in Fed. Supp. (2016)
2016 WL 6267968

prison grievance procedures do not create a due-process-protected liberty interest.") (citing cases). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

To the extent that plaintiff attempts to assert a separate constitutional claim based upon the Inspector General's failure to investigate, the law is also clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 341-42 (S.D.N.Y. 2003) (Prisoners do not have a due process right to a thorough investigation of grievances.); *DeShaney v. Winnebego Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause confers no right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual); *Pine v. Sealy*, No. 9:09-CV-1198, 2011 W L 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials") (citing *Bernstein*, 591 F.Supp.2d at 460).

In this regard, plaintiff's claims do not involve a constitutional violation and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### F. Cause of Action for Criminal Charges/Perjury

"New York does not recognize a common law cause of action for [...] perjury." *Harris v. Summers*, No. 5:14-CV-0013 (LEK/DEP), 2014 W L 1340032, at *5 (N.D.N.Y. Apr. 3, 2014) (citing *Carvel v. Ross*, No. 12-CV-0722, 2011 W L 856283, at *12 (S.D.N.Y. Feb. 16, 2011) (dismissing the plaintiff's perjury claim because "there [is] no private right of action" for perjury)). Moreover, plaintiff's claim is not actionable because it is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual. *Harper v. New York Child Welfare Comm'rs*, No. 3:12-CV-0646 (NAM/DEP), 2012 WL 3115975, at *4 (N.D.N.Y. May 14, 2012) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Consequently, plaintiff's request to charge defendants with "perjury" is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### G. Injunctive Relief Against DOCCS

Plaintiff demands injunctive relief directing DOCCS to require "each officer" to wear body cameras to prevent future assaults and other related injunctive relief. *See* Compl. at 10-12. Plaintiff is presently confined at Mid-State C.F. and therefore, plaintiff's request for injunctive relief involving changes to the operation of security at Elmira C.F., is dismissed as moot. *See Edwards v. Horn*, No. 10 Civ. 6194, 2012 WL 760172, at *23 (S.D.N.Y. March 8, 2012) (dismissing the plaintiff's claim for injunctive relief because the plaintiff had been released from prison).

**\*12** Even assuming plaintiff's request is broader and intended to encompass all DOCCS facilities, the request is nonetheless improper and subject to dismissal. The PLRA provides "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of the particular plaintiff." 18 U.S.C. § 3626(a)(1)(A). "[A] proposed order directing the installation of securities cameras – is beyond the narrow scope permitted by the PLRA." *Barrington v. New York*, 806 F.Supp.2d 730, 750 (S.D.N.Y. 2011) (dismissing the plaintiff's request for injunctive relief seeking an order directing Green Haven to install security cameras as overly broad and unnecessary to correct the alleged past violations of his rights). Accordingly, plaintiff's request for injunctive relief is dismissed.

### VI. Conclusion

**ORDERED** that plaintiff's in forma pauperis application (Dkt. No. 2) is **GRANTED**; [11] and it is further

[11]    Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form, and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

ORDERED that the following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) plaintiff's § 1983 claims for monetary damages against DOCCS; (2) constitutional claims based upon the failure to adhere to the grievance policy and investigate; and (3) plaintiff's claims related to perjury and filing criminal charges against defendants; and it is further

ORDERED that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment claims against defendants for deliberate indifference to plaintiff's serious medical needs; (2) First Amendment freedom of religion claims; (3) Fourteenth Amendment due process claims; and (4) claims for injunctive relief against DOCCS [12]; and it is further

[12]     If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

ORDERED that DOCCS is **DISMISSED** as a defendant herein; and it is further

ORDERED that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) the Eighth Amendment use of excessive force claims against defendants Copestick and Schieber; (2) the Eighth Amendment failure-to-intervene claim against defendant Collerman; (3) the First Amendment retaliation claims against defendants Copestick and Schieber; and (3) the Fourteenth Amendment equal protection claims against Copestick and Schieber; and it is further

ORDERED, that the Clerk shall issue summons and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the Summons and Complaint to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**\*13** ORDERED, that a response to the complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

ORDERED, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

ORDERED, in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), the Clerk of the Court is directed to provide plaintiff with copies of opinions from Westlaw and the Federal Appendix cited in this Decision and Order; and it is further

ORDERED that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

Dated: October 26, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6267968

---

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 9:16-CV-01009**<br>Houston v. Collman et al | — | N.D.N.Y. | Aug. 15, 2016 | Docket |

**WESTLAW**   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History**

There are no History results for this citation.

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 8:26-cv-00359-AMN-MJK   Document 8   Filed 04/30/26   Page 33 of 112

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)

2024 WL 4870495

2024 WL 4870495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,
v.
Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)
|
Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

### REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, United States Magistrate Judge

### I. In Forma Pauperis

**\*1** Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint. [1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

[1] The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's

complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

[2] Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

### II. Initial Review

#### A. Legal Standards

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

**\*2** Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)

2024 WL 4870495

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

**\*3** This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) [3] (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

[3]     Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

### B. Complaint

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983.

See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel." [4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

[4]  Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of charcter [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

**\*4**  Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga Disrict Attorney's Office, and the Supreme Court Appellate Division Third department. \*\* This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts [5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has

Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

5    Plaintiff did not provide any transcripts.

### C. Discussion [6]

6    As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

### 2. Heck v. Humphrey

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

 *5  As this Court, citing the District of Connecticut, has set forth:

 In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by

actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).

[ ]

Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at *3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards, No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at *7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at *7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

7    The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 37 of 112

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)
2024 WL 4870495

plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a <u>Heck</u> dismissal. The undersigned has included the <u>Heck</u> review for sake of completeness.

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge"[8] such claims would be barred by judicial immunity.

[8]    Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by <u>Rooker-Feldman</u>, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by <u>Younger</u>. <u>See</u> Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), <u>report and recommendation adopted</u>, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the <u>Rooker-Feldman</u> doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); <u>see also</u> Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

 **\*6**  "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017)

(citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Id. (quoting Mireles, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired

Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." McCray v. Lewis, No. 16-CV-3855 (WFK/VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official capacities, the suit is barred by the Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

**\*7** In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." Benyi v. New York, No. 3:20-CV-1463 (DNH/ML), 2021 WL 1406649, at *5 (N.D.N.Y. Mar. 23, 2021), report and recommendation adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).

Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at *5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at *5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)). [9]

[9]     Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition

to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

### III. Conclusion

**\*8** It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

[10] The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

[11] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4870495

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 1:24-CV-00847**<br>Cole v. Smrtic et al | — | N.D.N.Y. | July 08, 2024 | Docket |

WESTLAW  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (2)**

**Direct History (2)**

1. Cole v. Smrtic
2024 WL 4870495 , N.D.N.Y. , Nov. 21, 2024

*Report and Recommendation Adopted by*

2. Cole v. Smrtic
2025 WL 247901 , N.D.N.Y. , Jan. 21, 2025

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 3858398
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Shariff ABBAS, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 10–CV–0141S.
|
Signed Aug. 1, 2014.

**Attorneys and Law Firms**

Shariff Abbas, Flushing, NY, pro se.

## DECISION and ORDER

WILLIAM M. SKRETNY, Chief Judge.

### *INTRODUCTION*

**\*1** Plaintiff Shariff Abbas commenced this *pro se* action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., and other federal laws, alleging violation of his rights while detained at the Buffalo Federal Detention Facility ("BFDF") in Batavia, the Albany County Jail and the Perry County Correctional Center ("PCCC") in Uniontown, Alabama. Currently before the Court for review pursuant to 28 U.S.C. § 1915(e)(2)(B) is plaintiff's amended complaint [1], submitted in response to the Court's Order filed on August 16, 2013 ("August 16 Order") (Docket No. 6), which reviewed plaintiff's original complaint (Docket No. 4), dismissed several of the claims asserted therein, and granted plaintiff leave to file an amended complaint. For the reasons set forth below, plaintiff's FTCA claims against the United States related to his treatment at the BFDF may proceed and his remaining claims will be dismissed.

[1]   Plaintiff's amended complaint is accompanied by two voluminous bound volumes of exhibits captioned "Exhibit's [sic] Part 1", containing a Table of Contents and exhibits 1–18 and "Exhibit Part 2", containing a Table of Contents and exhibits 19–40. Given the voluminous nature of the exhibits, numbering hundreds of pages, and

the manner in which they are bound, which would make scanning them very difficult, the Court has not required the Clerk's Office to scan them into the court's electronic filing system. They will instead be maintained in paper form in a separate file in the Clerk's Office. *See* note to Docket No. 6.

### *DISCUSSION*

A. *Bivens Claims*

The August 16 Order directed, *inter alia,* that plaintiff's FTCA claims stemming from his detention at the Albany County Jail and the PCCC be dismissed; that plaintiff be granted leave to file an amended complaint adding *Bivens* [2] or other federal claims against individual deportation officers and other personnel at BFDF who he alleges violated his rights; and that in the even he failed to timely file an amended complaint as directed, the Court would issue an Order directing service of the complaint upon the United States as the sole defendant to his medical malpractice claims brought under the FTCA. (Docket No. 5).

[2]   *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

The August 16 Order noted that in addition to his FTCA claims, plaintiffs original complaint asserted a variety of violations of his constitutional rights by individual deportation officers and other personnel during his periods of detention at BFDF and that these claims would be actionable against individual defendants under the *Bivens* doctrine, which allows a plaintiff to pursue constitutional claims against federal officials in their individual capacities for actions taken under color of federal law. *See Lombardi v. Whitman,* 485 F.3d 73, 78 (2d Cir.2007) ("[W]here an individual 'has been deprived of a constitutional right by a federal agent acting under color of federal authority,' the individual may bring a so-called *Bivens* action for damages against that federal agent in an individual capacity, provided that Congress has not forbidden such an action and that the situation presents 'no special factors counseling hesitation in the absence of affirmative action by Congress.' ") (internal citations omitted) (*quoting Thomas v. Ashcroft,* 470 F.3d 491, 496 (2d Cir.2006). The Court determined, however, that the *Bivens* claims could not proceed because of plaintiff's failure to name the individual custody officers and other officials who are alleged to have violated his rights as defendants in

the caption of the complaint, as required by Rule 10(a) of the Federal Rules of Civil Procedure:

> **\*2** The Court cannot allow such *Bivens* claims to proceed, however, because of plaintiff's failure to name the individual custody officers and other officials who are alleged to have violated his rights as defendants in the caption of the complaint. Rule 10 of the Federal Rules of Civil Procedure provides that "[t]he title of the complaint must name all the parties" Fed.R.Civ.P. 10(a). Therefore, a party that is not named in the caption of a complaint or amended complaint is not a party to the action.

(August 16 Order at 16) (citations omitted). The Court proceeded to note that plaintiff's failure to name in the caption of the complaint the individual defendants against whom he wished to assert *Bivens* claims would make it infeasible for the Court to determine which of the individual custody officers mentioned in the body of the complaint should be deemed to be defendants to such claims, given the often ambiguous nature of his reference to such individuals. (*Id.* at 16–17). The Court therefore concluded that "[t]he way to remedy plaintiff's failure to name as defendants in the caption of his complaint those individuals against whom he may seek to assert *Bivens* claims, as suggested by the allegations set forth in the body of the complaint, is to afford him leave to file an amended complaint which conforms to the requirements of Rule 10(a)." (*Id.* at 17) (citations omitted). "Accordingly, plaintiff will be afforded the opportunity to file, as directed below, an amended complaint in which he shall name in the caption of the complaint, each of the individuals against whom he intends to assert a *Bivens* claim or claims, in a manner that conforms to the requirements of Rules 8(a) and 10(a) of the Federal Rules of Civil Procedure." (*Id.*).

The Court accordingly directed, in the Conclusion of the August 16 Order, that plaintiff be given leave to file an amended complaint conforming to the requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure, and the Court again explicitly advised plaintiff of his duty to list all defendants in the caption of the complaint:

> Plaintiff is reminded, as explained above, that if he wishes to assert *Bivens* or other claims against defendants other than the United States in the amended complaint, *he must name those individuals in the caption of the amended complaint* and set forth

specific allegations with respect to how those individuals violated his rights.

(*Id.* at 21). (emphasis added).

While plaintiff's amended complaint contains allegations that would support *Bivens* claims (*see* Amended Complaint, ¶¶ 17–42 *passim* ),[3] it does not name in the caption of the complaint any individuals against whom plaintiff is seeking to assert *Bivens* clams, nor does the section of the complaint captioned "PARTIES" list any individual defendants. While plaintiff does, in the section of the amended complaint captioned "CONCLUSION", set forth a list of "Federal Employees from (BFDF) Health Division" (Amended Complaint ¶ 57), which includes individuals mentioned elsewhere in the amended complaint in connection with plaintiff's allegations that would be relevant to *Bivens* claims, the individuals named therein are not listed as defendants in the caption of the amended complaint or in plaintiff's recital of the parties to this action at the beginning of the amended complaint; as noted *supra,* plaintiff lists only one defendant-the United States-in the complaint caption and in his recital of the parties. Moreover, plaintiff's statement of relief sought at the end of the amended complaint (captioned "PRAYER") demands judgment "against *the defendant.*" (*Id.* at p. 16) (emphasis added).[4]

3     Plaintiff divides his claims into two sections of the amended complaint, namely "Medical Malpractice" (Amended Complaint, p. 3–5, ¶¶ 8–16), which contains allegations supportive of his FTCA claims, and "U.S. D.H.S.-ICE Federal Agency and Custody Officers Abuses" (*Id.* at p. 5–14, ¶¶ 17–56), which contains allegations supportive of his *Bivens* constitutional claims. The Court notes, however, that a number of the allegations set forth in the "Federal Agency and Custody Officers Abuses" section of the complaint are relevant to his FTCA malpractice claims. *See, e.g.,* Amended Complaint, ¶ 21.

4     Plaintiff's failure to include in the caption of the amended complaint the names of any defendants against whom he is asserting *Bivens* claims is not the only instance of his disregard of the Court's directives regarding the form and content of his

amended complaint. The August 16 Order noted that many of the *Bivens* claims that plaintiff's allegations would support against individuals identified in the body of the complaint appeared to be barred by the statute of limitations. August 16 Order at 18. The Court accordingly directed as follows:

> In the amended complaint that plaintiff will be given leave to file, as provided below, in which he must demonstrate either that his *Bivens* claims stemming from his incarceration at BFDF are timely or, if any such Bivens claims are untimely, he must allege facts demonstrating why equitable tolling should be applied to the statute of limitations periods for such claims.

(August 16 Order at 19). As noted *supra,* the August 16 Order provided that plaintiff would be given leave to file an amended complaint with respect to his *Bivens* claims, and plaintiff was further advised, in this regard, "that he should address the timeliness of any *Bivens* claims that he asserts in the amended complaint and any argument as to why the limitations period applicable to such claims should be equitably tolled." (August 16 Order at 21). However, plaintiff's amended complaint does not address the timeliness issue or offer any basis for equitable tolling of the limitations period. Given the Court's dismissal herein of the *Bivens* claims based upon plaintiff's failure to identify the defendants against whom he seeks to assert such claims, the Court need not further address the timeliness issue.

Plaintiff further disregarded the August 16 Order to the extent that he reasserts claims stemming from his detention at the Albany County Jail from February 21, 2006–March 21, 2006, and the Perry County Correctional Center ("PCCC") in Uniontown Alabama from August 5, 2006–February 9, 2007. (Amended Complaint at ¶¶ 14, 15, 28–40). The August 16 Order dismissed the claims stemming from plaintiff's incarceration at those facilities pursuant to 28 U.S.C. § 1406(a) for improper venue. (August 16 Order at 13–14). Those claims remain dismissed.

**\*3** The Court's duty to construe liberally the pleadings of *pro se* litigants does not absolve *pro se* litigants from the duty to comply with the requirements of the Federal Rules

of Civil Procedure and court orders issued pursuant to those rules. *See, e .g., Caidor v. Onondaga County,* 517 F.3d 601, 605 (2d Cir.2008) (noting that *pro se* litigants are required to familiarize themselves with procedural rules and comply with such rules); *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir.1988) ("[W]hile *pro se* litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including *pro ses,* have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions.")). As discussed *supra,* this Court's previous order explained to plaintiff the requirement of Rule 10(a) that all defendants to an action be named and identified as such in the caption to the complaint, and the Court afforded him the opportunity to cure the defect in his initial complaint by filing an amended complaint naming all defendants. Plaintiff has inexplicably failed to comply with the Court's order and the requirement of Rule 10(a). Accordingly, to the extent that plaintiff seeks to bring *Bivens* claims against individual Custody Officers and other BFDF officials, *see* Amended Complaint, ¶ 58 ("Plaintiff want [sic] this Court to bring Justice against Federal Agency Employees who Violate constitutional law against Plaintiff's rights"), such claims must be dismissed in light of his failure to name those individuals as defendants in the caption of the amended complaint. *See, e.g., Ferdik v. Bonzelet,* 963 F.2d 1258, 1262–63 (9th Cir.1992) (dismissing action for refusal to comply with court orders to name defendants in the caption as required by Rule 10(a)).

Moreover, as explained in the August 16 Order (pp. 14–15), constitutional claims under *Bivens* cannot be brought against the only defendant named in the complaint, the United States. *See Robinson v. United States Bur. Of* Prisons, 244 F.Supp.2d 57, 66 (N.D.N.Y.2003) ("[A] *Bivens* action may not be maintained against the United States.") (citing *Washington v. DEA,* 183 F.3d 868, 872 n. 8 (8th Cir.1999). Nor can constitutional claims be asserted against the United States under the FTCA. *See Washington,* 183 F.3d at 873; *Russ v. United States,* 62 F.3d 201, 204 (7th Cir.1995) ("[C]onstitutional wrongs cannot be remedied through the FTCA,") (citing *FDIC v. Meyer,* 510 U.S. 471, 476, 114 S.Ct. 996, 1001–02, 127 L.Ed.2d 308(1994)).

Plaintiff having thus having failed to name a proper defendant to his *Bivens* claims, the Court concludes that his *Bivens* claims must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief can be granted.

B. *Treaty Claims*

The Conclusion section of the amended complaint invokes, as a basis for relief against defendant United States not raised in plaintiffs original complaint, treaties to which the United States is a signatory. Specifically, the amended complaint states "At such time and places the United States violates International Laws as A[sic] result the United States are not in compliance with Refugee Convention Requirements or The United Nations Convention against Torture Prohibitions." (Amended Complaint, § 57). It is well established that the United Nations Convention Against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, 23 I.L.M. 1027, ("CAT") does not give rise to a private right of action. *Renkel v. United States,* 456 F.3d 640, 644 (6th Cir.2006) ("As the Articles [of CAT] are not self-executing, they do not create private rights of action; therefore, any private lawsuit seeking to enforce the United States' obligations under the Convention must be based on domestic law."); *Wolinski v, Junious,* 2012 U.S. Dist. LEXIS 65889, at *18–19,2012 WL 1657576 (E.D.Cal. May 10, 2012) ("The CAT does not give rise to a private right of action because it is not self-executing.) (citing *Akhtar v. Reno,* 123 F.Supp.2d 191, 196 (S.D.N.Y.2000),

 **\*4** The United Nations Convention Relating to the Status of Refugees, adopted July 28, 1951, art. 26, 19 U.S.T. 6259, 6576, 189 U.N.T.S. 150, 172 ("Refugee Convention") likewise does not create a private right of action. *United States v. Casaran–Rivas,* 311 Fed. Appx. 269, 272 (11th Cir.2009) (unpublished) ("[A]rgument that the indictment violated the refugee Convention and CAT Treaty is without merit, as the Refuge[e] Convention and CAT Treaty are not self-executing, or subject to relevant legislation, and, therefore, do not confer upon aliens a private right of action to allege a violation of their terms."); *Reyes–Sanchez v. Ashcroft,* 261 F.Supp.2d 276, 288–89 (S.D.N.Y.2003) ("Because the Refugee Convention is not self-executing, it does not create individual rights.").

Accordingly, plaintiff's claims against the United States under CAT and Refugee Convention are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief may be granted.

C. *FTCA Claims*

The medical malpractice-related claims under the FTCA asserted by plaintiff in the amended complaint and stemming from his detention at BFDF may go forward against defendant United States.[5]

[5] As explained in the August 16 Order, plaintiff's allegations of medical malpractice and the failure to properly treat his serious medical condition are clearly cognizable under the FTCA when asserted against the United States. (August 16 Order at 6).

### *ORDER*

IT IS HEREBY ORDERED, that plaintiff's *Bivens* claims are dismissed with prejudice;

FURTHER, that plaintiff's claims under CAT and the Refugee Convention are dismissed with prejudice;

FURTHER, that the Clerk of the Court is directed to complete, on plaintiff's behalf, and to issue, a summons for service of process on defendant United States of America;

FURTHER, the Clerk of the Court is directed to send copies of the Summons, Amended Complaint,[6] and this Order by certified mail to the following, pursuant to Rule 4(i) of the Federal Rules of Civil Procedure:

[6] As explained in n. 1, *supra,* plaintiff's voluminous exhibits to the amended complaint are maintained in paper form in a separate file folder in the Clerk's Office.

• Attorney General of the United States, Main Justice Building, 10th and Constitution Avenues N.W., Washington, DC 20530;

• Civil Process Clerk, United States Attorney for the Western District of New York, United States Attorney's Office, USAO/WDNY, 138 Delaware Avenue, Buffalo, New York 14202.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 3858398

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 1:10cv00141**<br>ABBAS v. UNITED STATES OF AMERICA | — | W.D.N.Y. | Feb. 22, 2010 | Docket |

**History (6)**

**Direct History (1)**

1. Abbas v. U.S.
   2014 WL 3858398 , W.D.N.Y. , Aug. 01, 2014

**Related References (5)**

2. Abbas v. United States
   2013 WL 12424565 , W.D.N.Y. , Aug. 16, 2013

3. Abbas v. U.S.
   2015 WL 5770092 , W.D.N.Y. , Sep. 30, 2015

   *Vacated and Remanded by*

4. Shariff v. United States
   689 Fed.Appx. 18 , 2nd Cir.(N.Y.) , Apr. 26, 2017

5. Abbas v. United States
   2018 WL 10038793 , W.D.N.Y. , Feb. 28, 2018

6. Abbas v. United States
   2019 WL 4922173 , W.D.N.Y. , Oct. 04, 2019

**WESTLAW** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

DiBenedetto v. Coley, Not Reported in Fed. Rptr. (2024)

2024 WL 4662979

2024 WL 4662979
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Vincent DIBENEDETTO, Plaintiff-Appellant,

v.

Maurice COLEY, Defendant-Appellee. [*]

[*]  The Clerk of Court is respectfully directed to amend the caption accordingly.

24-1029-cv
|
November 4, 2024

Appeal from a judgment of the United States District Court for the Southern District of New York (Halpern, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Vincent Dibenedetto, pro se, Carmel, NY.

FOR DEFENDANT-APPELLEE: Joshua N. Cohen, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Mark S. Grube, Senior Assistant Solicitor General, and Ji Young Ryu, Law Intern, on the briefs), for Letitia James, Attorney General of the State of New York, New York, NY.

Present: GERARD E. LYNCH, MICHAEL H. PARK, EUNICE C. LEE, Circuit Judges.

**SUMMARY ORDER**

**\*1** Plaintiff-Appellant Vincent DiBenedetto, proceeding *pro se*, filed a 42 U.S.C. § 1983 lawsuit against New York state trooper Maurice Coley on July 11, 2022. In his operative complaint, DiBenedetto alleged that Coley violated his Fourth and Fourteenth Amendment rights during an August 2018 traffic stop and a traffic-court proceeding in April 2019. During the traffic stop, Coley allegedly asked DiBenedetto to surrender his unlocked phone, which he searched before demanding DiBenedetto's license and registration. Coley

ticketed DiBenedetto for an unspecified offense. DiBenedetto challenged that ticket at a traffic-court proceeding during which he claims Coley violated his due-process rights.

The district court granted Coley's motion to dismiss after concluding that DiBenedetto's claims were time-barred under New York's three-year statute of limitations for § 1983 claims and finding no basis for tolling the limitation periods. *See DiBenedetto v. Coley*, No. 22-CV-05926, 2024 WL 1216703, at *4 (S.D.N.Y. Mar. 21, 2024). We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal.

**I. *Rooker-Feldman***

Coley argues that the *Rooker-Feldman* doctrine deprived the district court of jurisdiction over DiBenedetto's traffic-court claims because he "complains of injuries caused by a state court judgment." But DiBenedetto seeks damages for Coley's misconduct in securing that judgment, not reversal of the judgment itself. The district court thus properly exercised jurisdiction because "*Rooker-Feldman* does not bar plaintiffs from seeking compensatory damages for misconduct that defendants pursued in obtaining state court judgments." *Dorce v. City of New York*, 2 F.4th 82, 104 (2d Cir. 2021) (quotation marks omitted).

**II. Timeliness**

"We review *de novo* a district court's grant of a defendant's motion to dismiss, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. A district court's legal conclusions, including its interpretation and application of a statute of limitations, are likewise reviewed *de novo*." *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011) (citations and quotation marks omitted). [1] "[A] statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015) (quotation marks omitted).

[1]  DiBenedetto proceeds pro se, so "[w]e liberally construe pleadings and briefs submitted by [him], reading such submissions to raise the strongest arguments they suggest." *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022) (quotation marks omitted).

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 50 of 112

DiBenedetto v. Coley, Not Reported in Fed. Rptr. (2024)
2024 WL 4662979

"In section 1983 actions, the applicable limitations period is found in the general or residual [state] statute [of limitations] for personal injury actions." *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) (quotation marks omitted). So "New York's three-year statute of limitations for unspecified personal injury actions governs section 1983 actions in New York." *Id.* (citation omitted). "State tolling rules govern[ ] ... except when inconsistent with the federal policy underlying the cause of action under consideration." *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 485 (1980) (quotation marks omitted). But "federal law governs the determination of the accrual date (that is, the date the statute of limitations begins to run) for purposes of the statute of limitations in a section 1983 action." *Ormiston*, 117 F.3d at 71.

**\*2** The district court correctly concluded that DiBenedetto's complaint was not timely as to his traffic-stop claims. Those claims accrued on the day of the injury—that is, the stop and search in August 2018—so his July 2022 filing came after the three-year limitations period had expired. *See Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994). Nor has DiBenedetto pleaded the facts required for equitable tolling or tolling by equitable estoppel under New York law. *See O'Hara v. Bayliner*, 89 N.Y.2d 636, 647 (1997) (describing the "extraordinary [f]ederal equitable tolling remedy"); *Zumpano v. Quinn*, 6 N.Y.3d 666, 673 (2006) (describing equitable estoppel for statute-of-limitation defenses). DiBenedetto points to the time he spent in fruitless state-court appeals of his traffic-violation conviction, which he appears to believe were required before he could bring this action. But DiBenedetto could have sued Coley for violating his Fourth Amendment rights independently of his state-court case. *See Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2019) ("[T]he settled rule is that exhaustion of state remedies is not a prerequisite to an action under [42 U.S.C.] § 1983." (quotation marks omitted)). Neither a mistake of law nor pro se status is sufficient for equitable tolling. *See Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 257 (2016); *Smith v. McGinnis*, 208 F.3d 13, 18 (2d Cir. 2000). We thus affirm the district court's dismissal of the traffic-stop claims as untimely.

DiBenedetto's traffic-court claims, however, may be timely. New York's Executive Order 202.8 and later extensions declared that "any specific time limit for the commencement, filing, or service of any legal action ... is hereby tolled" because of the state's disaster declaration in March 2020. *See* 9 N.Y.C.R.R. §§ 8.202.8, 8.202.67. The New York Court of

Appeals construes these executive orders as having "tolled all filing periods" from March 20, 2020 to November 3, 2020. *Favourite Ltd. v. Cico*, 42 N.Y.3d 250, 260 (2024). It is thus possible that DiBenedetto's traffic-court claims were timely filed. [2] But we need not decide whether the executive orders affect the statute of limitations here because DiBenedetto failed to state a claim as to the traffic-court proceedings, and "[w]e may affirm a district court's grant of a motion to dismiss on any basis supported by the record, including grounds upon which the district court did not rely." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 178 (2d Cir. 2023) (citations and quotation marks omitted).

[2]    Assuming the executive orders tolled the statute of limitations on DiBenedetto's claims, his traffic-stop claims would still have been untimely as of March 2022, but his due-process claims would have been timely until November 15, 2022, well after his July 2022 filing.

### III. Failure To State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quotation marks omitted). In other words, the complaint must raise more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

DiBenedetto's allegations about his traffic-court proceeding failed to state a claim. Liberally construed, DiBenedetto's complaint raises two claims relating to the proceeding. First, he alleges that Coley violated his due-process rights by giving false testimony as a witness. But witnesses have absolute immunity from § 1983 claims for their testimony, even when the witness is a police officer and gave false testimony. *Briscoe v. LaHue*, 460 U.S. 325, 335-36 (1983); *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012). DiBenedetto's false-testimony claim thus fails under Rule 12(b)(6).

Second, DiBenedetto alleges a conspiracy by Coley, the traffic-court judge, and the prosecutor to violate his civil right to a fair trial. In support, DiBenedetto points to the hostility of the traffic-court proceeding and to social-media connections among the three alleged conspirators. "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 51 of 112

DiBenedetto v. Coley, Not Reported in Fed. Rptr. (2024)

2024 WL 4662979

Cir. 1999). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (quotation marks omitted). Although § 1983 conspiracies may be proven by "circumstantial, rather than direct, evidence," *Pangburn*, 200 F.3d at 72, DiBenedetto alleged only a "gut feeling" that social-media "[f]riends help friends," without referencing any express or tacit agreement to inflict constitutional injury. Such "[d]iffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977). DiBenedetto also failed to allege how Coley could have "act[ed] in concert" to bring about his own false testimony, the prosecutor's questions about DiBenedetto's driving record, or the traffic- court judge's decision to bar questions about the cell-phone search.

**\*3**

\* \* \*

We thus conclude that DiBenedetto's complaint was properly dismissed because his traffic-stop claims were untimely and his traffic-court claims failed under Rule 12(b)(6). We have considered all of DiBenedetto's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

## All Citations

Not Reported in Fed. Rptr., 2024 WL 4662979

---

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (2)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| 1. **Docket 24-1029**<br>DiBenedetto v. Coley | — | C.A.2 | Apr. 19, 2024 | Docket |
| 2. **Docket 7:22-CV-05926**<br>DiBenedetto v. Coley et al | — | S.D.N.Y. | July 12, 2022 | Docket |

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (3)**

**Direct History (2)**

1.  DiBenedetto v. Coley
2024 WL 1216703 , S.D.N.Y. , Mar. 21, 2024

   *Affirmed by*

2.  DiBenedetto v. Coley
2024 WL 4662979 , 2nd Cir.(N.Y.) , Nov. 04, 2024

**Related References (1)**

3.  DiBenedetto v. Coley
2022 WL 4097266 , S.D.N.Y. , Sep. 02, 2022

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Kurtz v. Hansell, Not Reported in Fed. Supp. (2021)

2021 WL 1143619

2021 WL 1143619
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Shveta Kakar KURTZ, Daniel L. Kurtz, A.K., a minor child, and M.K., a minor child, Plaintiffs, v.
David HANSELL, as the Duly Appointed Commissioner of the New York City Administration for Children's Services, Division of Child Protection, New York Comptroller, City of New York, Yscary Rodriguez, individually and as a caseworker employed by ACS, Bhojranie Maygoo, as a caseworker employed by ACS, Eunice Iwenofu, as a caseworker employed by ACS, Brenda Lawson, as an ACS case manager/supervisor, Esperanza Sandoval, as a supervisor in the family support unit employed by ACS, Dr. Peter Fabricant, as a treating physician and state actor operating under color of law, Dr. Marie Lupica, treating physician and state actor operating under color of law, Dr. Ramzi Marwan Shaykh, as a treating physician, DR. Shari L. Platt, as a treating physician and state actor operating under color of law, Dr. Sheena Ranade, as a treating physician, LSW Karen Glass, as a state actor, Unnamed ACS Workers and Employees 1–10, Unnamed Employees and Workers of New York Presbyterian Hospital/Weill Cornell Medical Center 1–10, Unnamed Workers and Employees of Mt. Sinai Hospital 1–10, New York Presbyterian Hospital/Weill-Cornell Medical Center, Mt. Sinai Hospital, Administration for Children's Services, Defendants.

20 Civ. 3401 (PAE)
|
Signed 03/24/2021

**Attorneys and Law Firms**

Robert J. Del Col, Smithtown, NY, for Plaintiffs.

Thais R. Ridgeway, New York City Law Department, New York, NY, Alejandra Rosa Gil, Heidell, Pittoni, Murphy & Bach, White Plains, NY, Daniel Scott Ratner, Richard Michael Sullivan, Jr., Heidell, Pittoni, Murphy & Bach, LLP, Stamford, CT, for Defendants.

OPINION & ORDER

PAUL A. ENGELMAYER, United States District Judge

**\*1** This case arises from—and challenges conduct by doctors and government officials in connection with—child-removal proceedings carried out by the New York Administration for Children's Services ("ACS"). Plaintiffs Shveta Kakar Kurtz ("Kakar") and Daniel Kurtz ("Kurtz," and together with Kakar, the "parents") are the parents of twin, infant girls, A.K. and M.K., who were born nearly two months premature. One night while changing A.K.'s diaper, Kurtz dropped her on the floor of the family's kitchen, breaking her femur. After the first doctor who examined A.K. failed to diagnose that injury, the parents took A.K. to a second hospital, which correctly diagnosed it. Over the ensuing weeks, after follow-up visits at multiple hospitals, several medical workers filed reports of suspected abuse or neglect to ACS. ACS then launched removal proceedings in New York family court, starting nine months of litigation. During that time, the parents were either separated from M.K. and A.K. or had restrictions placed on their contact with them. Ultimately, after the family moved for summary judgment in family court, ACS withdrew its removal petition and the family court dismissed the action with prejudice.

Plaintiffs allege that the removal proceedings resulted from an unlawful conspiracy between the medical staff who initially failed to diagnose A.K.'s broken femur, other doctors and medical institutions, and ACS, aimed at covering up the first hospital's failure to diagnose A.K.'s femur fracture and retaliating against the family for its litigiousness. They sue the City of New York, ACS, two hospitals, and many employees of each institution under 42 U.S.C. §§ 1983 and 1985, alleging malicious prosecution, abuse of process, conspiracy, false imprisonment, and violation of their constitutional rights to family integrity and freedom of association. They also bring claims under state law for, *inter alia*, intentional infliction of emotional distress ("IIED"), medical malpractice, loss of consortium and companionship, and defamation.

Before the Court now are four motions to dismiss: three by groups of private medical professionals ("Medical Defendants") and the fourth by the City of New York on behalf of all municipal employees and entities sued and served thus far ("Municipal Defendants"). For the reasons that follow, the Court grants those motions in part and denies them in part.

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 56 of 112

Kurtz v. Hansell, Not Reported in Fed. Supp. (2021)
2021 WL 1143619

## I. Background

### A. Factual Background [1]

[1]  This factual account draws from the amended complaint, Dkt. 55 ("Am. Compl."). *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). For the purpose of resolving the motion to dismiss under Rule 12(b)(6), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court has also considered publicly filed documents from the underlying family-court proceedings, although not for the truth of the matters asserted in those documents. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (citation omitted)); *Davis v. Whillheim*, No. 17 Civ. 5793 (KPF), 2019 WL 935214, at *6 (S.D.N.Y. Feb. 26, 2019) (taking judicial notice of "publicly available filings, orders, and appeals in the Family Court system"); *Lamont v. Farucci*, No. 16 Civ. 7746 (KMK), 2017 WL 6502239, at *1 n.4 (S.D.N.Y. Dec. 18, 2017) (same). Those include the removal petition, order of dismissal, and similar documents submitted by the defendants in connection with the motions to dismiss.

### 1. Parties

#### a. Plaintiffs

**\*2**  Kakar and Kurtz are the biological parents of A.K. and M.K. Am. Compl. ¶¶ 8–9. A.K. and M.K. are fraternal twins who were born nearly two months premature, on June 4, 2018. *Id.* ¶ 10. Between August 2018 and May 2019, the parents were named as respondents in child-removal proceedings in

New York family court, in which ACS alleged that they had abused A.K. and derivatively neglected M.K. *Id.* ¶¶ 8–10.

#### b. Defendants

Plaintiffs have sued many people and entities. For clarity, the Court groups them as they have grouped themselves in filing motions to dismiss.

##### i. Municipal Defendants

Plaintiffs have sued ACS employees, ACS itself, the City of New York ("the City"), and others. [2] David Hansell is the Commissioner of ACS. *Id.* ¶ 12. Brenda Lawson is a director of field operations for ACS and is alleged to have "made the determination to commence an emergency removal proceeding" in order to "teach [the parents] a lesson." *Id.* ¶ 15. Yscary Rodriguez, Bhojranie Maygoo, and Eunice Iwenofu are ACS caseworkers. *Id.* ¶¶ 13–14, 17. Rodriguez was the primary point of contact between plaintiffs and ACS, and worked with Maygoo. *Id.* ¶¶ 13–14. Iwenofu took over Rodriguez's responsibilities in October 2018. *Id.* ¶ 17. Plaintiffs allege that both Rodriguez and Iwenofu disagreed with ACS's decision to commence removal proceedings. *Id.* Lawson supervised Rodriguez. *Id.* ¶ 15. Esperanza Sandoval supervised Iwenofu. *Id.* ¶ 18.

[2]  Plaintiffs also name the New York Comptroller and Division of Child Protection as defendants, but do not allege any facts about them. In any event, as discussed below, these are not proper parties to this lawsuit.

##### ii. Medical Defendants

*Weill Cornell Defendants*: New York Presbyterian Hospital/ Weill Cornell Medical Center ("Weill Cornell") is a hospital on the Upper East Side of Manhattan, where the parents first took A.K. on the night of her injury because of its proximity to their home. *Id.* ¶ 33. Dr. Marie Lupica is an attending physician there who treated A.K. that night. *Id.* ¶ 34. Plaintiffs allege that she negligently failed to diagnose A.K.'s femur fracture, improperly discharged A.K., and later sought to cover up that error by reporting the parents to ACS. *Id.* ¶¶ 34–35. Dr. Ramzi Marwan Shaykh is a resident at Weill Cornell who also treated A.K. the same night. *Id.* ¶ 36. Dr. Shari Platt

Kurtz v. Hansell, Not Reported in Fed. Supp. (2021)

2021 WL 1143619

is the director of emergency medicine at Weill Cornell. *Id.* ¶ 37. Although she never saw or treated A.K., she supervises Dr. Lupica and, after being notified of Dr. Lupica's alleged misdiagnosis, allegedly conspired with others to cover up that error. *Id.*

*Mt. Sinai Defendants*: A.K. and M.K. were born at Mt. Sinai Hospital ("Mt. Sinai"), where they remained in the neonatal intensive care unit ("NICU") for nearly two months after their birth. *Id.* ¶ 49. On the night of A.K.'s injury, the parents took her to Mt. Sinai after Dr. Lupica discharged her from Weill Cornell but A.K. continued to be in pain. *Id.* There, A.K. was diagnosed with a femur fracture. *Id.* ¶ 20. Several days later, after the parents brought A.K. back to Mt. Sinai for a follow-up visit, she was examined by Dr. Sheena Ranade, a pediatric orthopedist, who administered additional x-rays to assess a potential clavicle fracture. *Id.* ¶¶ 22–24. Dr. Ranade is the co-author of an article published in the *Journal of the American Academy of Orthopedic Surgeons* titled "The Role of the Orthopedic Surgeon in the Identification and Management of Non-Accidental Trauma"; plaintiffs allege that Dr. Ranade was "predisposed" to perceive abuse where there was, in fact, none. *Id.* ¶ 58. Dr. Ranade reported the parents to ACS for suspected abuse or neglect after the August 13, 2018 visit. *Id.* ¶ 57.

 **\*3** *HSS Defendants*: Weeks later, the parents took A.K. for a single follow-up examination at the Hospital for Special Surgery ("HSS"). *Id.* ¶ 38. There, she was seen by Dr. Peter Fabricant. *Id.* Karen Glass is a social worker at HSS who also had contact with the parents and A.K. that day. *Id.* ¶ 41. Dr. Fabricant later contacted Dr. Platt at Weill Cornell, an alleged "affiliate" of HSS, to notify her about Weill Cornell's failure to diagnose A.K.'s femur fracture. *Id.* ¶¶ 38–39. Glass later filed a report of suspected abuse to ACS and Dr. Fabricant met with ACS, Dr. Lupica, and Dr. Ranade on the morning that ACS ultimately commenced removal proceedings. *Id.* ¶ 83.

### 2. The August 8, 2018 Injury

On August 8, 2018, while changing A.K.'s diaper, Kurtz dropped her onto the kitchen floor. *Id.* ¶ 47. He and Kakar then walked her to the emergency room ("E.R.") at Weill Cornell, two blocks from their home. *Id.* They arrived at about 7 p.m.; A.K. spent the several hours in the ER. *Id.* ¶ 48. There, Dr. Lupica treated her for "no more than five minutes." *Id.* Weill Cornell conducted a CT scan of A.K.'s head, but not a full body exam "despite obvious discomfort to her lower

extremities." *Id.* Kurtz also "had to urge the resident" to mind A.K.'s neck, which "was still in obvious pain." *Id.* Dr. Lupica discharged A.K. around midnight. *Id.*

Once home, the parents noticed that A.K. was in continued pain and not moving her left leg. *Id.* ¶ 49. Concerned, they took her to Mt. Sinai later that night. *Id.* There, she was diagnosed with a femur fracture, as well as "healing" and "calcified" rib fractures, which plaintiffs allege occurred in the NICU after her premature birth. *Id.* ¶ 50. She was also examined by, among others, non-defendant Dr. Katherine Grimm, a pediatric-abuse specialist, who concluded there was no evidence of abuse and, on August 9, 2018, discharged A.K. *Id.* ¶ 51. On August 10, 2018, the parents took A.K. to their pediatrician, Dr. Laura Popper, who expressed concern at Weill Cornell's failure to diagnose A.K.'s broken femur. *Id.* ¶ 52.

### 3. August 13, 2018 Follow-Up at Mt. Sinai and First ACS Report

On August 13, 2018, the parents took A.K. to Mt. Sinai for a follow-up examination. *Id.* ¶ 53. There, she was examined by Dr. Ranade. *Id.* Dr. Ranade expressed concern that, in addition to the femur fracture, A.K. might have suffered a clavicle fracture. *Id.* ¶¶ 54–55. She also told the parents that she suspected A.K. might have brittle-bone disease, and advised them to have A.K. admitted to the E.R. for genetic testing. *Id.* ¶¶ 55–56. The parents heeded that recommendation; A.K. was admitted to the Mt. Sinai E.R. *Id.* ¶ 56.

However, the parents soon learned that Dr. Ranade had contacted ACS and that A.K. would not be able to leave the hospital that day. *Id.* ¶¶ 56–57.[3] Soon, two detectives and two ACS caseworkers—Rodriguez and Maygoo—arrived at Mt. Sinai to speak with the parents. *Id.* ¶ 61. While A.K. remained in the hospital, the detectives and caseworkers, along with the parents, went back to the family's home to perform an inspection. *Id.* ¶ 62. There, they spoke with the family's 24-hour live-in baby nurse, who corroborated Kurtz's account of how A.K.'s injury had occurred on August 8, 2018. *Id.* The detectives left, and never contacted the family again. *Id.* ¶ 63. ACS's Rodriguez stated that, although she had few concerns, the matter would have to remain open for 60 days, during which time she would periodically visit the home. *Id.* Between August 14 and 30, 2018, she did so, without event. *Id.* ¶ 65. On August 14, 2018, Dr. Grimm interviewed the parents, conducted further tests, and was left

Case 8:26-cv-00359-AMN-MJK Document 8 Filed 04/30/26 Page 58 of 112

Kurtz v. Hansell, Not Reported in Fed. Supp. (2021)
2021 WL 1143619

with no suspicion of abuse or neglect. *Id.* ¶ 64. A.K. was then discharged from Mt. Sinai. *Id.*

3     Plaintiffs allege that those x-rays did not show additional fractures or injuries, including to A.K.'s clavicle, but elsewhere state that the results were "inconclusive." *Id*. ¶¶ 25, 59, 105.

### 4. August 23, 2018 Follow-Up at HSS

 **\*4** On August 23, 2018, the parents took A.K. for a second follow-up examination, this time at HSS, where she was examined by Dr. Fabricant. *Id.* ¶ 68. He took an x-ray and concluded that A.K.'s femur was healing well. *Id.* He also informed the parents that he was a mandatory reporter and would have to report the injury to ACS. *Id.* ¶ 69. After the parents told him that ACS had already been contacted, Dr. Fabricant responded that, in that case, he would need only to access Mt. Sinai's medical records. *Id.* The parents agreed to authorize such access, and met with Glass, a social worker at HSS, to sign a medical release. *Id.*

### 5. August 27-29, 2018 Email Chain and Second ACS Report

On August 27, 2018, Dr. Fabricant wrote Dr. Platt at Weill Cornell to give her a "heads up" that Weill Cornell had apparently failed to diagnose A.K.'s injury. *Id.* ¶ 70. He asked whether, in fact, the treating doctor had solely focused on "head trauma," rather than the broken femur and, if so, whether it was "perhaps a systems issue that could be addressed?" *Id.* Dr. Platt responded, confirming that it was "a definite miss" and that she had "educated her attending," *i.e.*, Dr. Lupica. *Id.* ¶ 71.

However, Dr. Platt soon emailed again. In that follow-up, she forwarded Dr. Lupica's response to her. Dr. Lupica there claimed that, having reviewed the Mt. Sinai records that Dr. Platt had apparently sent her, "there was no way that the baby had that injury when [I] saw him," given that "I watched him for 4 hours." *Id.* ¶¶ 73–74. [4] Dr. Lupica also stated that the femur break seemed "as though it required brute force of pressure to break," and that "child abuse seems to be the diagnosis now." *Id.* ¶ 75. In response, HSS social worker Glass emailed back that she "HIGHLY recommend[ed] for [Weill] Cornell to contact the ACS worker and share [Dr. Lupica's story]." *Id.* ¶ 77. Dr. Fabricant agreed,

recommending that Dr. Lupica "talk with the ACS worker." *Id.* ¶ 78.

4     Plaintiffs note that Dr. Lupica, in this email, misidentified A.K.'s gender. They also allege that Dr. Lupica's claim to have spent four hours with A.K. in the E.R. was a lie. Am. Compl. ¶ 74.

On August 28, 2018, Glass contacted Rodriguez and the ACS-mandated reporter line, filing a report of suspected child abuse based on the August 8, 2018 injury. *Id.* ¶ 79. On August 29, 2018, Dr. Platt responded on the email chain, describing the parents as "dangerous," thanking Glass and Dr. Fabricant for "partnering" with Weill Cornell, and asking them to let her know if they needed to "collaborate" further. *Id.* ¶ 80. On August 30, 2018, Dr. Lupica wrote to the email chain, confirming that she had spoken with an ACS caseworker. *Id.* ¶ 81.

### 6. ACS's Investigation and Commencement of Removal Proceedings

On August 28, 2018, after Glass made her report to ACS, two ACS caseworkers arrived at the hotel where the parents were staying while their apartment underwent repairs. *Id.* ¶ 92. They informed the parents that they were there as a result of a separate report by Dr. Fabricant. *Id.* ¶¶ 93–94. The parents reacted with astonishment, anger, and outrage, admonishing the caseworkers for announcing themselves as child-protective services at the hotel reception. *Id.* ¶ 95. On August 29, 2018, Rodriguez visited the parents again, informing them that a family support conference ("FSC") had been scheduled for the next morning at 10:30 a.m. [5]

5     Plaintiffs allege that FSCs are expected to seek to maintain intact families and pursue solutions other than removal. Am. Compl. ¶ 98.

On August 30, 2018, ACS held an FSC, at which the parents, their family, and many friends testified in support of the parents. *Id.* ¶¶ 99–100. It was cut short, however, when Brenda Lawson, representing ACS, stated that ACS was recommending removal and intended to take the matter to family court that afternoon. *Id.* ¶ 101. Kakar alleges that, the same morning, she learned from an unidentified source that Lawson had been "livid" about the parents' treatment of ACS's caseworkers at the hotel on August 28, 2018, and had

Case 8:26-cv-00359-AMN-MJK   Document 8   Filed 04/30/26   Page 59 of 112

Kurtz v. Hansell, Not Reported in Fed. Supp. (2021)

2021 WL 1143619

been overheard stating, "Who do they think they are? ... Just because they are rich lawyers.... I will show them." *Id.* ¶ 102.

**\*5** The same day, ACS filed, in New York family court, a petition to terminate parental rights.[6] The Petition's addendum, which set forth the Petition's factual basis, stated that Dr. Ranade had reported that A.K. "presented with injuries to her collarbone," and that the x-rays she took "came back inclusive."[7] *Id.* ¶ 105. It also cited Dr. Lupica's claim that, when she examined A.K. on August 8, 2018, "there [was] no way that the baby had a leg fracture," given that she "was moving her arms and legs," and that her medical opinion was that A.K.'s injuries did not occur as Kurtz had reported. Petition at 6–7. It did not disclose Dr. Grimm's prior assessment that "this was an unfortunate accident for a premature baby," that "both clavicles looked the same" from the x-rays, and that "no one can testify at this time that this infant was abused," despite evidence that Lawson had spoken with Dr. Grimm twice on August 14, 2018. Am. Compl. ¶ 109; *see id.* ¶ 108 (Dr. Grimm reporting that a "clavicle fracture has not been confirmed by radiology and when I saw the baby, she lifted both arms spontaneously").

6    The Amended Complaint characterizes the petition as an "emergency petition," but the petition is not styled as such. The protective order issued that day, citing "exigent circumstances and allegations in the petition" and entitled "ORDER (Directing Temporary Removal of Child-After Petition Filed)," was issued by a court, after a preliminary hearing, pursuant to N.Y. Fam. Ct. Act § 1027, which does not provide for emergency removal. *See* Dkt. 100 ("Ridgeway Decl."), Exs. A ("Petition"), C ("Removal Order"); *cf.* N.Y. Fam. Ct. Act § 1024 ("Emergency Removal Without Court Order").

7    The Amended Complaint notes that the results of the August 13, 2018 x-rays were, in fact, "inconclusive," not "inclusive." Am. Compl. ¶¶ 25, 105.

Also on August 30, 2018, the family court, with Judge Frias-Colon presiding, held a preliminary hearing on the ACS Petition. *Id.* ¶ 106. ACS's attorney represented at the hearing that A.K. "does have a collarbone fracture," which had been confirmed by x-rays, despite the above evidence, allegedly in ACS's possession, to the contrary. Am. Compl. ¶ 106. According to the hearing transcript, doctors Lupica,

Fabricant, and Ranade had met with ACS that morning to, as plaintiffs characterize it, "press the case" for removal. *Id.* ¶ 83. After the hearing, the family court issued an order directing A.K.'s temporary removal from the family home, because she "has presented with injuries and allegations of physical abuse were made with no plausible explanation given." Removal Order at 1. The court directed that A.K. and M.K. be temporarily placed with Rahul Kakar, their maternal uncle, pending the removal proceeding. *Id.*; Am. Compl. ¶ 117.

### 7. Post-Removal Events

Between August 30 and October 2, 2018, A.K. and M.K. resided with their uncle on Long Island. Am. Compl. ¶ 117. The family court then modified its order to allow Kakar's mother, who moved from India to New York City "on a moment's notice," to assume custody of the children while living in plaintiffs' home and sleeping on their floor. *Id.* At no point were the parents permitted to be alone with either daughter. *Id.* ¶ 118.

On September 10, 2018, the parents took A.K. for a follow-up appointment with Dr. Ranade, accompanied by their live-in baby nurse. *Id.* ¶¶ 120, 124. There, they confronted Dr. Ranade about her "misleading" ACS report; Dr. Ranade recommended that they see another doctor, but the parents stated that, given the ACS proceeding, they had no choice but to remain with her. *Id.* ¶ 122. After the appointment, Dr. Ranade reported to ACS that the parents had brought A.K. to the appointment unsupervised. *Id.* ¶ 123. The plaintiffs allege this was wrong, and that the baby nurse waited in the reception area while the parents met with Dr. Ranade. *Id.* ¶ 124. On October 4, 2018, at another follow-up visit with Dr. Ranade, she ordered x-rays of A.K.'s clavicle to look for "healing fractures," which the parents did not authorize *Id.* ¶ 125.

**\*6** On October 30, 2018, ACS's Rodriguez and Iwenofu visited the parents and A.K., and told the parents they did not agree with their supervisors and "did not believe this was an abuse case." *Id.* ¶¶ 127–28. Yet Iwenofu stated, if the parents wanted to see the case resolved, they would likely have to admit to some neglect. *Id.* ¶ 129. She also stated that she "had never seen a case discharged without 'someone taking the blame.'" *Id.*

On December 4, 2018, the parents gave ACS and the family court four affidavits—one from Dr. Grimm, one from the

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 60 of 112

Kurtz v. Hansell, Not Reported in Fed. Supp. (2021)
2021 WL 1143619

family's pediatrician, and two from doctors with whom ACS had consulted "for over a decade"—each concluding that (1) the femur fracture was consistent with an accidental fall, not abuse; (2) any rib fractures were consistent with bone fragility due to premature birth; and (3) there was no "conclusive" evidence of a clavicle fracture on August 13, 2018. *Id.* ¶¶ 136–40. After reviewing these reports, the family court judge's clerk counseled ACS that it "may want to reconsider its position." *Id.* ¶ 141.

On January 9, 2019, ACS stated that it was seeking to retain a neutral expert, and if the expert agreed there was no abuse, they would withdraw the petition. *Id.* ¶ 155. At a February 4, 2018 hearing, ACS represented that its expert, Dr. Hoffman-Rosenfeld, had reviewed all of Mt. Sinai's and HSS's medical records. *Id.* ¶ 158. But it soon became clear that that statement was untrue, as ACS had instead sent her the August 27–30, 2018 email chain between the HSS Defendants, Dr. Platt, and Dr. Lupica, and not other actual medical records. *Id.* ¶¶ 159–62.

At a February 6, 2018 hearing, ACS's position began to soften. It stated that Dr. Hoffman-Rosenfeld "cannot state physically what happened at this time," and that she would need to interview the parents and conduct physical examinations of A.K. and M.K. *Id.* ¶ 163. In response, Judge Frias-Colon remarked that this substantial reversal gave her "some concern about the decision to have filed this as an abuse case as opposed to being truly what everyone said from the beginning which was a tragic accident." *Id.* ¶ 167.

On April 10, 2019, the parents moved for summary judgment in the removal proceeding. *Id.* ¶ 172. On May 2, 2019, Dr. Hoffman-Rosenfeld concluded that A.K.'s femur break "could have resulted from a fall," that the "rib fractures are consistent with fractures related to metabolic bone disease of prematurity," that the healing timeline comported with their occurrence before discharge from the NICU, and that, after "review of the radiology, no clavicle fracture was identified." *Id.* ¶ 175.

On May 7, 2019, ACS withdrew its Petition. *Id.* ¶ 176. The same day, the family court dismissed it with prejudice. *Id.*

### B. Procedural History
On May 1, 2020, plaintiffs filed the Complaint, Dkt. 1, and on May 5, 2020, the Amended Complaint. Dkt. 55. On August 14, 2020, the Mt. Sinai Defendants filed a motion to dismiss, Dkt. 89, and a memorandum of law in support, Dkt. 89-1

("Mt. Sinai Mem."). The same day, the HSS Defendants filed a motion to dismiss, Dkt. 93, and a memorandum of law in support, Dkt. 97 ("HSS Mem."). On August 18, 2020, the Municipal Defendants filed a motion to dismiss, Dkt. 99, along with a memorandum of law in support, Dkt. 101 ("City Mem."), and the declaration of Thais. R. Ridgeway, Esq., with supporting exhibits.

On August 19, 2020, the Court issued an order directing plaintiffs either to amend their complaint or oppose the pending motions to dismiss, and noting that no further opportunities to amend would be given. Dkt. 102. On September 16, 2020, the Court granted the Municipal Defendants' request that their motion also apply to the claims against Commissioner Hansell, who had not been served at the time they filed their motion. Dkt. 110. On September 23, 2020, the Weill Cornell defendants filed a motion to dismiss, Dkt. 112, and a memorandum of law in support, Dkt. 114 ("Weill Cornell Mem."). The same day, the Court again notified plaintiffs of their right to amend and stated that no further opportunities to do so would ordinarily be granted. Dkt. 115.

**\*7** On November 13, 2020, plaintiffs opposed the motions to dismiss. Dkt. 123 ("Pl. Opp'n"), and filed the declaration of Robert Del Col, Dkt. 123-1 ("Del Col Decl."), and exhibits. On December 10, 2020, the HSS Defendants and Weill Cornell Defendants replied. Dkts. 126 ("HSS Reply"), 129 ("Weill Cornell Reply"). On December 29, 2020, the Mt. Sinai defendants replied. Dkt. 133 ("Mt. Sinai Reply"). On January 13, 2020, the Municipal Defendants replied, Dkt. 136 ("City Reply").

### II. Applicable Legal Standards
To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145. That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 61 of 112
Kurtz v. Hansell, Not Reported in Fed. Supp. (2021)
2021 WL 1143619

only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III. Discussion

Plaintiffs—the parents and their minor daughters—claim here that ACS's child-removal action, and the reports of child abuse by the Medical Defendants that prompted it, resulted from an elaborate conspiracy between all named defendants to deprive plaintiffs of their constitutional rights. The Medical Defendants, they allege, sought to cover up Weill Cornell's failure to diagnose A.K.'s femur fracture by concocting spurious reports of child abuse that shifted blame away from Weill Cornell. And ACS, they allege, relying on those false reports and lacking probable cause, launched removal proceedings that it was ultimately forced to abandon, in retaliation for the parents' litigiousness and hostility toward ACS's caseworkers. The result, they allege, was a nine-month ordeal in which the parents were forcibly separated from their newborn twin daughters and, once reunited, subjected to unjustified restrictions on their association with them.

Based on this version of events, plaintiffs bring three sets of federal claims: under § 1983, for malicious prosecution, abuse of process, conspiracy, intentional deprivation of constitutional rights, and false imprisonment, against all defendants; under § 1985, for conspiracy, against all defendants; and for the deprivation of constitutional rights against the City of New York, based on, *inter alia*, an alleged custom and practice of commencing child-removal proceedings without probable cause, actionable under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). [8] Plaintiffs also bring state-law claims for malicious prosecution, abuse of process, loss of consortium and companionship, and IIED, against all defendants; for medical malpractice against the Weill Cornell Defendants and Dr. Ranade; and for defamation against Dr. Platt, Dr. Ranade, and Glass.

[8]    Confusingly, plaintiffs purport to bring a *Monell* claim against all defendants. The *Monell* doctrine, however, relates uniquely to § 1983 claims against municipal entities.

**\*8** In response, the Medical Defendants, across three separate motions to dismiss, argue that the Amended Complaint does not plausibly allege either that they are state actors or that they conspired with any state actor, and so they cannot be sued under § 1983. They also argue

that, even if state actors, they are immune to liability for reporting suspected child abuse in their roles as mandatory reporters of such abuse. Finally, they contend that plaintiffs fail to plausibly allege the elements of any of their causes of action. The Municipal Defendants, too, urge dismissal of all claims against them. [9] First, they assert that several defendant entities are not proper parties to this action. Second, they argue that none of plaintiffs' causes of action states a claim.

[9]    With a narrow exception, these defendants do not argue that they are entitled to qualified immunity. Their opening brief cursorily referenced such a defense, solely as to plaintiffs' conspiracy claims, but this argument was not developed until their reply—and, even then, only in a single paragraph. *See* City Mem. at 19; City Reply at 6. "It is well established, of course, that arguments first raised in reply briefs are forfeited or waived." *Chevron Corp. v. Donziger*, 325 F. Supp. 3d 371, 379 (S.D.N.Y. 2018). And qualified immunity provides an affirmative defense, as to which defendants have the burden of proof. *Se McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004). The Court thus will not consider these arguments on the present motion to dismiss.

The Court first addresses whether plaintiffs have improperly sued certain non-suable entities. Then, the Court considers plaintiffs' federal claims under §§ 1983 and 1985. Finally, the Court addresses plaintiffs' state-law claims.

### A. Proper Parties

The Municipal Defendants first argue that plaintiffs' claims against ACS, the New York Comptroller, and the Division of Child Protection must be dismissed because, by statute, they are not suable entities. That is correct. *See* N.Y. City Charter, Ch. 17 § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Graham v. City of New York*, 869 F. Supp. 2d 337, 348 (E.D.N.Y. 2012) ("ACS is an agency of the City of New York and cannot be sued independently."); *Emerson v. City of New York*, 740 F. Supp. 2d 385, 395–96 (S.D.N.Y. 2010) (same). Plaintiffs are silent in the face of this motion. *See Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08 Civ. 442 (TPG), 2014 WL 4723299, at \*7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage, where review is limited to the pleadings, a

plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").

Accordingly, the Court dismisses ACS, the New York Comptroller, and the Division of Child Protection. [10]

[10]   The latter entity, the Division of Child Protection, is named (although not discussed) in the Amended Complaint. Plaintiffs appear not to have served that entity, despite the Court's having several times extended the deadline to effect service, *see* Dkts. 106, 119, which has now passed. This independently warrants its dismissal. *See* Fed. R. Civ. P. 4(m); *Zapata v. City of New York,* 502 F.3d 192, 197 (2d Cir. 2007) (dismissal under Rule 4(m) appropriate even where plaintiff would be time-barred from bringing renewed action). Contemporaneous with this decision, the Court is issuing an order as to plaintiffs' claims against other non-served defendants.

**B. Federal Claims**

**1. State Action**

At the threshold, each group of Medical Defendants argues that they cannot be liable under § 1983 because they are not state actors. *See* Mt. Sinai Mem. at 5–9; HSS Mem. at 11–15; Weill Cornell Mem. at 8–12. Plaintiffs concede that, as a matter of law, the mere reporting of a crime or child abuse to the authorities does not typically rise to the level of state action. But, they argue, the Medical Defendants went beyond reporting, and became active participants in ACS's child-removal proceedings, so as to make them state actors subject to liability under § 1983. On this issue, the Court holds with the Medical Defendants.

 **\*9** "An essential element of a § 1983 claim is that the defendant act under color of state law." *Mortimer v. City of New York,* No. 15 Civ. 7186 (KPF), 2018 WL 1605982, at *12 (S.D.N.Y. Mar. 29, 2018). Section 1983 thus generally applies to public officers, not private citizens. However, in certain circumstances, private actors can be considered to have acted "under color of state law." *See Ciambriello v. County of Nassau,* 292 F.3d 307, 324 (2d Cir. 2002). For purposes of § 1983,

the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the

"coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate" ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 296 (2001)); *see Ciambriello,* 292 F.3d at 324 ("[A] private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the state or its agents.' " (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 (1970))).

With near uniformity, courts in this Circuit have applied these principles to hold that "reporting suspected child abuse alone does not constitute state action." *J.C. v. Mark Country Day Sch.,* No. 03 Civ. 1414 (DLI) (WDW), 2007 WL 201163, at *3 (E.D.N.Y. Jan. 23, 2007) (collecting cases); *Topolski v. Wrobleski,* No. 13 Civ. 872 (LEK), 2013 WL 5652724, at *1–3 (N.D.N.Y. Oct. 16, 2013) (allegations that private actors falsely reported child abuse in effort to commence child-removal proceedings insufficient to plead state-actor status); *Ogunbayo v. Montego Med. Consulting P.C.,* No. 11 Civ. 4047 (NGG) (CLP), 2012 WL 6621290, at *12 (E.D.N.Y. Sept. 18, 2012) (report of suspected child abuse not state action where no allegation that "ACS influenced the substance of the medical defendants' evaluation"), *adopted as modified,* 2012 WL 6625921 (E.D.N.Y. Dec. 19, 2012); *Mione v. McGrath,* 435 F. Supp. 2d 266, 272 (S.D.N.Y. 2006) (hotel employees who reported suspected child abuse to authorities, leading to initiation of neglect proceedings, not state actors under § 1983); *Storck v. Suffolk Cnty. Dep't of Soc. Servs.,* 62 F. Supp. 2d 927, 941 (E.D.N.Y. 1999) (doctors who "reported their suspicions of child abuse pursuant to a state statute" not state actors); *Deckon v. Chidebere,* No. 93 Civ. 7965 (LMM), 1995 WL 555684, at *4 (S.D.N.Y. Sept. 19, 1995), *aff'd,* 101 F.3d 1393 (2d Cir. 1996); *cf. Est. of Keenan v. Hoffman-Rosenfeld,* No. 16 Civ. 0149 (SFJ) (AYS), 2019 WL 3410006, at *19 (E.D.N.Y. July 29, 2019) (holding, at summary judgment, that hospital defendants were not state actors where they allegedly " 'conspired with each other to advance a false narrative and took advantage of the plainly incompetent [Child Protective Services] workers' to cause the Protective Proceedings to be brought against the Parents"), *aff'd,* 833 F. App'x 489 (2d Cir. 2020); *Estiverne v. Esternio-Jenssen* ("*Estiverne III*"), 910 F.

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 63 of 112

Kurtz v. Hansell, Not Reported in Fed. Supp. (2021)
2021 WL 1143619

Supp. 2d 434, 444 (E.D.N.Y. 2012) (holding, after trial, doctor not state actor where she did not "play[ ] any role—other than to provide her medical opinion—in the decision to file a petition for removal").

 *10 The Medical Defendants argue that they similarly were private actors who simply reported suspected abuse to ACS. Plaintiffs respond that the facts alleged show the Medical Defendants to have gone beyond their role as mandatory reporters and "exert[ed] undue influence to obtain a desired outcome." Pl. Opp'n at 24. They rely on the following allegations. First, Dr. Ranade had x-rays of A.K.'s clavicle taken on August 13, 2018, at the follow-up visit during which she contacted ACS, after admitting A.K. to the E.R. for the ostensible purpose of taking genetic tests. Am. Compl. ¶ 59. Second, Glass, Dr. Fabricant, Dr. Lupica, and Dr. Platt engaged in discussions over email that ostensibly reflect a conspiracy to falsely report child abuse to ACS. In that thread, Dr. Fabricant first wrote to Dr. Platt to notify her that Weill Cornell appeared to have failed to diagnose A.K.'s broken femur and to ask if that failing was indicative of any "systems issue" that could be remedied. Id. ¶ 70. Dr. Platt responded that "it was a definite miss" and that she had "educated" Dr. Lupica. Id. ¶ 71. Then, however, Dr. Lupica responded to Dr. Platt (in a response that Dr. Platt forwarded to Dr. Fabricant and Glass) that she did not believe A.K. had had those injuries when she saw "him," and that she now suspected abuse. Id. ¶¶ 72–75. Apparently believing Dr. Lupica's story, the others then agreed that she should report to ACS; then, she and others did so. Id. ¶¶ 77–81. Third, without supporting allegations, plaintiffs contend that Dr. Fabricant, Dr. Ranade, and Dr. Lupica met with ACS on August 30, 2018, to "press the case for [A.K.] and [M.K.] to be removed from their parents' care," and that ACS filed its removal petition the same day. Id. ¶ 83. Last, they state that on September 10, 2018, Dr. Ranade falsely reported the parents for bringing A.K. to see her alone, and on October 4, 2018, took unauthorized investigatory x-rays. Id. ¶¶ 120–25.

These allegations do not make any of the Medical Defendants state actors.

As to Dr. Fabricant, Dr. Platt, and Glass, the Amended Complaint does not allege more than that they, apparently believing Dr. Lupica's story, decided it was appropriate to report the suspected abuse to ACS, as required under N.Y. Soc. Serv. Law § 413. In fact, the Amended Complaint largely depicts Dr. Fabricant and Dr. Platt as open to recognizing, and addressing, Weill Cornell's lapse in failing to diagnose

A.K.'s fracture. See, e.g., Am. Compl. ¶¶ 70–71. Glass merely reported to ACS, see id. ¶ 79, and Dr. Platt does not even appear to have done that much. And Fabricant's meeting with ACS—along with Dr. Lupica and Dr. Ranade—on August 30, 2018, which is described only in vague terms in the Amended Complaint, as alleged did not entail more than furnishing ACS with a medical assessment based on his observations of A.K. and the parents. See id. ¶ 83. Fabricant is not alleged to have urged ACS to take specific action. The Amended Complaint states that, at that meeting, Fabricant "press[ed] the case" for removal, but that conclusory allegation is unsupported by any concrete facts. It cannot be relied upon for purposes of this motion. Id.

The allegations about Dr. Lupica, taken as true, are of a different character. She is alleged to have lied about A.K.'s condition at the time she examined A.K. on August 8, 2018, with the goal of shifting attention from her errant diagnosis, and the consequence of giving the false diagnosis of a later act of child abuse. According to the Amended Complaint, Dr. Lupica's statement that A.K. could not possibly have had a femur fracture when she saw her on August 8, 2018, was deliberately false. See id. ¶ 75. Although some allegations as to this act are conclusory, see, e.g., id. ("This was a slanderous fiction made up by Defendant Lupica"), the overall facts alleged as to this point are concrete enough to make the parents' claim of such a falsehood plausible. For example, the Amended Complaint alleges that, despite only seeing A.K. for five minutes on August 8, 2018, Dr. Lupica later falsely reported spending four hours with her. Id. ¶ 74. And although A.K. is female, Dr. Lupica stated that she watched "him" for that entire four-hour period, calling into doubt her claim of such a long, or of an attentive, observation. Id. Moreover, the circumstances of the email exchange—that Dr. Lupica's superior, Dr. Platt, had emailed her to "educate" her as to her significant "miss"—provides a plausible motive for Dr. Lupica to dissemble: to cover up her own malpractice. Claiming that A.K.'s femur had not been broken when she examined the child deflected blame and changed the narrative from a faulty diagnosis to a later act of child abuse. See, e.g., id. ¶ 75. The Amended Complaint's allegation is thus well-pled that Dr. Lupica falsely claimed that A.K.'s injuries were not present when she examined her on August 8, 2018, and that the parents' account of how such injuries occurred was inconsistent with her diagnosis.

 *11 But this falsehood, while exposing Dr. Lupica to potential liability under state law, see infra pp. 46–47, does not make her a state actor under § 1983. See, e.g.,

Case 8:26-cv-00359-AMN-MJK   Document 8   Filed 04/30/26   Page 64 of 112

Kurtz v. Hansell, Not Reported in Fed. Supp. (2021)
2021 WL 1143619

*Moreno v. Town of Greenburgh*, No. 13 Civ. 7101 (VB), 2014 WL 3887210, at *3 (S.D.N.Y. June 9, 2014) (no state action where defendant provides "false and misleading" information to prosecutors "even if the information provided is deliberately false"); *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 429 (S.D.N.Y. 2013) ("[E]ven assuming that [defendant] had deliberately provided false information to police, such provision alone is not sufficient" to make him a state actor); *Vazquez v. Combs*, No. 04 Civ. 4189 (GEL), 2004 WL 2404224, at *4 (S.D.N.Y. Oct. 22, 2004) ("But merely filing a complaint with the police, reporting a crime, requesting criminal investigation of a person, or seeking a restraining order, *even if the complaint or report is deliberately false*, does not give rise to a claim against the complainant for a civil rights violation." (emphasis added)). Rather, "one's motivation is irrelevant to the determination of whether one is a state actor." *Shapiro v. Goldman*, No. 14 Civ. 10119 (NRB), 2016 WL 4371741, at *11 (S.D.N.Y. Aug. 15, 2016) (quoting *Young v. Suffolk County*, 705 F. Supp. 2d 183, 196 (E.D.N.Y. 2010)). Indeed, in a similar context, a court in this District has held that doctor not a state actor under § 1983 even though he had been hired by ACS in connection with a neglect proceeding and "knowingly provided false information to ACS." *Emanuel v. Griffin* ("*Emanuel I*"), No. 13 Civ. 1806 (JMF), 2013 WL 5477505, at *5–6, 7 (S.D.N.Y. Oct. 2, 2013). Thus, even taking as true plaintiffs' allegation that Dr. Lupica scurrilously lied about A.K.'s injuries to cover up her failure to diagnose A.K.'s broken femur, that does not show that she acted under color of state law.

Finally, as to Dr. Ranade, plaintiffs argue that her reporting of suspected abuse or neglect, taking of x-rays, and follow-up reports to ACS make her a state actor because she became "part of the reporting and enforcement machinery" of the state. *See* Pl. Opp'n at 24 (quoting *Estiverne v. Esternio-Jenssen* ("*Estiverne II*"), 833 F. Supp. 2d 356, 367–68 (E.D.N.Y. 2011)). For the reasons above, Dr. Ranade's reporting, both before and after August 13, 2018, does not make her a state actor. That is so even though she had multiple contacts with ACS. *See, e.g.*, *Est. of Keenan*, 2019 WL 3410006, at *19 ("Additional input and updates from the Northwell Defendants as CPS's source for medical information regarding Lana's case, which presented a dynamic situation, does not morph the Northwell Defendants from private actors into persons or entities acting under color of state law[.]"). As to Dr. Ranade's admission of A.K. to the E.R. on August 13, 2018, courts have recognized that private medical entities' *detention* of children, for the purposes of conducting abuse investigations, can sometimes amount to

state action. *See, e.g.*, *Kia P. v. McIntyre*, 235 F.3d 749, 756–57 (2d Cir. 2000) (finding state action based on hospital's "discrete and distinguishable role in the complex relationship among the State, the parent and the child in determining the safety and propriety of releasing [a child] to the care of her mother"); *J.C.*, 2007 WL 201163, at *2–3 (discussing *Kia P.* and finding no state action where school reported suspected abuse, but did not detain child). But plaintiffs' § 1983 claims do not focus on A.K.'s brief, August 13, 2018 stay at Mt. Sinai pending ACS's investigation. And even were Dr. Ranade considered a state actor with respect to that isolated incident, that would not convert her other actions—including making reports to ACS—into state action. *See Kia P.*, 235 F.3d at 757 (hospital was state actor only as to period where it lacked medical reason for detaining child). Finally, that Dr. Ranade took unauthorized x-rays on October 4, 2018, allegedly to check for "healing fractures," does not make her a state actor. *See* Am. Compl. ¶ 125. Plaintiffs do not plead that Dr. Ranade ever reported the results of those x-rays to ACS, or that they had anything to do with the removal proceedings that, by then, had been pending for several months.

Nor does the Amended Complaint plausibly allege that the Medical Defendants participated in a § 1983 conspiracy with ACS. *See Ciambriello*, 292 F.3d at 324–25 (private actors may be liable under § 1983 where plaintiffs show "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages"). Plaintiffs rely on the email thread between Glass and Drs. Fabricant, Platt, and Lupica to establish this conspiracy. *See* Pl. Opp'n at 12–14 (discussing Am. Compl. ¶¶ 69–82). But even assuming those communications established an agreement between those individuals to act unlawfully—rather than a conversation in which others were persuaded in good faith by Dr. Lupica's allegedly false claim that her original diagnosis had been correct—plaintiffs do not allege that ACS participated in that discussion. The principal alleged communications between ACS and the Medical Defendants were: (1) the reports of suspected child abuse reviewed above; and (2) the August 30, 2018 meeting between Lawson at ACS and Drs. Ranade, Fabricant, and Lupica. As to the former, such reporting cannot establish a § 1983 conspiracy, even if the reporting were false. *See, e.g.*, *Rodriguez*, 973 F. Supp. 2d at 429 ("[E]ven assuming that Mr. Morrissey had deliberately provided false information to police, such provision alone is not sufficient to form the basis of a conspiracy claim."). As to the latter, the Amended Complaint lacks concrete allegations, beyond the fact of this meeting, to show an agreement

between those defendants at any point. Its allegations on this point are conclusory. *See* Am. Compl. ¶ 114 ("Plaintiffs allege that Defendant Lawson was complicit in the 'Weill Cornell/Ranade/HSS conspiracy' " (emphasis removed)). In fact, the only concretely pled communication from ACS to any private defendant is ACS's report to Glass that "there was no reason to remove [A.K.] ... as the [Parents'] story was consistent with injuries as reported by Mt. Sinai." *Id.* ¶ 77. Instead, the Amended Complaint alleges that, after receiving *additional* reports of suspected child abuse, and meeting with the reporting doctors, ACS independently decided to commence removal proceedings.[11] That ACS did so after receiving those reports, even if those reports were false, does not plausibly suggest any conspiracy.

[11]  In opposition, plaintiffs rely on a single case. *See* Pl. Opp'n at 17–19 (discussing *Estiverne II*, 833 F. Supp. 2d at 356–57). But it is far afield. There, plaintiffs sought to hold a single doctor—the head of a hospital's "child protective services team"— liable under § 1983 because she had been "the driving force behind ACS's decision to initiate removal proceedings." *Estiverne II*, 833 F. Supp. 2d at 369–70. The supporting evidence was that the doctor had "recommended removal of [the child], that she diagnosed [the child's] injuries as consistent with being 'grabbed and shaken,' that if she had not made such a diagnosis, Infant Plaintiffs would not have been removed from their home, that ACS always follows the recommendations of [this doctor], and, perhaps most importantly, that ACS made the decision to file a petition 'in unison' with [the doctor] and the [hospital's] Child Protection Team." *Id.* at 369. Here, plaintiffs do not allege, except conclusorily, that any Medical Defendant recommended removal, that ACS "always," or has ever, followed any of their recommendations, or that—aside from the meeting on August 30, 2018—ACS decided to file a removal petition "in unison" with them. In fact, the Amended Complaint alleges that ACS, far from being driven by any Medical Defendant, had a preexisting motive to seek the children's removal. *See* Am. Compl. ¶¶ 110–15. And the removal petition belies that any Medical Defendant urged removal. *See* Petition at 6–7 (basing removal petition solely on medical assessments by Medical Defendants); *see also Estiverne III*, 910 F. Supp. 2d at 444 (finding, after trial, doctor not a state actor because ACS, not she,

decided to petition for removal and doctor provided only medical opinion). *Estiverne* is thus inapposite.

**\*12**  Accordingly, the Amended Complaint does not plausibly allege any Medical Defendant to have been a state actor. The Court thus dismisses the § 1983 claims against these defendants.[12] The Court next turns to plaintiffs' federal claims against persons and entities which undisputedly were state actors.

[12]  Inexplicably, the Amended Complaint also names Dr. Shaykh as a defendant in all six federal claims, even though its only allegation is that he, like Dr. Lupica, failed to diagnose A.K.'s femur fracture. *See* Am. Compl. ¶¶ 36, 287–301. There is no allegation that Dr. Shaykh ever spoke with anyone at ACS, had any contact with any government official, or took any action conceivably supporting § 1983 liability of any kind. The § 1983 claims against him are also therefore dismissed. The Amended Complaint's grapeshot approach—casting wide claims of illegality well beyond what the facts could remotely bear, as exemplified by the senseless inclusion of Dr. Shaykh as a § 1983 defendant—is regrettable. The Court expects more responsible lawyering as the case moves forward.

### 2. Malicious Prosecution

To prevail on a § 1983 claim for malicious prosecution, "a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (citations omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Stampf v. Long Island R.R.*, 761 F.3d 192, 198 (2d Cir. 2014) (quoting *Manganiello*, 612 F.3d at 161). Under § 1983, state "tort law serves only as a source of persuasive authority rather than binding precedent in defining these elements." *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018). A plaintiff must also show "a seizure or other perversion of proper legal procedures implicating [his] personal liberty and privacy interests under the Fourth Amendment." *Id.* at 24

Case 8:26-cv-00359-AMN-MJK   Document 8   Filed 04/30/26   Page 66 of 112

Kurtz v. Hansell, Not Reported in Fed. Supp. (2021)

2021 WL 1143619

(quoting *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)).

### a. Civil vs. Criminal Proceedings

Most commonly, a claim for malicious prosecution arises from a criminal proceeding. The HSS Defendants thus argue that plaintiffs do not state a claim, because the family court proceeding was civil and plaintiffs have not pled "special damages." *See* HSS Mem. at 19. The Second Circuit has stated, however, that "our case law does not forbid a § 1983 malicious prosecution claim premised on a civil or administrative proceeding." *Washington*, 373 F.3d at 317. To bring a malicious prosecution claim arising from a civil action in general, a plaintiff must make "a showing of some interference with plaintiff's person or property ... by the use of such provisional remedies as arrest, attachment, replevin or injunction, ... or other burden imposed on plaintiff beyond the ordinary burden of defending a law suit." *McCaul v. Ardsley Union Free Sch. Dist.*, No. 11 Civ. 5586 (VB), 2012 WL 1898897, at *3 (S.D.N.Y. May 3, 2012), *aff'd*, 514 F. App'x 1, 4 (2d Cir. 2013) (summary order). Relevant here, the Circuit has noted "that the law in our Circuit is unsettled as to whether child removal proceedings can give rise to a federal claim for malicious prosecution of a parent." *Walker v. City of New York*, 621 F. App'x 74, 76 (2d Cir. 2015) (summary order); *see also McCaul*, 514 F. App'x at 4–5 (discussing without resolving whether neglect proceeding could give rise to a malicious prosecution claim).

**\*13** Absent definitive Circuit guidance, the weight of authority suggests that the removal of a child from her parents, via civil family court proceedings, implicates sufficient constitutional interests to support a malicious prosecution claim. *See, e.g.*, *Cornejo v. Bell*, No. 04 Civ. 341 (BMC), 2008 WL 5743934, at *12 (E.D.N.Y. May 19, 2008) ("[T]he removal of Cornejo's son is sufficient to meet that threshold."), *aff'd*, 592 F.3d 121 (2d Cir. 2010); *Providencia V. v. Schutlze*, No. 02 Civ. 9616 (LTS), 2007 WL 1582996, at *5 n.3 (S.D.N.Y. May 31, 2007) ("[T]he removal of Plaintiffs' son is sufficient to meet the threshold for applicability of this doctrine.") (collecting cases); *Yuan v. Rivera*, 48 F. Supp. 2d 335, 349 (S.D.N.Y. 1999) ("[D]epriving Ms. Chi of the custody of her children for several months reaches this threshold."). *But see Walker v. City of New York*, 63 F. Supp. 3d 301, 317 n.12 (E.D.N.Y. 2014) ("It is likely that no plaintiff in this action can even state a claim for a malicious prosecution as the 'Adult Plaintiffs

have not been seized, and Infant Plaintiffs have not been prosecuted.' " (quoting *Estiverne II*, 833 F. Supp. 2d at 380)). Here, A.K. and M.K. were removed from their parents' custody for more than a month, and the parents' access to their children was highly restricted for eight more months. That impingement is substantial enough to support a claim for malicious prosecution. Accordingly, the Court will not dismiss plaintiffs' § 1983 malicious prosecution claim solely because it arises from a civil proceeding.

### b. Initiation of Proceedings

The Municipal Defendants do not dispute that they initiated proceedings against the parents. They briefly contend that the Amended Complaint erroneously attributes prosecutorial decision-making to Brenda Lawson. City Mem. at 12; City Reply at 9–10. But "individuals other than the agent who actually prosecutes the action can be held liable for malicious prosecution." *Emanuel I*, 2013 WL 5477505, at *7. Such liability can exist when the non-prosecuting individual "played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000) (citation omitted). Here, the Amended Complaint plausibly alleges that Lawson recommended removal and caused the removal action to be commenced. *See, e.g.*, Am. Compl. ¶¶ 101–02, 110–14. Thus, plaintiffs have plausibly pled that she, and potentially other ACS caseworkers, were among those who initiated the proceedings.

### c. Favorable Termination

Under § 1983, unlike New York law, "[p]roceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty." *Lanning*, 908 F.3d at 26 (quoting *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir. 1980)). "A termination is not favorable to the accused ... if the charge is withdrawn or the prosecution abandoned pursuant to a compromise with the accused." *Rothstein v. Carriere*, 373 F.3d 275, 286 (2d Cir. 2004) (citation omitted).

The Municipal Defendants argue that, because ACS withdrew its petition and the parents consented to that withdrawal, the action was "abandoned pursuant to a compromise," leaving the guilt or innocence undetermined. City Mem. at 9 (citing *Rothstein*, 373 F.3d at 286). In their reply, they also argue

that ACS's withdrawal was in the "interest of justice," and so cannot qualify as favorable termination. *See Lanning*, 908 F.3d at 28–29 ("[W]here a dismissal in the interest of justice 'leaves the question of guilt or innocence unanswered[,] ... it cannot provide the favorable termination required as the basis for [that] claim." (quoting *Hygh v. Jacobs*, 961 F.2d 359, 367–68 (2d Cir. 1992)); *see Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). Plaintiffs respond that, as pled, there was no compromise, and that ACS withdrew its petition because it lacked evidence of liability. The Court holds with plaintiffs.

First, neither the Amended Complaint nor the cognizable records of the family court proceedings reflect any compromise on plaintiffs' part. Rather, as pled, after plaintiffs produced evidence of their innocence of child abuse, *see* Am. Compl. ¶¶ 136–41, and moved for summary judgment, *id.* ¶ 172, and after ACS's own expert concluded that the facts on which the removal petition had been based could not be confirmed, *id.* ¶¶ 174–75, ACS moved to withdraw its case against the parents, with prejudice, *id.* ¶ 176; *see* Del Col Decl., Ex. 2 ("Withdrawal Tr.") at 2–3. In that context, plaintiffs' consent to ACS's dismissal does not bespeak a lack of favorable termination. As pled, plaintiffs could not have received a more favorable resolution. In fact, at the hearing on ACS's petition to withdraw its removal action, its lawyer embraced ACS's experts' conclusion as meriting dismissal. Withdrawal Tr. at 3 ("When we filed this petition we do believe that we had a basis to file, but based on the medical report that was provided to counsel and Your Honor's Court Attorney yesterday, we were able to speak with our independent expert. And after she reviewed all documents we, at this time, do believe that it would be—[t]hat we are asking to withdraw the petition."). These statements show, "in so many words," that plaintiffs were entitled to a dismissal on the merits—not that the withdrawal reflected a compromise or settlement. *McKenzie v. City of New York*, No. 17 Civ. 4899 (PAE), 2019 WL 3288267, at *14 (S.D.N.Y. July 22, 2019); *see Mortimer v. Wilson*, No. 15 Civ. 7186 (KPF), 2020 WL 3791892, at *11 (S.D.N.Y. July 7, 2020) (denying summary judgment to defense where "the dismissal was because the prosecution determined that it would not be able to prove that C.S. was guilty of the charged crimes").

**\*14** Second, the Municipal Defendants rely on *Lanning* to suggest that a "dismissal in the interest of justice ... preclude[s] a finding that the neglect proceeding was 'terminated in Plaintiffs' favor.' " City Reply at 3. But that case is distinct. It involved a procedural dismissal "in the

interest of justice" under N.Y. Crim. Proc. Law § 170.40, which does not apply here. *See Lanning*, 908 F.3d at 23. And although the Municipal Defendants depict plaintiffs as claiming the family court action was dismissed in the "interest of justice," City Reply at 2–3, plaintiffs have not so stated, here or in the cognizable family court records. *See* Withdrawal Tr.; Dkt. 100-21 ("Order of Dismissal"). More fundamentally, *Lanning* declined to find a favorable termination not only because the dismissal arose under section 170.40, but also because, as to some claims, jurisdiction lacked, and as to others, the state court stated that the dismissals were " 'neither an acquittal of the charges nor any determination of the merits,' but rather 'le[ft] a question of guilt or innocence unanswered.' " 908 F.3d at 28. Here, in contrast, the circumstances of ACS's withdrawal reflect plaintiffs' innocence.

### d. Probable Cause

The Municipal Defendants next argue that the existence of probable cause to commence the removal proceeding, and the family court's initial grant of a temporary order of protection removing A.K. and M.K. from the parents' custody, defeats plaintiffs' malicious-prosecution claim. Plaintiffs counter that both decisions—ACS's to begin removal proceedings, and the family court's to grant an order of protection—rested on falsehoods, without which there was not probable cause. Although the question is close, plaintiffs are correct that, on the standards governing a motion to dismiss, the facts do not establish probable cause.

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). "In the context of a malicious prosecution claim, probable cause under New York law is 'the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.' " *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) (citation omitted). "It is a more exacting standard than the standard required to support an arrest." *Emanuel v. Griffin* ("*Emanuel II*"), No. 13 Civ. 1806 (JMF), 2015 WL 1379007, at *8 (S.D.N.Y. Mar. 25, 2015). However, "[b]ecause obviously less in the way of grounds for belief will be required to justify a reasonable [person] in bringing a civil rather than a criminal suit, when the underlying action is civil in nature[,] the want of probable cause must be patent." *Emanuel I*, 2013 WL5477505, at *8 (quoting *Fink*

Case 8:26-cv-00359-AMN-MJK   Document 8   Filed 04/30/26   Page 68 of 112

Kurtz v. Hansell, Not Reported in Fed. Supp. (2021)

2021 WL 1143619

*v. Shawangunk Conservancy, Inc.*, 15 A.D.3d 754, 790 (3d Dep't 2005)).

"[T]he issuance of a temporary injunction or similar judicial recognition of the merit of the underlying case creates a presumption of probable cause and places upon the plaintiff the burden of pleading facts sufficient to overcome it." *Emanuel II*, 2015 WL 1379007, at *9 (quoting *Butler v. Ratner*, 210 A.D.2d 691, 693–94 (3d Dep't 1994)); *see also Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) (presumption of probable cause created in criminal case by grand jury indictment). That presumption "is rebuttable, and may be overcome by evidence establishing that the police witnesses 'have not made a complete and full statement of facts ... [,] that they have misrepresented or falsified evidence[,] ... or otherwise acted in bad faith.' " *Boyd*, 336 F.3d at 76 (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82–83 (1983)). But to succeed on a malicious prosecution claim after an indictment or other judicial imprimatur, a plaintiff "must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* (quoting *Colon*, 60 N.Y.2d at 83). In the context of child-removal proceedings specifically, one court has held that the presumption of probable cause arising from a removal order may be rebutted where the petition for removal "was either intentionally or recklessly false, as the result of defendants' conduct." *Estiverne II*, 833 F. Supp. 2d at 379. In assessing probable cause, courts "must consider those facts available to the officer at the time of" her actions. *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).

**\*15** The facts pled and otherwise cognizable here give the Municipal Defendants a solid basis to argue that probable cause existed. As of August 30, 2018, when ACS commenced removal proceedings in family court, it had received two reports of potential child abuse about A.K. As reflected in the Petition, on August 13, 2018, Dr. Ranade had reported that, along with a broken femur, A.K. "presented with injuries to her collarbone," which contradicted the parents' account of how A.K.'s injuries had occurred. Am. Compl. ¶ 105. In addition, around August 30, 2018, Dr. Lupica reported to ACS that, when she had seen A.K. on August 8, 2018, A.K. did not have the femur fracture with which she was ultimately diagnosed, and that, based on the Mt. Sinai and HSS x-rays, she did not believe the injuries occurred in the manner or at the time the parents had claimed. According to the Amended Complaint, Glass and Dr. Fabricant had also contacted ACS caseworkers with similar concerns. *Id.* ¶ 79. After receiving

these reports, on August 30, 2018, ACS commenced removal proceedings. *See* Removal Order at 1–2. That ACS's petition was granted by a family court judge after a hearing also gives rise to a rebuttable presumption of probable cause. *See, e.g.*, *Boyd*, 336 F.3d at 76; *Emanuel II*, 2015 WL 1379007, at *9.

Plaintiffs, however, have pled sufficient facts, at this preliminary stage of the litigation, to rebut that presumption. To do so, plaintiffs must show that the relevant government officials have not made a complete statement of facts, have misrepresented or falsified evidence, or have otherwise acted in bad faith. *Boyd*, 336 F.3d at 76. A showing that defendants' submissions to the family court were "intentionally or recklessly false, as the result of defendants' conduct," can meet this standard. *Estiverne II*, 833 F. Supp. 2d at 379.

Here, although the contrary outcome is entirely possible, plaintiffs have plausibly pled that the Municipal Defendants, in seeking the infants' removal, included materially false statements and were reckless in presenting information to the family court. As plaintiffs emphasize, before August 30, 2018, although ACS did not reveal this to the court, *no* doctor had diagnosed A.K. with a clavicle fracture. Dr. Ranade had affirmatively disavowed a conclusive diagnosis of such a fracture, and Dr. Grimm appears to have concluded that A.K. did not even have a clavicle *injury*. *See* Am. Compl. ¶¶ 105 (Dr. Ranade told ACS that x-rays from August 13, 2018 were "inconclusive."), ¶¶ 108–09 (Dr. Grimm stated on August 14, 2018, that "[a] clavicle fracture has not been confirmed by radiology and when I saw the baby, she lifted both arms spontaneously," and informed ACS's Lawson that she reviewed the x-rays "and saw that both clavicles looked the same."). ACS's notes from August 14, 2018 confirm that a positive diagnosis had not been made. *See id.* ¶ 105. Yet, when ACS filed its removal petition on August 30, 2018, it affirmatively claimed that the August 13, 2018 x-rays had been "inclusive" of clavicle injuries. *Id.*; *see also* Petition at 7. Conceivably, that awkward locution as to this key point could stem from a mere error in typing "inconclusive," but the Court cannot assume this on a motion to dismiss. In any event, plaintiffs plead that, at the hearing on the petition, ACS doubled down on this false claim and represented that A.K. "does have a collarbone fracture," that x-rays had "confirmed the collarbone fracture," and that "[m]ost medical doctor staff were able to take x-rays and were able to see that there was also a collarbone fracture." Am. Compl. ¶ 106. Those statements, as pled, were recklessly false, and had no basis in the records or reports before ACS at the time.

Case 8:26-cv-00359-AMN-MJK     Document 8     Filed 04/30/26     Page 69 of 112

Kurtz v. Hansell, Not Reported in Fed. Supp. (2021)
2021 WL 1143619

These falsehoods, as pled, were consequential. The Removal Order expressly relied on that aspect of the Petition, citing the presence of *multiple* unexplained injuries as the family court's basis for granting the application. *See* Removal Order at 1. And ACS's own expert, reviewing the same radiological evidence nine months later, ultimately concluded that "no clavicle fracture was identified," proximately leading ACS to withdraw its petition, with prejudice. *Id.* ¶¶ 175–76. To be sure, discovery may well reveal that these were errors made in good faith, or that evidence not now cognizable or apparent buttressed ACS's claim, at the time, of a clavicle fracture. [13] But on a motion to dismiss, the Court must draw all inferences in plaintiffs' favor. *See Koch*, 699 F.3d at 145. Given that standard, the Court cannot find as a matter of law that the Municipal Defendants' decision to initiate removal proceedings, based in significant part on evidence of a clavicle fracture impeached by the medical facts before them, was supported by probable cause and in good faith. [14]

[13]     It is possible, too, that, after discovery, the Municipal Defendants will prove entitled to qualified immunity. *See, e.g.*, *Cornejo v. Bell*, 592 F.3d 121, 129 (2d Cir. 2010) (affirming grant of qualified immunity to ACS caseworkers at summary judgment); *Walker*, 621 F. App'x at 76. They did not, however, move to dismiss on this ground. And bad faith, if established, can offset facts that might otherwise warrant a finding of qualified immunity. *See, e.g.*, *Carossia v. City of New York*, 39 A.D.3d 429, 430 (1st Dep't 2007). The Court accordingly does not consider this question at the pleading stage.

[14]     Other challenges plaintiffs make to probable cause fare less well. Most significant, they fault the Municipal Defendants for bringing the removal action in the face of Dr. Grimm's assessment that there had not been child abuse. But Dr. Grimm's assessment pre-dated reports of abuse to ACS, including by Dr. Lupica and others, suggesting the parents concealed the true nature and timing of A.K.'s injury. Am. Compl. ¶¶ 64, 79–81, 105. These later reports gave ACS sound reason to reassess its (and Dr. Grimm's) conclusion. *See Id.* ¶¶ 61–67, 77 (noting that, before such reports, ACS had concluded that "there was no reason to remove [A.K.] ... as the [Parents'] story was consistent with injuries as reported by Mt. Sinai"). And contrary to the parents' claim, ACS's decision not to cite Dr.

Grimm's opinion before the family court does not mean that it "suppressed" exculpatory evidence. Plaintiffs do not cite authority that, at any stage of removal proceedings, ACS had a duty to set out for the court all contrary opinions. On the contrary, the Second Circuit has specifically rejected any duty of ACS caseworkers to present exculpatory evidence in family-court proceedings. *See Cornejo v. Bell*, 592 F.3d 121, 129 (2d Cir. 2010) (no constitutional violation where "the heart of the complaint ... is that [ACS] failed to adequately apprise the Family Court of exculpatory information"). Plaintiffs also overreach in claiming that ACS was wrong to rely on Dr. Lupica's assessment, because it, as alleged, was untrue. Unless the Municipal Defendants had a basis to appreciate that Dr. Lupica's account was false, they could consider it in determining whether probable cause supported commencing removal proceedings. *See Simpson v. Town of Warick Police Dep't*, 159 F. Supp. 3d 419, 436–37 (S.D.N.Y. 2016) (collecting cases); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 527 (S.D.N.Y. 2015) ("Even assuming the version of facts set forth by Plaintiff, that Rose felt coerced and gave false information, this alone does not defeat probable cause to arrest.").

### e. Actual Malice

**\*16** Last, plaintiffs must allege that the defendants acted with "actual malice." *Stampf*, 761 F.3d at 198. That burden is easily satisfied because, at the pleadings stage, "lack of probable cause generally raises an inference of malice." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997); *see Emanuel I*, 2013 WL 5477505, at \*7. Accordingly, plaintiffs have pled each element of their claim for malicious prosecution. [15]

[15]     The Municipal Defendants have not moved specifically as to any individual ACS employees, instead arguing that plaintiffs' claims fail across the board. Thus, although it appears that plaintiffs have pled this claim as to only some subset of those defendants, the Court will not *sua sponte* dismiss this claim as to the others.

### 3. Abuse of Process

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 70 of 112

Kurtz v. Hansell, Not Reported in Fed. Supp. (2021)
2021 WL 1143619

Plaintiffs also allege abuse of process. "In order to state a [§ 1983] claim for abuse of process, a plaintiff must establish that the defendants had an improper purpose in instigating the action ... [and] that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Morales v. City of New York*, 752 F.3d 234, 238 (2d Cir. 2014) (quoting *Savino*, 331 F.3d at 77). Thus, plaintiffs must show that defendants: "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino*, 331 F.3d at 76 (citation omitted).

As with malicious prosecution, the existence of probable cause is a complete defense to an abuse-of-process claim. *See Irish v. City of New York*, No. 09 Civ. 5568 (RMB), 2010 WL 5065896, at *6 (S.D.N.Y. Dec. 6, 2010) ("[T]he presence of probable cause negates a claim for abuse of process." (quoting *Sforza v. City of New York*, No. 07 Civ. 6122 (DLC), 2009 WL 857496, at *17 (S.D.N.Y. Mar. 31, 2009))). And the mere presence of an improper motive in commencing or continuing legal proceedings is insufficient to state a claim for abuse of process; instead, plaintiffs must allege that defendants used legal process to achieve a "collateral objective" outside the aims of that process. *See Savino*, 331 F.3d at 77. Thus, "it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing [a legal action]. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Id.*; *see Brandon v. City of New York*, 705 F. Supp. 2d 261, 275 (S.D.N.Y. 2010) (citing "extortion, blackmail, retribution, or similar extraneous harmful goal" as examples of improper collateral purposes).

In moving to dismiss, the Municipal Defendants argue that they had probable cause to commence the removal proceedings, that abuse-of-process claims cannot arise from civil proceedings, and that plaintiffs have not alleged any collateral objective on their part outside the legitimate ends of the process. The first two arguments largely overlap with arguments the Court has found unavailing in the context of plaintiffs' malicious prosecution claims. But the last, the lack of a collateral objective, is unique to the abuse of process claim. And plaintiffs have not responded to that argument.[16] By failing to do so, plaintiffs have abandoned that claim. *Romeo & Juliette*, 2014 WL 4723299, at *7.

16    The only references to abuse of process in plaintiffs' opposition are in two footnotes, in which plaintiffs state that this claim "implicate[s] rights that [are] clearly established under the Constitution" and that it is one of their state-law claims. Pl. Opp'n at 16 n.6, 43 n.15.

**\*17** In any event, defendants are right that the Amended Complaint pleads insufficient facts as to a collateral objective on their part. The Amended Complaint alleges that all defendants commenced the family court proceeding "to insulate [defendants] from various levels of civil liability," to "deprive Plaintiffs of their fundamental constitutional protections," and to "financially harm them by draining a substantial part of their personal resources, in order to leverage and otherwise extract a plea/admission and shield themselves from liability." Am. Compl. ¶¶ 229–30. The first of the theories does not sensibly apply to the Municipal Defendants, who, far from deflecting civil liability, exposed themselves to such liability (viz, this lawsuit) by commencing proceedings. And none reach "beyond and in addition to" the removal proceedings themselves. *See, e.g.*, *Moritz v. Town of Warwick*, No. 15 Civ. 5424 (NSR), 2016 WL 3248494, at*5 (S.D.N.Y. June 9, 2016) ("Deprivation of liberty, embarrassment, inconvenience, and legal expenses are direct, rather than collateral, consequences of arrest that are insufficient to support a malicious abuse of process claim."). At best, plaintiffs insinuate improper motives on the part of these defendants (*e.g.*, retaliation for the parents' litigiousness). But "neither retaliation nor a malicious motive ... is a sufficient collateral objective" to state a claim for abuse of process. *Peter L. Hoffman, Lotte, LLC v. Town of Southampton*, 523 F. App'x 770, 771 (2d Cir. 2013) (summary order). Accordingly, the Court dismisses plaintiffs' claim for abuse of process.

### 4. Conspiracy Under §§ 1983 and § 1985

#### a. *Section 1983*

To succeed on a § 1983 claim for conspiracy, a plaintiff must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). A "plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 71 of 112

Kurtz v. Hansell, Not Reported in Fed. Supp. (2021)

2021 WL 1143619

tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (citation omitted). "Allegations of 'joint conduct' are not sufficient." *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 520 (S.D.N.Y. 2015). Further, a "plaintiff alleging a § 1983 conspiracy must allege a predicate violation of constitutional rights." *Norales v. Acevedo*, No. 20 Civ. 2044 (DLC), 2021 WL 739111, at *10 (S.D.N.Y. Feb. 24, 2021). And "there is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978).

As discussed above, plaintiffs have failed to plausibly allege a conspiracy between any Medical Defendant and ACS. *See supra* pp. 23–24. Nor, beyond conclusory allegations, do plaintiffs plead a conspiracy within ACS, or with any other state actors. The only alleged state participant in the supposed conspiracy was Lawson, who could not have conspired with herself. And, as stated, even had Lawson agreed with other ACS employees, such could not support a § 1983 conspiracy. *See Herrmann*, 576 F.2d at 459. Accordingly, the Court dismisses plaintiffs' claims of a § 1983 conspiracy against all defendants.

### b. *Section 1985*

To prevail on a conspiracy claim under § 1985, Plaintiffs must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007). It also requires a showing that the conspiracy was "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Id.* (citation omitted).

For the reasons above, the Court agrees with the Municipal Defendants that plaintiffs have failed to plausibly allege a conspiracy at all. That alone requires dismissal of this claim. *See, e.g., id.* at 792. Further, as the Municipal Defendants note, plaintiffs have also not alleged that any of the defendants' actions were motivated by a discriminatory animus. Rather, they allege that defendants acted either out of a desire for self-preservation or retaliation. Again, plaintiffs offer no counter to these points. Accordingly, the Court dismisses plaintiffs' § 1985 claim, both because plaintiffs have abandoned it and because it is deficient on the merits. *See Romeo & Juliette*, 2014 WL 4723299, at *7.

### 5. Intentional Deprivation of Constitutional Rights

**\*18** Plaintiffs broadly assert a separate cause of action for "intentional violation of federally protected constitutional rights" against all defendants, accusing all of attempting to interfere with their "rights to effectively and without unnecessary governmental intrusion, parent and otherwise associate with their children." Am. Compl. ¶ 258. Although the Medical Defendants moved to dismiss this claim, the Municipal Defendants appear to have overlooked it. *See generally* City Mem. (seeking dismissal of entire Amended Complaint but failing to address Count Four); City Reply. Without arguments directed to this claim, the Court will not dismiss it *sua sponte*, and, in any event, this claim appears to track (seemingly completely) plaintiffs' claim —which the Court has allowed to proceed against the Municipal Defendants—of malicious prosecution. The Court accordingly does not yet have occasion or cause to dismiss this claim.

### 6. False Imprisonment

Plaintiffs also assert false imprisonment under § 1983. To prevail on that claim, they must plead that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016).

In the Amended Complaint, plaintiffs allege that the "restrictions upon [their] collective liberty to associate with one another constitutes '*confinement*' as a matter of New York

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 72 of 112

Kurtz v. Hansell, Not Reported in Fed. Supp. (2021)
2021 WL 1143619

State and Constitutional law." Am. Compl. ¶ 283. They do not cite any authority in support of this broad conception of "confinement," and do not otherwise allege any actual confinement, let alone that A.K. or any other plaintiff was aware of it. *See id.* ¶¶ 281–86. And after defendants each moved to dismiss because of these failures, plaintiffs again did not respond.[17] This claim is therefore also abandoned, and the Court dismisses it. *See Romeo & Juliette,* 2014 WL 4723299, at *7.

[17]   Plaintiffs mention this claim twice in their opposition, but only to state that it "implicate[s] rights that [are] clearly established under the Constitution," and that it is among their state-law claims. *See* Pl. Opp'n at 16 n.6, 43 n.15.

### 7. *Monell* Liability

Finally, plaintiffs pursue liability on all the above counts against the City of New York under *Monell,* 436 U.S. 658. Municipal liability in a § 1983 action may not rest on *respondeat superior* or vicarious liability. *Id.* at 691. Instead, to hold a municipality liable under § 1983 for unconstitutional actions of its employees, a plaintiff must prove that there was a municipal policy or custom that directly subjected her to a constitutional violation. *See Amnesty Am. v. Town of West Hartford,* 361 F.3d 113, 125 (2d Cir. 2004) ("[C]onstitutional torts committed by city employees without official sanction or authority do not typically implicate the municipality in the deprivation of constitutional rights, and therefore the employer-employee relationship is in itself insufficient to establish the necessary causation." (citation omitted)).

A plaintiff can establish the existence of a policy or custom by showing:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by

> policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York,* 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted) (collecting cases).

Absent an underlying constitutional violation, the Court need not address municipal liability. *See, e.g., Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir. 2006). Accordingly, at the threshold, *Monell* liability cannot obtain for plaintiffs' claims for abuse of process, conspiracy under §§ 1983 and 1985, or false imprisonment. Further, plaintiffs largely base their *Monell* claim on the City's alleged "widespread policy and custom of having doctors and social workers act under the color of law ... and bring the coercive and overwhelming forces of governmental authority to bear on individuals and families without accountability." Am. Compl. ¶ 262. However, the Court has already held that, here, the medical doctors of whom plaintiffs complain are not state actors, and so cannot have been party to any constitutional violations. Plaintiffs' notion that a City policy relating to these professionals—whose reporting is, in fact, required by state law, *see* N.Y. Soc. Serv. Law § 413—could support liability on the part of the City thus fails at the threshold. *See Segal,* 459 F.3d at 219. In any event, plaintiffs do not plausibly allege any such policy. Instead, they merely recite the facts of their own experience with ACS, and conclusorily declare it representative of a broader policy or custom. *See* Am. Compl. ¶¶ 266–71; *e.g., Aragon v. New York,* No. 14 Civ. 9797 (ER), 2017 WL 2703562, at *6 (S.D.N.Y. June 22, 2017) (dismissing *Monell* claim where plaintiffs "allege[d] the existence of a practice adopted by the City solely based on Plaintiff's alleged experience").

**\*19**  As to plaintiffs' surviving § 1983 claims, the Amended Complaint alleges only the third basis for *Monell* liability: a consistent and widespread practice, custom, or usage of the City.[18] Where this theory is adequately pled, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryant Cnty. v. Brown,* 520 U.S. 397, 404 (1997).

Case 8:26-cv-00359-AMN-MJK Document 8 Filed 04/30/26 Page 73 of 112

Kurtz v. Hansell, Not Reported in Fed. Supp. (2021)

2021 WL 1143619

18    Plaintiffs' opposition brief also suggests the City may be liable based on a "failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference." Pl. Opp'n at 41 (quoting *Brandon*, 705 F. Supp. 2d at 276–77). But the Amended Complaint does not allege facts supporting this theory of municipal liability. *See* Am. Compl. ¶¶ 261–80; *Cruz v. City of New York*, No. 15 Civ. 2265 (PAE), 2016 WL 234853, at *6 (S.D.N.Y. Jan. 19, 2016) (holding that plaintiffs "cannot add [new theories of *Monell* liability] in an opposition brief" and collecting cases). Similarly, plaintiffs cite cases discussing instances in which "a municipality may be liable for a single incident under proper circumstances," Pl. Opp'n at 40–41 (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986)), but do not explain why such circumstances are present here, let alone identify allegations that support that theory. These theories, too, cannot survive.

Here, plaintiffs allege that it is a "custom and practice" of the City to

> initiate[ ] a removal proceeding on less than probable cause knowing and relying on the fact that for an overwhelming percentage of parents the financial and emotional wherewithal to stand their ground to the bitter end is not possible and that they accept a negotiated plea which, in turn, insulates ACS from liability.

Am. Compl. ¶ 278. Plaintiffs provide one factual datum in support: Iwenofu's statement that, in her 16 years working for ACS, she had never seen a case discharged without "someone taking the blame." *Id.* ¶¶ 129, 279. But that stray observation does not speak to any broader policy of maliciously prosecuting individuals. It says nothing about whether the actions she described were commenced with or without probable cause or malice. And if all those actions, in fact, concluded in a compromise, as Iwenofu's statement implies, none would have terminated in favor of the accused. *See, e.g.*, *Rothstein*, 373 F.3d at 286.

Otherwise, plaintiffs do not cite any facts in support of the existence of this alleged policy. Nor do they allege any prior legal actions involving the same or similar issues, or even any specific family-court proceedings, even if they did not lead to a § 1983 action, that fit the pattern alleged here. *See, e.g.*, *Cruz*, 2016 WL 234853, at *5 (allegations of eight previously settled civil rights actions "fall far short of establishing a custom sufficient to support a *Monell* claim"); *Calderon v. City of New York*, 138 F. Supp. 3d 593, 613 (S.D.N.Y. 2015) (dismissing *Monell* claims where plaintiff "does not cite *any* civil cases that implicated the unlawful practice she challenges"); *Tieman v. City of Newburgh*, No. 13 Civ. 4178 (KMK), 2015 WL 1379652, at *17 (S.D.N.Y. Mar. 26, 2015) (same where plaintiff cited 13 prior cases involving similar allegations, but none had "result[ed] in an adjudication of liability"). Devoid of any concrete factual allegations from which the existence of an unconstitutional municipal policy, custom, or usage that caused plaintiffs' injuries could be inferred, the Amended Complaint fails to state a claim for municipal liability under § 1983. The Court thus dismisses plaintiffs' *Monell* claim against the City. [19]

19    Plaintiffs also name Hansell, ACS's Commissioner, as a defendant, but only in his official capacity and insofar as he is "the government official whose edicts and acts represent the official policy, practices, customs and regulations of ACS." *See* Am. Compl. ¶ 12. They do not allege his personal involvement in any unconstitutional acts. His dismissal may well be warranted under the same principles discussed above. *See, e.g.*, *D'Alessandro v. City of New York*, 713 F. App'x 1, 10 (2d Cir. 2017). Defendants, however, have not moved to dismiss him from this action based on his lack of personal involvement, and the Court will not do so *sua sponte*.

*20    Accordingly, the Court will dismiss all federal claims against the Medical Defendants, because plaintiffs have not plausibly alleged that they were state actors or conspired with state actors in any relevant way. The Court also dismisses plaintiffs' claims against the Municipal Defendants under § 1983 for abuse of process, false imprisonment, and conspiracy, and under § 1985 for conspiracy. However, the Court denies the Municipal Defendants' motion to dismiss plaintiffs' § 1983 claim for malicious prosecution and a violation of their substantive due process rights. As to the

City of New York, however, the Court dismisses those latter claims, as well.

## C. State Claims

### 1. Supplemental Jurisdiction

Federal district courts have discretion to exercise supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Federal and state law claims are part of the same case or controversy if they share "a common nucleus of operative fact." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997). Claims share such a nucleus if "the facts underlying the federal and state claims substantially overlap or the federal claim necessarily brings the facts underlying the state claim before the court." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (cleaned up). Here, plaintiffs bring many state-law claims, some of which overlap nearly entirely with their federal claims, and others of which arise from a common nucleus of operative facts. Accordingly, with one exception discussed below, the Court exercises its supplemental jurisdiction over plaintiffs' state-law claims.

### 2. Malicious Prosecution

As to the Municipal Defendants, the elements of malicious prosecution under New York law are largely the same as under § 1983, save for the requirement of a constitutional violation. *See Stampf*, 761 F.3d at 198; *see also Lanning*, 908 F.3d at 24–25 (noting that New York law requires a lesser "favorable termination" showing than § 1983 does, as New York law requires only that the termination of the action is "not inconsistent with the Plaintiff's innocence" (citation omitted)). The Court thus denies the Municipal Defendants' motion to dismiss plaintiffs' state-law claim for malicious prosecution for the reasons given above.

Plaintiffs have also named the City of New York in this count. Although § 1983 claims may not be asserted based on a theory of *respondeat superior*, New York law does provide for vicarious liability in some circumstances. *See, e.g.*, *Velez v. City of New York*, 730 F.3d 128, 136–37 (2d Cir. 2013); *Biswas v. City of New York*, 973 F. Supp. 2d 504, 539–40

(S.D.N.Y. 2013); *Swierczynski v. O'Neill*, 41 A.D.3d 1145, 1146 (4th Dep't 2007). The Municipal Defendants have not addressed this point. The Court accordingly leaves standing the state-law claim for malicious prosecution against the City.

As to the Medical Defendants, the question is more complex. To state a claim for malicious prosecution under New York law, a plaintiff must allege "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Stampf*, 761 F.3d at 198. As under § 1983, such claims, under New York law, can arise out of civil proceedings. *See, e.g.*, *Perryman v. Village of Saranac Lake*, 41 A.D.3d 1080, 1081 (3d Dep't 2007). Unlike under § 1983, however, New York law authorizes claims for malicious prosecution against private individuals, even if not state actors, where they "played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Rohman*, 215 F.3d at 217 (quoting *DeFilippo v. County of Nassau*, 183 A.D.2d 695, 696 (2d Dep't 1992)).

**\*21** The Medical Defendants argue, *inter alia*, that plaintiffs' state-law claim for malicious prosecution against them fails because ACS, not they, initiated the removal proceeding. As to most such defendants, the Court agrees. Under New York law, "[t]he mere reporting of a crime to police and giving testimony are insufficient" to establish liability for malicious prosecution. *Estiverne v. Esernio-Jenssen* ("*Estiverne I*"), 581 F. Supp. 2d 335, 348 (E.D.N.Y. 2008) (quoting *Present v. Avon Prods., Inc.*, 253 A.D.2d 183, 189 (1st Dep't 1999)). That applies even if a defendant gave "false information to the authorities." *Id.* (quoting *Lupski v. County of Nassau*, 32 A.D.3d 997, 998 (2d Dep't 2006)). A private individual who falsely reports to the authorities can be held responsible for initiating a prosecution only upon a "showing that, at the time the information was provided, the defendant knew it to be false." *Id.*

Largely for the reasons given above in explaining why such private reporters are not state actors, the Court holds that plaintiffs have not plausibly alleged that Dr. Ranade, Dr. Fabricant, Dr. Platt, Dr. Shaykh, or Glass played an active role in the removal proceedings, either by encouraging or advising ACS to act. Rather, setting aside the Amended Complaint's speculative and conclusory allegations, plaintiffs allege only that these defendants reported suspected child abuse to ACS, as they were required to do by N.Y. Soc. Serv. Law § 413.

Case 8:26-cv-00359-AMN-MJK   Document 8   Filed 04/30/26   Page 75 of 112

Kurtz v. Hansell, Not Reported in Fed. Supp. (2021)
2021 WL 1143619

Dr. Ranade had examined A.K. and observed both a femur fracture and potentially injured clavicle, and reported such observations to ACS—tempering her assessment by noting that she could not confirm a clavicle fracture. *See* Am. Compl. ¶ 105. Dr. Fabricant and Glass may have repeated Dr. Lupica's story to ACS but, even assuming that story was false, plaintiffs have not plausibly alleged that these defendants knew it to be so at the time. And Dr. Platt and Dr. Shaykh are not alleged to have ever contacted ACS. Accordingly, plaintiffs have not plausibly alleged that any of these defendants initiated the removal proceedings. The Court grants their motions to dismiss the state-law claims for malicious prosecution against them.[20]

[20]    Although the above reasoning independently requires dismissal, these defendants are also protected by N.Y. Soc. Serv. Law § 419, which confers immunity against state-law liability for the mandatory reporting of suspected child abuse or neglect, absent "willful misconduct or gross negligence." *Isabelle V. v. City of New York,* 150 A.D.2d 312, 313 (1st Dep't 1989). Thus, "[m]andated reporters need not await conclusive evidence of abuse or maltreatment but must act on their reasonable suspicions[,] and the law allows them a degree of latitude to err on the side of protecting children who may be suffering from abuse." *Id.* Because plaintiffs have not plausibly alleged willful misconduct or gross negligence by these doctors, and have pled that A.K. presented with severe injuries, these defendants, even taking plaintiffs' non-conclusory allegations as true, acted reasonably in the situation, triggering immunity under section 419.

As to Dr. Lupica, however, the analysis differs. The Amended Complaint plausibly alleges that her reports, both to the other private individuals on the August 27–30, 2018 email chain and to an ACS caseworker, were *deliberately* false. *See supra* pp. 20–21. It alleges that, once confronted with her failure to diagnose A.K.'s broken femur, she declared that there was "no way" that A.K. had that injury at the time of her initial examination. *See* Am. Compl. ¶¶ 74–75. And it alleges that Dr. Lupica, apparently to enhance the credibility of her false statement, further falsely claimed to have examined—or at least been in the presence of—A.K. for four hours, rather than the five minutes that she actually spent with A.K. The Amended Complaint further alleges that Dr. Lupica, in an error that exposed her unfamiliarity with

A.K., misidentified A.K. as male. *Id.* Such allegations are enough to push plaintiffs' claim of Dr. Lupica's deliberate lying from merely conceivable to plausible. *See Iqbal,* 556 U.S. at 678.[21]

[21]    In their reply, the Weill Cornell defendants argue that Dr. Lupica was correct in late-August 2018, and that A.K. did not, in fact, have the alleged femur fracture when she appeared at Weill Cornell on August 8, 2018. *See* Weill Cornell Reply at 8–9. That is of course possible. And the discovery that will now commence will, of necessity, give the surviving defendants a fulsome opportunity to test whether Dr. Lupica's or the parents' version of events on August 8–9, 2018, is true, and whether Dr. Lupica had a good-faith basis to make the claims that she did. But at this stage of the litigation, where the Court's review is limited to the pleadings, the Court must credit the well-pled allegations in the Amended Complaint.

**\*22** Accepting that allegation as true, plaintiffs have plausibly asserted a claim under New York law for malicious prosecution against Dr. Lupica. A private defendant can "initiate" a prosecution by giving false information to the authorities if "at the time the information was provided, the defendant knew it to be false." *Lupski,* 32 A.D.3d at 998; *see Emanuel I,* 2013 WL 5477505, at *7; *Estiverne I,* 581 F. Supp. 2d at 347–49. Here, the Amended Complaint so alleges as to Dr. Lupica. It alleges that, on the day that ACS commenced removal proceedings against plaintiffs, Dr. Lupica contacted ACS to falsely report child abuse, knowing her report was false. *See* Am. Compl. ¶¶ 75, 81. Those facts plausibly assign her an "active role" in the initiation of the removal proceedings. *Rohman,* 215 F.3d at 217. The Amended Complaint also pleads the other elements of this tort as to Dr. Lupica. The removal proceedings terminated in the parents' favor. *See supra* pp. 28–29. And assuming that the content of Dr. Lupica's report to ACS was false, plaintiffs have pled a lack of probable cause to so report. *See, e.g.,* *Emanuel I,* 2013 WL 5477505, at *7. Last, because the "lack of probable cause generally raises an inference of malice," *Ricciuti,* 124 F.3d at 131, plaintiffs have also plausibly alleged malice.[22]

[22]    Dr. Lupica argues that she is immune under N.Y. Soc. Serv. Law § 419. *See* Weill Cornell Mem. at 13–14. But section 419 does not apply to instances of "willful misconduct" or "gross negligence," as

is plausibly alleged here. *Isabelle V.*, 150 A.D.2d at 313.

Accordingly, the Court denies Dr. Lupica's motion to dismiss this claim. Because New York law, unlike § 1983, recognizes vicarious liability for employers in some circumstances, *see Velez*, 730 F.3d at 136–37, and the Weill Cornell Defendants have not offered any counter on this point, the Court also denies the motion to dismiss the claim against Weill Cornell. As to all other Medical Defendants, this claim is dismissed.

### 3. Abuse of Process

Plaintiffs' claim for abuse of process under New York law is governed by the same standards as their claim under § 1983. *See Savino*, 331 F.3d at 76. For the same reasons given above in connection with the § 1983 abuse-of-process claim —that plaintiffs have abandoned this claim and also failed to plausibly allege a collateral objective by any defendant— the Court dismisses this claim. As to the latter point, insofar as plaintiffs allege false reporting by Medical Defendants such as Dr. Lupica, "courts have dismissed abuse of process claims for [lack of an ulterior motive] where" individuals "allegedly filed false allegations of abuse and harassment to obtain a protective order" against an individual, where the "ulterior and illegitimate" purpose identified was to harass a family member. *Silver v. Kuehbeck*, 217 F. App'x 18, 21 (2d Cir. 2007) (summary order). Even there, "the falsity of the allegations and defendant's malicious motive in making them do not, of themselves, give rise to a cause of action for abuse of process." *Id.* (quoting *Butler v. Ratner*, 210 A.D.2d 691, 692 (3d Dep't 1994)). Plaintiffs thus have not plausibly alleged abuse of process against any defendants under state law.

### 4. False Imprisonment

Plaintiffs' claim for false imprisonment under state law similarly tracks their § 1983 claim for false imprisonment. *See* Am. Compl. ¶¶ 281–86. For the reasons above, the Amended Complaint does not state a claim for false imprisonment based on the removal of A.K. and M.K. from the parents' custody; and plaintiffs, in any event, have abandoned this claim. The Court dismisses the state-law claim for false imprisonment.

### 5. Intentional Infliction of Emotional Distress

"Under New York law, a claim for intentional infliction of emotional distress must satisfy an 'exceedingly high legal standard.' " *DiRuzza v. Lanza*, 685 F. App'x 34, 36 (2d Cir. 2017) (summary order) (quoting *Chanko v. Am. Broad. Cos. Inc.*, 27 N.Y.3d 46, 57 (2016)). First, the tort "may be invoked only as a last resort, to provide relief in those circumstances where traditional theories of recovery do not." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (citation omitted). Second, a party alleging IIED must plead conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Chanko*, 27 N.Y.3d at 56 (citation omitted). The time to bring a claim for IIED, as with most other intentional torts, is one year from the alleged actions giving rise to the claim. *See, e.g.*, *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 491 (2007) (citing N.Y. C.P.L.R. § 215).

**\*23** Here, plaintiffs argue that the Medical Defendants' false reporting, and ACS's malicious prosecution of the removal proceeding, constitutes IIED. The Medical Defendants all argue that plaintiffs' IIED claim is time-barred because plaintiffs filed this action more than one year after the last of their alleged actions or communications with ACS took place. They are correct. Plaintiffs filed this action on May 1, 2020. *See* Dkt. 1. A timely claim for IIED thus must arise from actions on or after May 1, 2019. But the last alleged action by any Medical Defendant was Dr. Ranade's October 4, 2018 unauthorized x-rays of A.K. Am. Compl. ¶ 125; *see also id.* ¶ 29 (describing September 10, 2018 report to ACS that parents brought A.K. to see Dr. Ranade unaccompanied). And the last alleged acts by Dr. Lupica, Dr. Fabricant, Dr. Platt, Dr. Shaykh, and Glass occurred earlier, in August 2018. *See, e.g.*, *id.* ¶¶ 72–83. New York courts have specifically held that, for IIED claims based on false reporting to ACS, such claims accrue on the date of the false report, even where the resulting removal of a child takes place later on. *See, e.g.*, *Williams v. Georgopoulos*, 184 A.D.3d 608, 609 (2d Dep't 2020) (collecting cases). Accordingly, no acts on which the IIED claim against the Medical Defendants is based took place within the one-year statute of limitations set by N.Y. C.P.L.R. § 215. That forecloses plaintiffs' IIED claim against the Medical Defendants.[23]

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 77 of 112

Kurtz v. Hansell, Not Reported in Fed. Supp. (2021)
2021 WL 1143619

23    Plaintiffs argue, summarily in a footnote, that the Medical Defendants' conspiracy with ACS makes their claim timely. *See* Pl. Opp'n at 46 n.16. They do not cite authority for that notion. And, as held above, the Amended Complaint does not plausibly allege any such conspiracy.

As to the Municipal Defendants, their actions arguably continued into May 2019, when they ultimately withdrew the removal Petition. Perhaps for this reason, they do not move on the basis of the statute of limitations. But dismissal of this claim against the Municipal Defendants is required for an independent reason. As defendants rightly argue, a "cause of action alleging intentional infliction of emotional distress should [be] dismissed as duplicative of [a] cause[ ] of action alleging malicious prosecution." *Leonard v. Reinhardt*, 20 A.D.3d 510, 510 (2d Dep't 2005) (collecting cases). Because IIED "may be invoked only as a last resort," where alleged conduct "falls well within the ambit of other traditional tort liability," IIED claims generally are to be dismissed. *Salmon*, 802 F.3d at 256; *see id.* at 257 ("[B]ecause other tort remedies were available to Salmon, the district court correctly dismissed his intentional infliction claim."); *see also Shaheed v. City of New York*, 287 F. Supp. 3d 438, 455 (S.D.N.Y. 2018) (citing malicious prosecution as one such tort, and dismissing IIED claim because injuries were not "irremediable through traditional tort remedies"), *aff'd sub nom. Shaheed v. Kroski*, 833 F. App'x 868 (2d Cir. 2020); *Leonard*, 20 A.D.3d at 510 (same). Here, as the Court has held, ACS's decision to pursue removal proceedings, to the extent it may be found outrageous or intolerable, is redressable within the framework of the familiar tort of malicious prosecution. Indeed, the facts that the Amended Complaint relies on in claiming IIED almost entirely repeat those offered in support of their malicious prosecution claim. *See* Pl. Opp'n at 46 ("ACS, therefore, acting in concert with the members of the Weil Cornell/Ranade/HSS Conspiracy both ignored significant exculpatory evidence and manufactured a false or reckless diagnosis." (footnote omitted)). *Compare* Am. Compl. ¶¶ 191–226 (malicious prosecution), *with id.* ¶¶ 322–30 (IIED). Accordingly, the Court dismisses plaintiffs' IIED claim against the Municipal Defendants, as duplicative of their malicious prosecution claim against those defendants.

### 6. Loss of Consortium and Companionship

All defendants have moved to dismiss plaintiffs' claims for loss of consortium and loss of companionship, on several grounds. Plaintiffs have not responded. This claim is abandoned, and the Court dismisses it. *See Romeo & Juliette*, 2014 WL 4723299, at *7.

### 7. Medical Malpractice

Plaintiffs bring two claims for medical malpractice: (1) against Dr. Lupica, Dr. Shaykh, and Weill Cornell for allegedly failing to diagnose A.K.'s broken femur on August 8, 2018; and (2) against Dr. Ranade, for allegedly taking unauthorized x-rays of A.K., without informed consent, on October 4, 2018. *See* Am. Compl. ¶¶ 287–315. Those defendants each move to dismiss those claims against them.

**\*24**  The Court denies the Weill Cornell Defendants' motion. They first argue that, because A.K. promptly received proper treatment for her fracture at Mt. Sinai, "any claim for purported malpractice is limited to treatment over the course of less than 24 hours." Weill Cornell Mem. at 22. Although that fact bears on the damages available to plaintiffs, it does not defeat the claim that defendants "deviat[ed] from accepted medical standards" in examining A.K. at the outset of her care. *E.g.*, *Gold v. Hershey*, 90 A.D.2d 704, 705 (1st Dep't 1982). Second, they argue that the Court should exercise its discretion to decline supplemental jurisdiction over this claim. But Weill Cornell's August 8, 2018 examination of A.K. is interwoven with other issues in this case—including whether Dr. Lupica truthfully reported her assessment that night. And other claims implicating these events, against both Dr. Lupica and others, are proceeding to discovery. Absent "exceptional circumstances" or "other compelling reasons for declining jurisdiction," the Court will not decline supplemental jurisdiction over this claim. 28 U.S.C. § 1367(c) (4).

As to the claim against Dr. Ranade, however, the Court declines to exercise such jurisdiction. *See* Mt. Sinai Mem. at 19. The Court has dismissed all other claims against Dr. Ranade. And Dr. Ranade's October 4, 2018 x-rays, which she took months after the removal proceedings commenced and never allegedly relayed to ACS or anyone else, are unrelated to any of plaintiffs' surviving claims against any remaining defendants. The Court dismisses this claim, without prejudice to plaintiffs' right to pursue it in state court.

### 8. Defamation

Last, plaintiffs bring a claim for defamation, solely against Dr. Ranade, Dr. Platt, and Glass. In support, they cite (1) Dr. Platt's emailed statements, on August 27–30, 2018, that the parents were "dangerous" and that she could not "imagine how ACS released this vulnerable infant to the family," Am. Compl. ¶¶ 376–78; (2) Dr. Ranade's reports to ACS of suspected child abuse or neglect, *id.* ¶¶ 379–81; and that Glass "reiterated and repeated" the claim that the parents were "dangerous," *id.* ¶ 382.

Defendants argue that these claims are time-barred. Plaintiffs have not responded. The Court holds with defendants. Under New York law, an action for defamation or slander must "be commenced within one year of the publication or utterance of the defamatory statement," and "[d]iscovery does not extend the one-year period." *Frederick v. Fried*, 10 A.D.3d 444, 445 (2d Dep't 2004) (collecting cases). Plaintiffs filed this action on May 1, 2020, meaning that only statements on or after May 1, 2019 may be actionable. *See id.* All of Glass's, Dr. Platt's, and Dr. Ranade's allegedly defamatory statements occurred between August and October 2018. Accordingly, plaintiffs' claim for defamation is dismissed as untimely.

### CONCLUSION

For the foregoing reasons, the Court rules as follows on the motions to dismiss.

The Court grants in full the motions to dismiss by the HSS Defendants and the Mt. Sinai Defendants.

The Court grants in part and denies in part the motion by the Municipal Defendants. The Court dismisses all claims against the Division of Child Protection, ACS, and the New York Comptroller, and all federal claims against the City of New York. The Court also dismisses plaintiffs' claims for abuse of process under federal and state law, false imprisonment under federal and state law, conspiracy under §§ 1983 and 1985, loss of companionship and consortium under state law, and IIED under state law, against all Municipal Defendants. However, the Court denies the Municipal Defendants' motion as to plaintiffs' claims (1) for malicious prosecution, under federal and state law, as alleged against the individual Municipal Defendants; (2) for violation of plaintiffs' right to

family integrity under 42 U.S.C. § 1983, as alleged against the individual Municipal Defendants; and (3) for malicious prosecution, only under state law, as alleged against the City of New York.

Finally, the Court grants in part and denies in part the motion by the Weill Cornell Defendants. The Court dismisses all federal claims against those defendants, as well as the state-law claims against them for false imprisonment, abuse of process, loss of consortium and companionship, IIED, and defamation. The Court also dismisses all other claims against Dr. Platt, and the state-law malicious prosecution claim against Dr. Shaykh. The Court, however, denies the motion to dismiss plaintiffs' claims (1) against Dr. Lupica and Weill Cornell for malicious prosecution under state law; and (2) against Dr. Lupica, Dr. Shaykh, and Weill Cornell for failure to diagnose.

**\*25** Accordingly, this case will proceed solely as to the following claims: (1) malicious prosecution under § 1983 against the individual Municipal Defendants; (2) violation of the family's substantive due process rights under § 1983 against the individual Municipal Defendants; (3) malicious prosecution under state law against the individual Municipal Defendants, the City of New York, Dr. Lupica, and Weill Cornell; and (4) failure to diagnose against Dr. Lupica, Dr. Shaykh, and Weill Cornell.

The Clerk of Court is respectfully directed to terminate as parties to this case defendants Dr. Sheena Ranade, Mt. Sinai Hospital, Dr. Peter Fabricant, LSW Karen Glass, the Division of Child Protection, the New York Comptroller, and the Administration for Children's Services. The Clerk of Court is further directed to terminate the motions pending at dockets 89, 93, 99, and 112.

An order scheduling an initial conference in this case will issue shortly.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 1143619

---

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (6)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Verified Complaint and Jury Demand**<br>Shveta Kakar KURTZ, Daniel L. Kurtz, Amna Kakar Kurtz (A Minor Child), Mia Kakar Kurtz (A Minor Child), Plaintiffs, v. David HANSELL, as the Duly Appointed Commissioner of the New York City Administration for Children's Services, The Division of Child Protection, The City of New York, Yscary Rodriguez, Individually and as a Caseworker employed by ACS, "Ms. Bhojranie Maygoo," Individually and as a Caseworker employed by Acs, Eunice Iwenofu, Individually and as a Caseworker employed by Acs, Brenda Lawson, Individually and as an ACS Case Manager/Supervisor, Esperanza Sandoval, Individually and as a Supervisor in the Family Support Unit employed by ACS, Dr. Peter Fabricant, Individually and as a Treating Physician and State Actor Operating Under Color of Law, Dr. Marie Lupica, as an Individual, Treating Physician and State Actor Operating Under Color of Law, Dr. Ramzi Marwan Shaykh, Individually and as a Treating Physician, Dr. Shari L. Platt, as an Individual and as a Treating Physician and State Actor Operating Under Color of Law, Dr. Sheena Ranade, as an Individual, as a Treating Physician, and as an Individual Acting Under Color of Law, LSW Karen Glass, as an Individual and as a State Actor, Unnamed ACS Workers and Employees 1-10, Unnamed Employees and Workers of New York-Presbyterian Hospital/Weill Cornell Medical Center 1-10, Unnamed Workers and Employees of Mt. Sinai Hospital 1-10, and New York-Presbyterian Hospital/Weill-Cornell Medical Center., Defendants.<br>2020 WL 13856900 | — | S.D.N.Y. | May 01, 2020 | Pleading |

**WESTLAW**   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **2.  Medical Defendants' Reply Memorandum of Law in Further Support of Their Motion for Summary Judgment**<br>Shveta Kakar KURTZ, Daniel L. Kurtz, Amna Kakar Kurtz (A Minor Child), Mia Kakar Kurtz (A Minor Child), Plaintiffs, v. David HANSELL, as the Duly Appointed Commissioner of the New York Administration for Children's Services, The Division of Child Protection, Administration for Children's Services, Mt. Sinai Hospital, New York Comptroller, The City of New York, Yscary Rodriguez, Individually and as a Caseworker employed by ACS, "Ms. Bhojranie Maygoo", Individually and as a Caseworker employed by ACS, Eunice Iwenofu, Individually and as a Caseworker employed by ACS, Brenda Lawson, Individually and as an ACS Case Manager/Supervisor, Esperanza Sandoval, Individually and as a Supervisor in the Family Support Unit employed by ACS, Dr. Peter Fabricant, Individually and as a Treating Physician and State Actor Operating Under Color of Law, Dr. Marie Lupica, as an Individual, Treating Physician and State Actor Operating Under Color of Law, Dr. Ramzi Marwan Shaykh, Individually and as a Treating Physician, Dr. Shari L. Platt, as an Individual and as a Treating Physician and State Actor Operating Under Color of Law, Dr. Sheena Ranade, as an Individual, as a Treating Physician, and as an Individual Acting Under Color of Law, LSW Karen Glass, as an Individual and as a State Actor, Unnamed ACS Workers and Employees 1-10, Unnamed Employees and Workers of New York-Presbyterian Hospital/ Weill Cornell Medical Center 1-10, Unnamed Workers and Employees of Mt. Sinai Hospital 1-10, and New York-Presbyterian Hospital/Weill-Cornell Medical Center, Defendants.<br>2022 WL 20717162 | — | S.D.N.Y. | Aug. 19, 2022 | Motion |
| **3.  2023 WL 7544216**<br>A.K. v. Lupica et al.<br>2023 WL 7544216 | — | S.D.N.Y. | July 13, 2023 | Jury Verdict |
| **4.  Judgment**<br>Shveta Kakar KURTZ, et al., Plaintiffs, v. Dr. Marie LUPICA, et al., Defendants.<br>2023 WL 6367915 | — | S.D.N.Y. | Sep. 27, 2023 | Jury Verdict |
| **5.  Verdict Form**<br>Shveta Kakar KURTZ, Daniel L. Kurtz, solely in their roles as parent-guardians, and Amna Kakar Kurtz, Plaintiffs, v. Dr. Marie LUPICA and New York Presbyterian Hospital/ Weill-Cornell Medical Center, Defendants.<br>2023 WL 6367912 | — | S.D.N.Y. | July 13, 2023 | Jury Verdict |
| **6.  Docket 1:20-CV-03401**<br>Kakar Kurtz et al v. Hansell et al | — | S.D.N.Y. | May 01, 2020 | Docket |

**History (4)**

**Direct History (1)**

1. Kurtz v. Hansell
2021 WL 1143619 , S.D.N.Y. , Mar. 24, 2021

**Related References (3)**

2. Kurtz v. Hansell
664 F.Supp.3d 438 , S.D.N.Y. , Mar. 27, 2023

*Affirmed by*

3. Kakar Kurtz v. Lawson
2025 WL 39860 , 2nd Cir.(N.Y.) , Jan. 07, 2025

4. Kurtz v. Lupica
2023 WL 3510646 , S.D.N.Y. , Apr. 26, 2023

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 83 of 112

Tuff v. Village of Yorkville Police Department, Not Reported in Fed. Supp. (2017)

2017 WL 401241

🚩 KeyCite Yellow Flag

Distinguished by Logan v. City of Schenectady, N.D.N.Y., August 13, 2019

2017 WL 401241
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jared TUFF, Plaintiff,
v.
VILLAGE OF YORKVILLE POLICE DEPARTMENT, Village of Yorkville, Police Chief DeLuca, Officer Guca, Defendants.

6:16-CV-473
|
Signed 01/30/2017

**Attorneys and Law Firms**

Ann Manion, Office of Ann W. Manion, Utica, NY, for Plaintiff.

Molly M. Ryan, Goldberg, Segalla Law Firm—Syracuse Office, Syracuse, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior United States District Judge

**I. INTRODUCTION**

**\*1** Plaintiff Jared Tuff commenced this action asserting claims pursuant to 42 U.S.C. § 1983 and New York state law. Compl. # 1. Defendants move to dismiss on various grounds. Dkt. # 4. Plaintiff opposes the motion, dkt. # 12, and Defendants have replied. Dkt. # 13. The Court will decide the motion without oral argument. For the reasons that follow, the motion is granted in part and denied in part.

**II. BACKGROUND** [1]

[1]   For the purposes of this motion, the Complaint's factual allegations are assumed to be true. *See Fahs Constr. Group, Inc. v. Gray*, 2011 U.S. Dist. LEXIS 7822, at \*5-6, 2011 WL 294269 (N.D.N.Y. Jan. 27, 2011).

On April 22, 2015, Plaintiff, an Africa American male, was driving an automobile east on Oriskany Blvd. in the Village of Yorkville, New York. After passing under a traffic light, Defendant Officer Guca, a member of the Village of Yorkville Police Department, pulled Plaintiff over. When he approached Plaintiff's car, Guca unbuckled his holster and placed his hand on his weapon. Plaintiff asked why he was being pulled over. Guca told Plaintiff that he failed to stop at a red light. Guca then grabbed Plaintiff, pulled him out of his car, and "slammed him across the hood of the car facing away from the driver's seat." Compl. ¶ 13. Plaintiff felt threatened and fearful, and received bruising as a result of being pulled out of the vehicle and "slammed" on the hood of the car. *Id.* ¶ 27. Guca threatened to arrest Plaintiff if Plaintiff moved. Guca "patted" plaintiff down, and then searched through Plaintiff's car although "Guca had no reasonable cause to search the inside of the car." *Id.* ¶ 14. Plaintiff was not charged with having any contraband in the car, but Guca issued Plaintiff a traffic ticket alleging that Plaintiff failed to stop at a traffic control device.

On the return date of the ticket, Plaintiff requested that the Village Justice set the matter for trial. At the ensuring bench trial in Village Court, Guca testified that the light was red when Plaintiff drove through it. Plaintiff testified that the light was not red, and contended that Guca had lied because Guca w as unable to see the traffic light from his vantage point at the time Plaintiff proceeded under the light. After the trial, Plaintiff "was advised that the traffic ticket was dismissed and/or that he was not guilty of the infraction." *Id.* ¶ 21.

Plaintiff maintains that "[t]he policies, procedures and practices of the defendants as set forth in this complaint violate the rights of plaintiff under the Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. Section 1983 because: the search was conducted without probable cause or reason to believe that any contraband, dangerous materials or incriminating objects or weapons would be found. Thus each [*sic*] search constitutes an unreasonable search and seizure in violation of the Fourth Amendment and Fourteenth Amendments of the United States Constitution. The search constitutes a gross invasion of the rights of the plaintiff to privacy and due process under the Fifth Amendment, Ninth Amendment and Fourteenth Amendment to the United States Constitution." *Id.* ¶ 33; *see also, id.*, ¶ 22, ¶ 28. [2] Plaintiff also appears to allege that the Village had a policy of failing to properly train and supervise its police officers in the appropriate use of physical force. *Id.* ¶¶ 29-30. [3]

2017 WL 401241

2     Plaintiff alleges that the "type of search" he was subjected to "is a policy and procedure either written or unwritten of the defendant when pulling over individuals such as plaintiff— African Americans—for violation of traffic laws." Compl. ¶ 22. Plaintiff also alleges that "[d]espite knowledge of these institutionalized practices, the defendants DeLuca and [the] Village have at no time taken any effective action to prevent Police Department personnel from continuing to engage in this type of misconduct." *Id.* ¶ 28.

3     Plaintiff alleges:

> Defendants DeLuca and [the] Village had prior notice of the vicious propensities of defendant Guca but took no steps to train him, correct his abuse of authority, or to discourage his unlawful use of authority.
> Defendants DeLuca and [the] Village authorized, tolerated as institutionalized practices, and ratified the misconduct detailed above by:
>
> > a. Failing to properly discipline, restrict, and control employees, supervise, including defendants known to be irresponsible in their dealings with citizens of the community;
> > b. Failing to take adequate precautions in the hiring, promotion, and retention of police personnel, including specifically defendant;
> > c. Failing to forward to the office of the District Attorney of Oneida County evidence of criminal acts committed by police personnel;
> > d. Failing to establish or assure the functioning of a bona fide and meaningful departmental system for dealing with complaints of police misconduct, but instead responding to these types of complaints with bureaucratic power and official denials calculated to mislead the public.
>
> Compl. ¶¶ 29-30.

**\*2** Further, Plaintiff contends that the Defendants' actions resulted in deprivations of his rights under the Fourth, Fifth, Sixth, Eight, Ninth and Fourteenth Amendments. *Id.* ¶ 34. 4

4     Plaintiff alleges:

> The acts of the defendants that constitute deprivation of the plaintiff's civil rights and are the basis of the claims in this action include:
> a. Denial of Fourth and Fourteenth Amendment rights:
>
> > I. By unlawfully and wrongfully seizing plaintiff's person without probable cause, causing him unlawful detention that they knew or should have known were false;
> > ii. By unlawfully and wrongfully seizing plaintiff's person in clear violation of due process.
>
> b. Denial of Fifth and Fourteenth Amendment rights:
>
> > I. By knowingly and willfully submitting false data regarding the transaction that led to plaintiff being issued a traffic ticket;
> > ii. By knowingly and willfully uttering false testimony at plaintiff's trial;
> > iii. By conspiring to suborn perjured police testimony;
> > iv. By knowingly, willfully, and wrongfully concealing information that would have assisted plaintiff in his defense;
> > v. By denying due process of law including right to be free from unjustified and excessive force utilized by the police department personnel;
>
> c. Denial of plaintiff's Sixth and Fourteenth Amendment rights:
>
> > I. By permitting and encouraging known perjured testimony to be produced at the trial by the prosecution.
>
> d. Eighth Amendment right to be free from cruel and unusual punishment.
> e. Ninth Amendment right.
>
> Compl. ¶ 34.

Under the caption "State Law Theories of Recovery," Plaintiff asserts that "[t]he acts and conduct alleged above constitute actionable torts under the laws of the State of New York including the torts of: a. false arrest; b. assault and battery; c. malicious prosecution; d. abuse of process; e. negligence and [*sic*]; f. gross negligence; g. illegal search." *Id.* ¶ 41. He contends that on July 2, 2015, he served a written verified Notice of Claim "on the proper officer, agents and employees the [*sic*] Defendants Village and Police Department pursuant to the claims statutes covering these cases," *id.* ¶ 39, and that on August 3, 2015, he served "Amended" Verified Notices of Claims upon "the defendants." *Id.; see also id.,* Ex. A.

Tuff v. Village of Yorkville Police Department, Not Reported in Fed. Supp. (2017)

2017 WL 401241

Plaintiff attaches as Exhibit A to the Complaint several Notices of Claim, which he claims he filed *pro se*. [5] The first indicates that it was executed and served on the Oneida County Clerk on July 2, 2015. Compl., Ex. A., p. 1. It is against "Officer Guca of the Yorkville Police Dept. in his own capacity and as an individual," and asserts "§ 69.02 Liability for Intentional Torts" arising from an April 7, 2015 traffic ticket issued by Officer Guca. *Id.* Plaintiff asserts that he was ticketed on April 7, 2015 for running a red light even though the light was yellow, Officer Guco caused Plaintiff to become fearful because Officer Guco was yelling at him for running a red light, and Officer Guco lied about the facts underlying the traffic ticket at the ensuing trial. *Id.* The Notice of Claim does not allege that Officer Guco pulled Plaintiff out of the car, slammed Plaintiff on the vehicle's hood, patted Plaintiff down, or searched through the vehicle. *Id.* The only mention of Chief DeLuca is in the context of Plaintiff's allegation that at the time Officer Guca ticketed him, Officer Guca's eyes were "bulging" and he was sweating. Plaintiff asserts that when he asked Officer Guca at the trial "about his eyes bulging and sweating, he stated he did not know why, but he told the police Chief DeLuca that it was rain [*sic*] when he admitted in trial that it was not raining." *Id.* For relief, Plaintiff seeks "Punitive damages-to punish Officer Guca." *Id.*

[5]    Although Plaintiff filed his Notices of Claim *pro se*, he is represented by counsel in this action.

 **\*3**  Exhibit A to the Complaint also includes three "Amended" Notices of Claim, all of which were executed and filed with the Oneida County Clerk on August 3, 2015. Compl., Ex. A, pp. 2-4. The first is against "Officer Guca in his own capacity and as an individual," and asserts "Sec. 69.02 Liability for Intentional Torts." *Id.* p. 2. Plaintiff contends that on "April 22nd about 7:39 A.M. Officer Guco pulled me over and gave me a ticket for running a red light, when I did not. On June 29, while in trial, Officer Guco lied under oath by saying he could see the traffic light I went through from the property of Yorkville Auto sales, when he could not. Judge Kaluga ruled in my favor." *Id.* There is no allegation that Officer Guco pulled Plaintiff out of his vehicle, made Plaintiff lie across the vehicle's hood, patted Plaintiff down, or searched through the vehicle. *Id.* There is also no reference to Chief DeLuca in this Notice of Claim. For relief, Plaintiff seeks "Punitive damages-to punish officer Guca." *Id.*

The second is against "Yorkville Police Department, Officer Guca," and asserts "Sec. 69.1 Liability for Negligence" *Id.*, p.

3. The factual allegations are the same as in the first Amended Notice of Claim, but for relief Plaintiff seeks: "Civil Rights Damages-Officer Guca violated my civil rights." *Id.*

The third is against "Yorkville Police Department, Officer Guca," and asserts "Sec. 69.01 Liability for Negligence." *Id.* p. 4. The factual allegations are the same as in the first and second Amended Notices of Claim, but for relief Plaintiff seeks: "Actual Damages-for emotional distress and nightmares." *Id.*

### III. STANDARD OF REVIEW

On a Rule 12(b)(6) motion, the Court must accept "all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman,* 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). This tenet does not apply to legal conclusions, non-factual matter, or "conclusory statements" set forth in a complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* While Fed. R. Civ. P. 8(a)(2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Id.* (citation and internal quotation marks omitted). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement' " is insufficient. *Id.* (citation omitted).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010).

### IV. DISCUSSION

Defendants move to dismiss all claims against all defendants except the § 1983 excessive force claim against Officer Guca under the Fourth Amendment. The Court will address Defendants' arguments *seriatim*.

---

Tuff v. Village of Yorkville Police Department, Not Reported in Fed. Supp. (2017)

2017 WL 401241

### a. Police Department As A Proper Defendant

Defendants correctly note that a police department is an administrative arm of a municipality and cannot be sued because it does not exist separate and apart from the municipality and does not have its own legal identity. *See Baggett v. Town of Lloyd*, 2011 U.S. Dist. LEXIS 111565, at *13-*14 (N.D.N.Y. 2011); *Moffett v. Town of Poughkeepsie,* 2012 WL 3740724, at *1, n.1 (S.D.N.Y. Aug. 29, 2012). [6] All claims against the Village of Yorkville Police Department are dismissed.

[6]  ("Under New York law, the Town of Poughkeepsie Police Department is an administrative arm of a municipality and does not have a separate legal identity.")

### b. Section 1983 Official Capacity Claims

**\*4**  Plaintiff sues Defendant Police Chief DeLuca "individually and in his official capacity." Comp. ¶ 4. Section 1983 "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *De Ratafia v. County of Columbia*, 2013 WL 5423871, at *7 (N.D.N.Y. Sept. 26, 2013)(citing *Scheuer v. Rhodes*, 416 U.S. 232, 237–238 (1974)). "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Id.* (quoting *Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658, 690, n. (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* (citing *Brandon v. Holt*, 469 U.S. 464, 471–472 (1985)). Because Plaintiff has sued the Village of Yorkville, his claims against DeLuca in his official capacity are redundant to the Village's potential § 1983 liability, and are dismissed.

Plaintiff has not specifically stated whether he is suing Guca in his official capacity or personal capacity or both. To the extent he is suing Guca under Section 1983 in Guca's official capacity, all such claims are dismissed.

### c. Section 1983—Supervisory Capacity Claim Againy DeLuca

Defendants argue that to the extent Plaintiff is asserting any § 1983 claims against DeLuca based upon his supervisory capacity as the Police Chief, the claims should be dismissed for lack of personal involvement.

"It is well-settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Odom v. Matteo*, 772 F. Supp. 2d 377, 403 (D. Conn. 2011) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). "The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring." *Odom*, 772 F. Supp. 2d at 403 (quoting *Colon*, 58 F.3d at 873); *see also Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014). [7]

[7]  (noting that the continued vitality of all five *Colon* factors set forth above remains an open question post-*Iqbal*)

The Complaint contains no specific allegation about DeLuca's personal involvement in any of the events underlying this case, instead making only conclusory allegations about DeLuca's responsibilities and supposed failures after the alleged constitutional violations had occurred. A § 1983 claim cannot be grounded on barebones, conclusory assertions. *See De Ratafia*, 2013 WL 5423871, at *9. Plaintiff's argument that DeLuca was personally involved because he "had the opportunity to dismiss/withdraw the ticket and chose not to," Pl. Mem. L. p. 5, relies on facts not alleged in the Complaint. Even if these facts were alleged, DeLuca's supposed inaction, in the form of opting not to withdraw a traffic ticket that another police officer had already issued, does not rise to the level of personal involvement in underlying constitutional violations. Plaintiff fails to present factual allegations plausibly indicting that DeLuca (1) participated directly in the alleged constitutional violations committed by Guca; (2) failed to remedy a constitutional violation after being informed of it; [8] (3) created a policy or custom under which unconstitutional practices occurred, or allowed continuance of such a policy or custom; (4) was grossly negligent in supervising Guca; or (5) exhibited

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 87 of 112

Tuff v. Village of Yorkville Police Department, Not Reported in Fed. Supp. (2017)
2017 WL 401241

deliberate indifference to Plaintiff's rights by failing to act on information indicating that unconstitutional acts were occurring. [9] Because Plaintiff's non-conclusory factual allegations fail to present a plausible basis to satisfy any of the *Colon* factors, the § 1983 claims against DeLuca are dismissed without prejudice to repleading. [10]

[8]  Plaintiff alleges in his memorandum of law in opposition to defendants' motion to dismiss:

> After plaintiff received the ticket, he went to the Village Offices and spoke with Chief DeLuca and told him what had happened. After speaking with him, plaintiff got the impression from him that the ticket was going to be dismissed or withdrawn. Instead it was not and plaintiff was forced to represent himself at the trial of the ticket which was held on June 29, 2015.

Pl. Mem. L. p. 3.

These facts, on their face, do not indicate that DeLuca was advised of an *ongoing* constitutional violation that he could have remedied by withdrawing the traffic ticket. Assuming for purposes of argument that when Plaintiff indicates that he told Chief DeLuca "what had happened," Plaintiff was referring to being subjected to excessive force and an unreasonable search of his vehicle after being stopped by Officer Guca, this information did not convey to Chief DeLuca that there was an ongoing constitutional violation. Assuming on the other hand that Plaintiff was referring to his contention that he was improperly ticketed for driving through a red light, this is certainly the type of response many ticketed-drivers have and, in itself, does not indicate that a constitutional violation had occurred or was ongoing. Furthermore, under such circumstances an objectively reasonable response would be to allow the merits of the ticket to be adjudicated through the courts.

Plaintiff's allegation that DeLuca failed "to forward to the office of the District Attorney of Oneida County evidence of criminal acts committed by police personnel" pleads no viable constitutional deprivation against Plaintiff committed by DeLuca, or known to him and ignored.

[9]  *See* fn. 8, *supra*.

[10]  While Plaintiff has not asked for leave to replead any dismissed claim, " 'this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6).' " *Rojas v. Roman Catholic Diocese of Rochester*, 557 F. Supp. 2d 387, 400 (W.D.N.Y. 2008)(quoting *Porat v. Lincoln Towers Community Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006)). Of course, if Plaintiff intends to replead any claims that are dismissed without prejudice to repleading, he must do so in accordance with the dictates of Fed. R. Civ. P. 8(a) and 11(b).

#### d. *Monell* Claim Against the Village

**\*5**  Defendants contend that Plaintiff fails to state a factually plausible claim under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978), because "[n]owhere in the complaint does plaintiff make any factual allegations to support a conclusion that the Village had unconstitutional customs or policies that caused a deprivation of a constitutional right." Def. Mem. L. p. 10; *see also id.* pp. 9-10. In this regard, defendants argue that "[t]he only factual allegations relate to Guca's alleged actions in connection with ticketing plaintiff for running a red light. However, proof of a single incident of unconstitutional activity here would not be sufficient to impose *Monell* liability." *Id.* p. 10 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824 (1985)).

In opposition, Plaintiff merely asserts that "[t]here is sufficient allegations in plaintiff's complaint to sustain actions against the Village of Yorkville. Upon discovery it will be clear to the parties as to the exact involvement of the Village of Yorkville. After discovery, it may be that plaintiff will seek court approval for filing an amended complaint." Pl. Mem. L. pp. 5-6.

To prevail on a § 1983 claim against a municipality, a plaintiff must show that a municipal policy or custom caused the deprivation of his constitutional rights. *Monell*, 436 U.S. at 690–91. A municipality may not be held liable under § 1983 on the basis of *respondeat superior. Id.* at 694. Rather, "[t]he plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries.... Second, the plaintiff must establish a casual connection—an 'affirmative link'—between the policy and deprivation of his constitutional rights." *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985), *cert. denied*, 480 U.S. 916 (1987). Therefore, in order to establish municipal liability, Plaintiff

Tuff v. Village of Yorkville Police Department, Not Reported in Fed. Supp. (2017)
2017 WL 401241

must establish that an identified municipal policy or practice was the "moving force [behind] the constitutional violation" that he suffered. *Monell*, 436 U.S. at 694; *see also Anderson v. City of New York*, 657 F. Supp. 1571, 1575–76 (S.D.N.Y. 1987). [11]

> [11]    (A plaintiff also "must link the behavior in question to the policy of failure to discipline—for example, the officer must have known of the policy at the time he allegedly committed the civil rights violations.")

*Monell* claims must satisfy the *Iqbal* and *Twombly* plausibility standard. *Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011). "[T]he boilerplate *Monell* claims often included in many § 1983 cases ... do not rise to the level of plausibility." *Santiago v. City of New York*, 2009 WL 2734667, at *3, 2009 U.S. Dist. LEXIS 75372, at *7 (E.D.N.Y. Aug. 18, 2009) (dismissing *Monell* claim); *see Plair*, 789 F. Supp. 2d at 469 (collecting cases). "Furthermore, it is well established that a single incident does not give rise to an unlawful practice by subordinate officials 'so permanent and well-settled as to constitute 'custom or usage.' " *Plair*, 789 F. Supp. 2d at 469 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) and citing *Sorlucco v. New York City Police Department*, 971 F.2d 864, 870 (2d Cir. 1992) [12] and *Anderson*, 657 F. Supp. at 1574 [13] ).

> [12]    (municipality may not be held liable under Section 1983 for isolated unconstitutional acts of its employees)
>
> [13]    ("plaintiff cannot infer a policy from the alleged violation of his own civil rights.")

For the most part, Plaintiff relies on conclusory allegations arising from a single incident to fill the gaps in his complaint between Guco's conduct and a Village policy, custom or practice that caused Plaintiff a constitutional injury. However, Plaintiff alleges that the Village "had prior notice of the vicious propensities of defendant Guco but took no steps to train him, correct his abuse of authority, or discourage his unlawful use of authority." Compl. ¶ 29. While a § 1983 failure to train or supervise claim cannot be grounded on barebones, conclusory assertions, *see De Ratafia*, 2013 WL 5423871, at *9, Plaintiff has alleged enough to allow his failure to train or supervise claim against the Village to continue. Whether Plaintiff can establish the required elements of the claim can be tested after discovery. For present purposes, Defendants' motion on this ground is denied.

### e. Section 1983 Illegal Vehicle Search Claim

**\*6**  Defendants assert that Plaintiff's Section 1983 illegal search claim should be dismissed because he alleges that after he was removed from the vehicle, he was "facing away from the driver seat" and only heard "noises" that sounded like Guca was "going through" plaintiff's vehicle. These facts, Defendants contend, are insufficient to support a plausible claim that Guca unlawfully searched Plaintiff's vehicle.

#### 1. Fourth Amendment

Accepting the alleged facts as true, and drawing reasonable inferences in Plaintiff's favor, there are sufficient factual allegations from which a reasonable fact finder could conclude that Plaintiff heard Guca enter Plaintiff's vehicle while Plaintiff was lying on the hood. Given these circumstances, it would be a reasonable inference that Guca searched the vehicle while he was in it. Further, accepting Plaintiff's allegations as true, Officer Guca lacked a legal justification to search Plaintiff's vehicle. Thus, the allegations are sufficient to support a plausible Fourth Amendment illegal search claim. Defendants' motion on this ground is denied.

#### 2. Fifth, Eighth, Ninth and Fourteenth Amendments

However, Plaintiff asserts his illegal search claim not only under the Fourth Amendment, but also the Fifth, Eighth, Ninth and Fourteenth Amendments.

#### A. Fifth Amendment

The Fifth Amendment has no application in this case. The Fifth Amendment solely governs the conduct of federal government and federal employees, and does not regulate the activities of state officials or state actors. *Maddox v. Fowler*, 2015 WL 4366222, at *10 (N.D.N.Y. July 16, 2015). Because Plaintiff's lawsuit does not allege a deprivation of his rights by the federal government, all claims premised upon the Fifth Amendment are dismissed.

2017 WL 401241

## B. Eighth Amendment

Likewise, the Eighth Amendment has no application in this case. The Eighth Amendment prohibition on the infliction of cruel and unusual punishments applies only to those individuals convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Because the facts do not indicate that Plaintiff was convicted of a crime, the Eighth Amendment claim is inapplicable. Thus, all claims premised upon the Eighth Amendment are dismissed.

## C. Ninth Amendment

The Ninth Amendment provides no basis for Section 1983 liability. The Ninth Amendment "is recognized as a rule of construction, not one that protects any specific right, [and thus] no independent constitutional protection is recognized which derives from the Ninth Amendment and which may support a § 1983 cause of action." *Rini v. Zwirn*, 886 F. Supp. 270, 289 (E.D.N.Y. 1995)(citing Laurence H. Tribe, *American Constitutional Law* § 11–3, at 774–75 (2d ed. 1988)); *see Barnett v. Carberry*, 420 Fed.Appx. 67, 69 (2d Cir. 2011),[14] *cert. denied*, 132 S. Ct. 248 (2011); *Bussey v. Phillips*, 419 F.S upp.2d 569, 586 (S.D.N.Y. 2006).[15] Thus, all claims premised upon the Ninth Amendment are dismissed.

[14]    (holding that the Ninth Amendment does not provide "an independent source of individual rights; rather, it provides a rule of construction that we apply in certain cases") (citation omitted)

[15]    ("[T]he Ninth Amendment refers only to unenumerated rights, while claims under § 1983 must be premised on specific constitutional guarantees.")

## D. Fourteenth Amendment

The Fourteenth Amendment also does not apply to Plaintiff's illegal search claim. Because the Fourth Amendment provides an explicit textual source of constitutional protection for Plaintiff's alleged constitutional injury, he has no basis for a due process claim based upon the alleged illegal search of his vehicle. *Albright v. Oliver*, 510 U.S. 266, 273 (1994). Accordingly, Plaintiff's Fourteenth Amendment due process

claim based upon the alleged search of Plaintiff's vehicle is dismissed.

### f. Section 1983 False Arrest Claim

**\*7** The Complaint alleges that Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights "by unlawfully and wrongfully seizing plaintiff's person without probable cause ... in clear violation of due process." Compl. ¶ 34 (a). Defendants argue that this claim must be dismissed because (1) Guco had probable cause to detain Plaintiff for purposes of issuing him a traffic ticket; (2) the issuance of a traffic ticket or court summons does not constitute a seizure under the Fourth Amendment for purposes of establishing a false arrest claim; (3) the facts are insufficient to support a false arrest claim because there are no allegations that Guco handcuffed Plaintiff, used a weapon to detain him, or transported him away from the scene of the traffic stop.

### 1. Fourth Amendment

While "[c]ourts ... have repeatedly held that the issuance of a traffic ticket or court summons alone does not constitute a seizure under the Fourth Amendment for the purposes of establishing a false arrest ... claim," *LoSardo v. Ribaudo*, 2015 WL 502077, at \*5 (E.D.N.Y. Feb. 5, 2015), Plaintiff's allegations are susceptible to a reading that he was unlawfully arrested within the meaning of the Fourth Amendment when he was physically removed from his vehicle without reason, "slammed" across the hood of the vehicle, patted down, and told not to move. These facts, accepted as true, are sufficient to present a plausible claim that Plaintiff was falsely arrested for a period of time beyond that which was required for Guco to issue Plaintiff a traffic ticket. *See Cross v. City of Albany*, 2016 WL 6106476, at \*3 (N.D.N.Y. Oct. 19, 2016);[16] *see also LoSardo,* 2015 WL 502077, at \*5.[17]

[16]    ("Under § 1983, the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure for purposes of establishing a false arrest claim. On the other hand, temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' under the Fourth Amendment.") (interior quotation marks

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 90 of 112

Tuff v. Village of Yorkville Police Department, Not Reported in Fed. Supp. (2017)

2017 WL 401241

and brackets omitted; citing *Whren v. United States*, 517 U.S. 806, 809–10 (1996) and *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010))

17    (To establish a false arrest claim under § 1983, a "plaintiff must show: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.")

Moreover, "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' [under the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809–10 (1996). "Automobile 'stops must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct.' " *Cross*, 2016 WL 6106476, at *3 (quoting *United States v. Scopo*, 19 F.3d 777, 781 (2d Cir. 1994)). Taking Plaintiff's factual allegations as true, Guco neither had probable cause nor reasonable suspicion to believe that Plaintiff had committed "a traffic offense—however minor." *Scopo*, 19 F.3d at 782. Under such circumstances, Plaintiff states a plausible Fourth Amendment claim of false arrest. *See Cross*, 2016 WL 6106476, at *4. Accordingly, Defendants' motion on this ground is denied.

### 2. Fourteenth Amendment

However, the Fourteenth Amendment Due Process Clause does not apply to Plaintiff's false arrest claim because the Fourth Amendment provides an explicit textual source of constitutional protection for Plaintiff's alleged constitutional injury caused by that arrest. *Albright*, 510 U.S. at 273; *see Gerstein v. Pugh*, 420 U.S. 103, 125 n. 27 (1975).[18] Accordingly, Plaintiff's Fourteenth Amendment due process claim based upon his arrest is dismissed.

18    ("The Fourth Amendment was tailored explicitly for the criminal justice system, and it[ ] ... always has been thought to define the 'process that is due' for seizures of person or property in criminal cases....")

### g. **Section 1983** **False Testimony Claim—Officer Guca**

**\*8** Plaintiff alleges that his rights under the Fifth and Fourteenth Amendment Due Process Clauses, and an undefined right under the Sixth Amendment, were violated because Guca testified falsely at his traffic court trial. Compl. ¶¶ 34(b) & (c). Defendants contend that the claim cannot survive because the Supreme Court has held that police officers have absolute immunity from liability for damages arising out of false testimony. Def. MOL, p. 15 (citing, inter alia, *Briscoe v. La Hue*, 460 U.S. 325 (1983)). In opposition, Plaintiff argues:

> 5th Amendment Claim: the false data is the testimony of the defendant Guca-clearly it was impossible for the defendant to see the traffic light as the plaintiff was found not guilty after the conclusion of the trial. Proof of the location of the police car and the ability to see the traffic light will be ascertained at the trial of this matter with pictures and/or videos.

> * * *

> 14th Amendment Claim: This claim too should not be dismissed that [*sic*] plaintiff in the complaint and in his attached affidavit have [*sic*] shown to the court that his due process [*sic*] was violated.

Pl. Mem. L. p. 7. Plaintiff neither offers an argument directed to the Sixth Amendment, nor addresses *Briscoe* and its progeny.

The immunity explained in *Briscoe* is dispositive of Plaintiff's claim.

> [T]he principles underlying judicial and prosecutorial immunity "also apply to witnesses, who perform a somewhat different function in the trial process but whose participation in bringing the litigation to a just—or possibly unjust—conclusion is equally indispensable." *Briscoe v. La Hue*, 460 U.S. 325, 345–46, 103 S. Ct. 1108, 75 L.Ed.2d 96 (1983). In *Briscoe*, the Supreme Court expressly held that police officers have absolute immunity from liability for damages arising out of false testimony. In so ruling, the Supreme Court "acknowledged the danger that a police officer or other witness may provide purposefully false testimony and escape liability," *Rolon v. Henneman*, 517 F.3d 140, 145 (2d Cir. 2008)(citing *Briscoe*, 460 U.S. at 345), as well as "the possibility that, despite the truth-finding safeguards of the judicial process, some defendants might ... be unjustly convicted on the basis of knowingly false testimony by police officers." *Briscoe*, 46 U.S. at 345. However, the Court was concerned that without such immunity, "[a] witness's apprehension of subsequent damages liability might induce ... self-censorship," which

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 91 of 112

Tuff v. Village of Yorkville Police Department, Not Reported in Fed. Supp. (2017)

2017 WL 401241

might "deprive the finder of fact of candid, objective, and undistorted evidence." *Id.* at 333.

*Paige v. City New York*, 2011 WL 65667, at *5 (E.D.N.Y. Jan. 7, 2011).

"In light of the foregoing, it is clear that, to the extent that Plaintiff's allegations against Officer [Guco] suggest that this police officer may have perjured himself during [Plaintiff's] trial ..., Plaintiff cannot recover damages for this perjury." *Paige*, 2011 WL 65667, at *6 (citing *Briscoe*, 460 U.S. at 345–46). Thus, Defendants' motion in this regard is granted, and Plaintiff's Section 1983 False Testimony claim against Officer Guca is dismissed.

### h. Section 1983 False Testimony Conspiracy Claim

Plaintiff also alleges in conclusory fashion that "defendants" denied him his "Fifth and Fourteenth Amendment rights ... by conspiring to suborn perjured police testimony." Compl., ¶ 34(b)(iii). However, Plaintiff fails to plead sufficient facts plausibly suggesting a "meeting of the minds" between any defendants regarding Guca's testimony at Plaintiff's trial. *See Farag v. U.S.*, 587 F. Supp. 2d 436, 470–71 (E.D.N.Y. 2008).[19] Moreover, because there is no viable claim against Officer Guco for providing false testimony, there is no viable conspiracy claim based upon an agreement to provide this testimony. *See Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009).[20] Accordingly, the Section 1983 conspiracy claim based upon an alleged agreement between the defendants to suborn perjury at Plaintiff's trial is dismissed.

[19]    (To establish a § 1983 civil rights conspiracy, "a plaintiff must, *inter alia*, 'provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the [violation of plaintiff's constitutional rights].' ") (quoting *Romer v. Morgenthau*, 119 F. Supp.2d 346, 363 (S.D.N.Y. 2000) (internal quotation marks omitted))

[20]    (Because Plaintiff failed to establish an underlying Section 1983 cause of action, "the claim for conspiracy also fails.").

### I. Section 1983 Concealment of Evidence Claim

**\*9**  Plaintiff's allegation that the Defendants concealed information that would have assisted him in his defense, Compl. ¶ 34(b)(iv), amounts to nothing more than a

conclusory allegation. There is no specific factual allegation supporting a plausible claim in this regard. Accordingly, the motion is this regard is granted and the claim based upon the alleged concealment of exculpatory material is dismissed without prejudice to repleading.

### j. Section 1983 Excessive Force—Due Process Claim

Plaintiff's claim that he was denied constitutional due process because he w as subjected to excessive force, Compl. ¶ 34(b)(v), is subsumed within his Fourth Amendment excessive force claim. Because the Fourth Amendment provides an explicit textual source of constitutional protection for Plaintiff's alleged constitutional injury, he has no basis for a separate due process claim based upon the use of excessive force. *Albright*, 510 U.S. at 273. Accordingly, the Fourteenth Amendment due process claim based on the excessive use of force is dismissed.

### k. Section 1983 Encouraging Prosecution to Use Perjured Testimony Claim

Plaintiff contends that his constitutional due process rights were violated by the defendants "permitting and encouraging known perjured testimony to be produced at the trial by the prosecution." Compl. ¶ 34 (c). Plaintiff has provided insufficient factual allegation indicating that any of defendants had control over the testimony produced at the trial by the prosecution, or that any of the defendants encouraged known perjured testimony to be produced. Moreover, as indicated above police officers have absolute immunity from damages for alleged perjured testimony at trial. Accordingly, the claim in this regard is dismissed.

### l. First Amendment Claim

In the Complaint, Plaintiff makes reference to the First Amendment by alleging that the action arises under "the provisions" of this amendment. Comp. ¶ 7. However, Plaintiff fails to allege facts plausibly suggesting that his rights under the First Amendment were violated. Accordingly, the First Amendment claim is dismissed without prejudice to repleading.

### m. State Law Claims—Notices of Claim

Defendants contend that Plaintiff's state law claims for false arrest, assault and battery, malicious prosecution, abuse of process, negligence, gross negligence, and illegal search should be dismissed because Plaintiff failed to comply

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 92 of 112

Tuff v. Village of Yorkville Police Department, Not Reported in Fed. Supp. (2017)

2017 WL 401241

with the notice-of-claim requirements of New York law. Defendants argue that only two of the four Notices of Claim attached to the Complaint were served on the Village;[21] the two that were served on the Village were "Amended" Notices of Claim dated August 3, 2015, which is more than 90 days after the April 22, 2015 traffic stop; Plaintiff never moved for leave to serve a late Notice of Claim, or to have his Amended Notices of Claim deemed timely served *nunc pro tunc* to July 2, 2015; none of the Notices of Claim allege that Plaintiff was pulled out of his vehicle, slammed on the hood, patted down, and had his vehicle searched; even if Plaintiff had served the July 2, 2015 Notice of Claim (Compl. Ex. A, p. 1) on the Village, he would still be barred from pursuing his state law claims because this Notice of Claim pertained to a traffic ticket allegedly issued on April 7, 2015, not April 22, 2015, and did not include any allegations about a search, a seizure, or the use of force. Thus, Defendants contend all state law claims must be dismissed.

21    Defendants contend that Plaintiff never served the July 2, 2015 Notice of Claim on the Village (Dkt. 1-1 Page 1 of 4), nor did the Village receive that Notice of Claim by any method. Defendants also contend that Plaintiff never served the August 3, 2015 "Amended" Notice of Claim at Docket 1-1 Page 2 of 4.

**\*10** In opposition, Plaintiff argues that he inadvertently omitted from the Complaint two July 2, 2015 Notices of Claim. He attaches the two Notices of Claim to his affidavit that he submitted in opposition to Defendants' motion.

Although the Court is supposed to limit its review to the Complaint and documents attached thereto, and despite that it is somewhat suspect that Plaintiff served three Notices of Claim on the Village on July 2, 2015 because he asserts in the Complaint that he served a single Notice of Claim on the Village on this date, *see* Compl. ¶ 39,[22] the Court will examine the Notices of Claim attached to Plaintiff's affidavit to resolve this aspect of the motion.

22    ("On or about July 2, 2015, the plaintiff caused *a* written verified Notice of Claim to be filed with an served on the proper officer, agents and employees [*sic*] the Defendants....")(emphasis added).

The two Notices of Claim attached to Plaintiff's affidavit are both against "Yorkville Police Dept., Officer Guco," and both allege that the "nature of the claim" is "§ 69.01 Liability for

Negligence." Both indicated that they were executed on July 2, 2015, and both contain a stamp indicating that they were served on the Oneida County Clerk on July 2, 2015. Like the July 2, 2015 Notice of Claim attached to the Complaint (Compl. Ex. A, p. 1), both concern an April 7[th], 2015 traffic stop during which Plaintiff asserts that he was ticketed for running a red light even though the light was yellow. Also like the July 2, 2015 Notice of Claim attached to the Complaint, Plaintiff alleges in both that Guco caused him to become fearful because Guco was yelling at Plaintiff for running a red light, that Guco lied about the facts underlying the traffic ticket at trial, and that when Guco was asked at trial "about his eyes bulging and sweating, he stated he did not know why, but he told the police Chief DeLuca that it was rain [*sic*] when he admitted in trial that it was not raining." Neither Notice of Claim alleges that Officer Guco pulled Plaintiff out of the car, made Plaintiff lie across the vehicle's hood, patted Plaintiff down, or searched through the vehicle. *Id.* For relief, Plaintiff seeks "Actual Damages-for the emotional distress and nightmare [*sic*]" and "Civil Rights Damages-Police officer violation of civil rights."

In reply, Defendants argue that even if Plaintiff served all six of the Notices of Claim on the Village,[23] his state law claims should be dismissed because none of the Notices of Claim satisfy the statutory requirements that a claimant specify the nature of the claim, the manner in which it arose, and the damage or injury sustained. Def. Reply Mem. L. p. 5. Further, Defendants contend that Plaintiff's three July 2, 2015 Notices of Claim all pertain to an April 7, 2015 traffic stop whereas the instant action arises from an April 22, 2015 traffic stop. Defendants assert that while the three August 3, 2015 Amended Notices of Claim pertain to the April 22, 2015 traffic stop, the Amended Notices of Claim were untimely because more than 90 days had elapsed since the April 22, 2015 traffic stop.

23    Also attached to Plaintiff's affidavit are illegible U.S. Postal Service certified mail receipts which, Plaintiff contends, proves that "all Notices of Claims [*sic*] were filed within 90 days." Pl. Mem. L. p. 8.

**\*11** "[I]n a federal court, state notice-of-claim statutes apply to state-law claims." *Hardy v. New York City Health & Hospitals Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (citing *Felder v. Casey*, 487 U.S. 131, 151 (1988)). Under New York law, a notice of claim is a mandatory condition precedent to bringing a tort claim against a municipality. *See* N.Y. CPLR

Case 8:26-cv-00359-AMN-MJK    Document 8    Filed 04/30/26    Page 93 of 112
Tuff v. Village of Yorkville Police Department, Not Reported in Fed. Supp. (2017)
2017 WL 401241

§ 9801; N.Y.Gen. Mun. Law §§ 50–e, 50–I; *Hillary v. Village of Potsdam*, 2015 WL 902930, at \*9–10 (N.D.N.Y. Mar. 3, 2015); *Brennan v. Albany Cnty.*, 2005 WL 2437026, \*6 (N.D.N.Y. Sept. 30, 2005). New York General Municipal Law § 50-e requires service of a notice of claim within ninety days after the claim arises. *See* N.Y. Gen. Mun. Law § 50-e(1)(a). Among other things, a notice of claim must state the nature of the claim and "the time when, the place where and the manner in which the claim arose[.]" N.Y. Gen. Mun. Law § 50-e(2).

This notice requirement is designed "[t]o enable authorities to investigate, collect evidence and evaluate the merit of a claim." *Brown v. City of New York*, 95 N.Y.2d 389, 392-93 (N.Y. 2000). "An adequate notice of claim allows the governmental entity 'to examine a potential claim to determine whether such claim should be settled or satisfied without subjecting the parties to costly litigation.' " *Javed v. Shuang Zhang*, 872 F. Supp. 2d 194, 198 (N.D.N.Y. 2012)(quoting *Mroz v. City of Tonawanda*, 999 F. Supp. 436, 453 (W.D.N.Y. 1998)).

"The Second Circuit has ... determined that, not only does the General Municipal Law control when a plaintiff sues a [municipality] for tortious conduct, but it also controls those claims against any employee of a city 'if the municipality is required to indemnify the defendant pursuant to the General Municipal Law or any other statutory provision and is therefore the real party in interest.' " *Kennedy v. City of Albany*, 2015 WL 6394513, at \*2 (N.D.N.Y. Oct. 22, 2015)(quoting *Conte v. Cty. of Nassau*, 596 Fed. Appx. 1, 5 (2d Cir. 2014)(interior quotation marks and citation omitted)). Such is the circumstance here. General Municipal Law § 50–j provides that a municipality "shall be liable for, and shall assume the liability to the extent that it shall save harmless, any duly appointed police officer of such municipality ... for any negligent act or tort, provided such police officer, at the time of the negligent act or tort complained of, was acting in the performance of his duties and within the scope of his employment." N.Y. Gen. Mun. Law § 50-j(1); *see also LaGrange v. Ryan*, 142 F. Supp.2d 287, 295 (N.D.N.Y. 2001). [24] Thus, the notice must accurately identify the individuals against whom the claim is brought. *See D.C. v. Valley Cent. Sch. Dist.*, 2011 WL 3480389 at \*2 (S.D.N.Y. June 29, 2011). [25]

[24]     (stating that notice of claim requirements are not limited to just negligence claims but must also be

served for "intentional tort actions against police officers").

[25]     (noting that "the Court must construe the notice of claim strictly to ensure that the defendants are properly named as respondents in the notice of claim")

"Notice of claim requirements are construed strictly by New York state courts. Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999) (internal quotation marks and citations omitted); *see also Davidson v. Bronx Mun. Hosp.*, 62 N.Y.2d 59, 62 (N.Y. 1984); [26] *Hillary v. Village of Potsdam*, 2015 WL 902930, at \*9 (N.D.N.Y. Mar. 3, 2015)(same). "The burden is on the plaintiff to demonstrate compliance with the Notice of Claim requirement." *Horvath v. Daniel*, 423 F. Supp.2d 421, 423 (S.D.N.Y. 2006). Although a Notice of Claim need not provide the required information with "literal nicety or exactness," *Phillipps v. N.Y. City Transit Auth.*, 68 A.D.3d 461, 462 (1st Dep't 2009), "[a]ny theory of liability omitted from the notice of claim may not be included in a subsequent lawsuit.*" Hazan v. City of New York*, 1999 WL 493352, at \*6 (S.D.N.Y. July 12, 1999).

[26]     ("failure to comply with provisions requiring notice and presentment of claims prior to the commencement of litigation requires dismissal")

**\*12** Turning first to the three July 2, 2015 Notices of Claim, and assuming for purposes of argument that these were served on Defendants, they failed to provide sufficient factual allegations to put Defendants on notice of the state law claims alleged in this action. These Notices of Claim all pertain to a traffic ticket issued to Plaintiff on April 7, 2015, a date different than the one underlying the claims in the instant action. Although Plaintiff contends that his use of the April 7, 2015 date was a mistake, he points to no authority requiring a recipient of a Notice of Claim to analyze it to determine whether it *might* be referring to a *different* event then indicated in the notice of claim. By using the wrong date, Plaintiff's July 2, 2015 Notices of Claim deprived the Village of the ability to collect evidence, evaluate the merits of the state law claims alleged in this case, and determine whether these claims should be settled or satisfied without subjecting the parties to costly litigation. Thus, the July 2, 2015 Notices of Claim provide an insufficient predicate for any of the state law claims asserted here.

Case 8:26-cv-00359-AMN-MJK     Document 8     Filed 04/30/26     Page 94 of 112

Tuff v. Village of Yorkville Police Department, Not Reported in Fed. Supp. (2017)

2017 WL 401241

Turning to the August 3, 2015 Notices of Claim, each was drafted and verified on August 3, 2015. *See* Compl., Ex. A, pp. 2-4. August 3, 2015 is more than 90 days past April 22, 2015, the date of the traffic ticket underlying the state law claims of false arrest, assault and battery, and illegal search alleged in this action. Although denominated as "Amended Notices of Claim," these Notices of Claim do not indicate what they were intended to amend. Because the August 3, 2015 Notices of Claim are based upon a different event than the July 2, 2015 Notices of Claim, and because Plaintiff apparently never moved for leave to serve a late Notice of Claim or to have his August 3, 2015 Notices of Claim deemed served *nunc pro tunc* to an earlier time, the August 3, 2015 Notices of Claim are untimely as to the state law claims of false arrest, assault and battery, and illegal search. These claims are dismissed as to all Defendants.

Moreover, the August 3, 2015 Notices of Claim fail to provide sufficient factual predicates upon which state law claims of negligence and gross negligence could be based. These Notices of Claim allege only that Guco pulled Plaintiff over, gave him a ticket for running a red light, and then lied about the facts at the ensuing trial. These factual allegations are insufficient to put Defendants on notice of a basis for the claims of negligence or gross negligence, *see Fiedler v. Incandela,* 2016 WL 7406442, at *14 (E.D.N.Y. Dec. 6, 2016),[27] and thus deprived Defendants of the ability to collect evidence, evaluate the merits of the alleged negligence or gross negligence claims, and determine whether these claims should be settled or satisfied without subjecting the parties to costly litigation. Consequently, the August 3, 2015 Notices of Claim are insufficient to serve as necessary predicates for the state law claims of negligence and gross negligence, and these claims are dismissed as to all Defendants.

[27]     The Eastern District wrote in *Friedler*,

To prevail on a claim for negligence under New York law, "a plaintiff must establish (1) the existence of a duty on the defendant's part as to the plaintiff; (2) a breach of that duty; and (3) resultant injury to the plaintiff." [*Frederique v. County of Nassau*, 168 F. Supp. 3d 455, 484 (E.D.N.Y. 2016)] (internal quotation omitted); *see also* [*Vega v. Fox*, 457 F. Supp.2d 172, 183 (S.D.N.Y. 2006)]("The existence of a duty of care is a legal, policy-laden declaration reserved for judges.") (internal quotation omitted). The defendant's duty must not be "merely a general duty of care to society but a specific duty to the plaintiff, for 'without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm.' " *Breitkopf v. Gentile*, 41 F.Supp.3d 220, 272 (E.D.N.Y. 2014) (quoting *Lauer v. City of New York*, 95 N.Y.2d 95, 100, 711 N.Y.S.2d 112, 733 N.E.2d 184 (2000)). It is well established that "a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). Moreover, "[a] claim of harm predicated solely on intentional acts may not give rise to a claim of negligence." *Ortiz v. City of New York*, No. 15 Civ. 2206, 2016 WL 7009059, at *3 (S.D.N.Y. Nov. 30, 2016) (citing *United Nat'l Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir. 1993)). *Fiedler,* 2016 WL 7406442, at *14.

**\*13** However, one of the August 3, 2015 Notices of Claim could be construed as providing notice of the intentional torts of malicious prosecution and abuse of process. *See* Compl., Ex. A, p. 2. "Malicious prosecution and abuse of process claims accrue when there is a favorable termination of criminal proceedings against the plaintiff." *Oka v. County of Suffolk*, 2014 WL 198821, at *4 (E.D.N.Y. Jan. 13, 2014); *see TADCO Constr. Corp. v. Dormitory Auth. of NY*, 700 F. Supp.2d 253, 273 (E.D.N.Y. 2010).[28] The Complaint alleges that "[f]ollowing the bench trial on or about June 29, 2015, Plaintiff was advised that the traffic ticket was dismissed and/or that he was not guilty of the infraction." Compl. ¶ 21. Because June 29, 2015 is less than 90 day s before August 3, 2015, the August 3, 2015 Notice of Claim alleging "Liability for Intentional Torts" was timely filed as to the malicious prosecution and abuse of process claims. Accordingly, the motion is denied as to the malicious prosecution and abuse of process claim brought against Officer Guca, and, under a theory of *respondeat superior* liability, against the Village of Yorkville. *See Cort v. Marshall's Dept. Store*, 2015 WL 9582426, at *2 (E.D.N.Y. Dec. 29, 2015);[29] *see Tchatat v. City of New York*, 2015 WL 5091197, at *17 (S.D.N.Y. Aug. 28, 2015);[30] *Cort,* 2015 WL 9582426, at *3.[31] However, DeLuca is not mentioned in any of the August 3, 2015 Notices of Claim. Therefore, all state law claims against DeLuca are dismissed.

28    ("[C]laims for malicious prosecution and abuse of process do not accrue until the underlying action which is the basis for the claim is terminated in the plaintiff's favor by dismissal.")

29    ("[I]n order to state a *respondeat superior* claim, a plaintiff must plead facts that plausibly allege that the predicate torts were committed 'within the scope of the employee's duties to the employer and was thus in furtherance of the employer's interests.' ")(quoting *Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014))

30    (*Respondeat superior* applies to a tort committed by an employee in the course of the performance of his or her duties, even if such duties are carried out in an irregular fashion or with disregard of instructions.") (internal citation and quotation marks omitted), *recons. granted in part by*, 2015 WL 6159320 (S.D.N.Y. Oct. 20, 2015)

31    ("The same principle applies equally to intentional torts, including assault and battery; for respondeat superior to apply, the employee must have committed the intentional tort while acting within the scope of employment.")

### n. State Law Malicious Prosecution and Abuse of Process Claims

Defendants argue that if Plaintiff's state law claims are not dismissed for failure to file appropriate notices, the claims for malicious prosecution and abuse of process should be dismissed because the Complaint fails to allege sufficient facts to plausibly satisfy the elements of either claim.

### 1. Malicious Prosecution

The elements of claim for malicious prosecution under New York law are: " '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.' " *Battisti v. Rice*, 2017 WL 78891, at *9 (E.D.N.Y. Jan. 9, 2017)(quoting *Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks and citations omitted)). "Unlike federal law, a seizure is not required for a malicious prosecution claim under state law." *Mangino v. Inc. Village of Patchogue*, 739 F. Supp. 2d 205,

229 (E.D.N.Y. 2010), *on reconsideration in part*, 814 F. Supp. 2d 242 (E.D.N.Y. 2011).

The first three elements could plainly be established based upon the allegations that Plaintiff was pulled over for running a red light when the light was yellow, Guco advanced the prosecution by issuing a ticket, and the ticket was dismissed following trial. *See id.* [32] The fourth element, actual malice as a motivation for defendant's actions, could reasonably be inferred from the allegations that Plaintiff was ticketed, and treated harshly, because of his race. These allegations are sufficient to give Defendants fair notice of Plaintiff's malicious prosecution claim and the grounds upon which it rests. *See Blot v. Town of Colonie*, 2017 WL 61943, at *17 (N.D.N.Y. Jan. 5, 2017). [33] The motion on this ground is denied.

32    ("New York law does not require a malicious prosecution plaintiff to prove her innocence, or even that the termination of the criminal proceeding was indicative of innocence. Instead, the plaintiff's burden is to demonstrate a final termination that is not inconsistent with innocence.")

33    ("[T]he Supreme Court has held that ... the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that 'give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests.' ")(quoting *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 212, n. 17 (N.D.N.Y. 2008)(in turn citing Supreme Court cases)(emphasis in *Bolt*)).

### 2. Abuse of Process

**\*14**  The elements of a claim for abuse of process under New York law are that a defendant: "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003).

[A] claim of malicious abuse of process requires process be issued for a collateral objective outside the legitimate ends of process. In evaluating this element, the Second Circuit expressly distinguishes between a "malicious motive" and an "improper purpose"; only the latter suffices to

2017 WL 401241

meet the "collateral objective" prong of the abuse of process standard. *See Savino*, 331 F.3d at 77 ("In order to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper purpose in instigating the action.... '[I]mproper motive is not enough.' " (quoting *Dean v. Kochendorfer*, 237 N.Y. 384, 143 N.E. 229 (1924))); *see also Roeder v. Rogers*, 206 F.Supp.2d 406, 414 (W.D.N.Y. 2002) (dismissing abuse of process claim on summary judgment because "malicious motive, without more, does not give rise to [such] a cause of action" (citation and quotation marks omitted)); *Curiano v. Suozzi*, 63 N.Y.2d 113, 480 N.Y.S.2d 466, 469 N.E.2d 1324, 1326–27 (1984) ("A malicious motive alone ... does not give rise to a cause of action for abuse of process."). "Accordingly, to state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Savino*, 331 F.3d at 77.

*Mangino*, 739 F. Supp. 2d at 232.

The Complaint fails to allege facts that could plausibly establish the "collateral objective" prong of the abuse of process standard. The state law abuse of process claim is dismissed without prejudice to repleading.

### o. Punitive Damages

Defendants argue that Plaintiff's demand for punitive damages must be struck because municipalities are immune from punitive damages, and because the Complaint fails to allege conduct by Guco [34] that warrants an award of punitive damages.

[34]    Defendants make the same argument as to DeLuca, but the Court need not reach this issue because all claims against DeLuca have been dismissed.

Defendants are correct that a municipality is immune from the imposition of punitive damages under 42 U.S.C. § 1983, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Ciraolo v. City of N.Y.*, 216 F.3d 236, 239–40 (2d Cir. 2000), and state law. *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 386 (N.Y. 1987). Thus, Plaintiff's demand for punitive damages against the Village is struck.

As to Guco's liability for punitive damages, the law provides that "[t]o recover punitive damages under § 1983 against a

government official in his individual capacity, the Plaintiff must show that the official acted with a malicious or evil intent or in callous disregard of the Plaintiff's federally protected rights." *Pritchard v. Town of New Hartford*, 2016 WL 4523986, at *4 n.2 (N.D.N.Y. Aug. 22, 2016)(citing *Smith v. Wade*, 461 U.S. 30 (1983)). Similarly, "[t]o obtain punitive damages in ordinary tort actions, a New York plaintiff not only must show that the defendant committed a tort, but also must demonstrate the existence of 'circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton.' " *Carvel Corp. v. Noonan*, 350 F.3d 6, 24 (2d Cir. 2003), *certified question answered*, 818 N.E.2d 1100 (N.Y. 2004)(quoting *Prozeralik v. Capital Cities Communications, Inc.*, 82 N.Y.2d 466, 479 (N.Y. 1993)); *see Cookware Co. (USA), LLC v. Austin*, 2016 WL 7378762, at *6 (S.D.N.Y. Dec. 8, 2016)(same).

**\*15** Accepting Plaintiff's allegations as true and drawing all reasonable inferences in his favor, Plaintiff has presented sufficient factual allegations plausibly supporting the conclusion that Guco acted with a malicious or evil intent or in callous disregard of Plaintiff's federal and state rights when he pulled Plaintiff over, ticketed him without basis, pulled Plaintiff out of his vehicle and "slammed" him on the hood, and then continued the prosecution on the traffic ticket even though there was no basis for it. This is sufficient to allow the demand for punitive damages against Guco to proceed. Thus, Defendants' motion in this regard is denied.

### V. CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss [Dkt. # 4] is **GRANTED IN PART and DENIED IN PART**. The motion is granted in the following respects:

- All claims against the Village of Yorkville Police Department are dismissed.

- All claims against Chief DeLuca and Officer Guca in their official capacities are dismissed.

- All § 1983 claims against Chief DeLuca are dismissed without prejudice to repleading.

- All claims premised upon the Fifth Amendment are dismissed.

**Tuff v. Village of Yorkville Police Department, Not Reported in Fed. Supp. (2017)**
2017 WL 401241

- All claims premised upon the Eighth Amendment are dismissed.

- All claims premised upon the Ninth Amendment are dismissed.

- The Fourteenth Amendment due process claim based upon the alleged search of Plaintiff's vehicle is dismissed.

- The Fourteenth Amendment due process claim based upon Plaintiff's arrest is dismissed.

- The Section 1983 False Testimony claim against Officer Guca is dismissed.

- The Section 1983 conspiracy claim based upon an alleged agreement between the Defendants to suborn perjury at Plaintiff's traffic ticket trial is dismissed.

- The Section 1983 claim based upon the alleged concealment of exculpatory material is dismissed without prejudice to repleading.

- The Section 1983 Fourteenth Amendment due process claim based on the excessive use of force is dismissed.

- The Section 1983 Fourteenth Amendment due process claim based on the allegation that Defendants permitted and encouraged perjured testimony to be produced by the prosecution at Plaintiff's traffic ticket trial is dismissed.

- The Section 1983 First Amendment claim is dismissed without prejudice to repleading.

- The state law claims of false arrest, assault and battery, illegal search, negligence, and gross negligence are dismissed.

- The state law claims of malicious prosecution and abuse of process are dismissed as to Chief DeLuca.

- The state law claim of abuse of process claims against Officer Guca and the Village of Yorkville are dismissed without prejudice to repleading.

- Any demand for punitive damages against the Village of Yorkville is struck from the Complaint.

The motion is denied in all other the respects.

If Plaintiff intends to replead any of the claims that were dismissed without prejudice to repleading, an amended pleading must be filed within ten (10) days of the date of this Decision and Order. The failure to file an amended pleading within this period of time will be deemed an abandonment of all claims dismissed without prejudice to repleading. If an amended pleading is filed, Defendants are granted leave to move to dismiss some or all of the repleaded claims.

Based upon the above, the Village of Yorkville Police Department is terminated as a defendant in this action. If Plaintiff does not replead any claims against Chief DeLuca within ten (10) days, he will also be terminated as a defendant in this action.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 401241

---

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 6:16-CV-00473**<br>Tuff v. Village of Yorkville et al | — | N.D.N.Y. | Apr. 25, 2016 | Docket |

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (2)**

**Direct History (1)**

⚑  1.  Tuff v. Village of Yorkville Police Department
2017 WL 401241 , N.D.N.Y. , Jan. 30, 2017

**Related References (1)**

2.  Tuff v. Village of Yorkville Police Department
2017 WL 2790529 , N.D.N.Y. , June 27, 2017

**WESTLAW**  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 2115265

2022 WL 2115265
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Tammy TERPENING, Plaintiff,
v.
Anthony MCGINTY, in his judicial
and individual capacities, Defendant.

1:21-CV-1215 (GTS/CFH)
|
Signed 06/13/2022

**Attorneys and Law Firms**

TAMMY TERPENING, Plaintiff, Pro Se, 17 Blair Road, Apt. 6, Kerhonkson, New York 12446.

### <u>DECISION and ORDER</u>

GLENN T. SUDDABY, Chief United States District Judge

 **\*1** Currently before the Court, in this *pro se* civil rights action filed by Tammy Terpening ("Plaintiff") against Anthony McGinty ("Defendant"), is United States Magistrate Judge Christian F. Hummel's Report-Recommendations recommending that Plaintiff's claims against Defendant in his individual and judicial (or official) capacities pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964 ("Title VII") be dismissed with prejudice (and without prior leave to amend), that Plaintiff's claim against Defendant in his individual capacity pursuant to the Americans with Disabilities Act ("ADA") also be dismissed with prejudice (and without prior leave to amend), and that Plaintiff's claim against Defendant in his judicial (or official) capacity pursuant to the ADA be dismissed without prejudice. (Dkt. No. 6.) Plaintiff has not filed an Objection to the Report-Recommendation, and the deadline by which to do so has expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein, including Magistrate Judge Hummel's thorough Report-Recommendation, the Court can find no clear-error in the Report-Recommendation.[1] Magistrate Judge Hummel employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its

entirety for the reasons set forth therein. To those reasons, the Court would add only the following analysis.

[1]     When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

Before the issuance of the Report-Recommendation, Plaintiff filed a motion to appoint counsel and to receive access to the Court's electronic case filing system. (Dkt. No. 4.) In addition, after the expiration of the deadline by which to file an Objection to the Report-Recommendation, Plaintiff filed a second motion to appoint counsel. (Dkt. No. 7.)

Plaintiff's two motions to appoint counsel are not accompanied by documentation that substantiates her efforts to obtain counsel from the public and private sector. *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994); *Cooper v. Sargenti Co., Inc.*, 877 F.2d 170, 172, 174 (2d Cir. 1989). Moreover, because Defendant has not yet appeared and answered, the Court is unable to determine, as a threshold matter, whether Plaintiff's claims are likely to be of substance. *Terminate Control Corp.*, 28 F.3d at 1341. Furthermore, even if the Court were to assume that Plaintiff's claims are likely to be of substance, the relevant factors would, and do, weigh decidedly against the granting of Plaintiff's motions at this time: (a) it appears as though, to date, Plaintiff has been able to effectively litigate this action *pro se*, (b) at this point, it appears that the case does not present issues that are novel or more complex than those raised in most *pro se* civil rights actions, (c) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial (as is the case in many civil rights actions brought by *pro se* litigants), it is highly probable that this Court will appoint trial counsel at the final pretrial conference (should this case survive the filing of any dispositive motions), and (d) the Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this

Case 8:26-cv-00359-AMN-MJK     Document 8     Filed 04/30/26     Page 102 of 112

**Terpening v. McGinty, Not Reported in Fed. Supp. (2022)**
2022 WL 2115265

litigation. *Id.*; *Hodge*, 802 F.2d at 61. For all of these reasons, Plaintiff's two motions to appoint counsel are denied without prejudice.

**\*2**  Finally, Plaintiff has not sufficiently shown cause for the receipt of access to the Court's electronic case filing system. For this reason, the motion to receive such access is denied without prejudice.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Hummel's Report-Recommendation (Dkt. No. 6) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's claims under 42 U.S.C. § 1983 and Title VII against Defendant in his individual and judicial (or official) capacities, and Plaintiff's claim under the ADA against Defendant in his individual capacity, are **DISMISSED with prejudice**; and it is further

**ORDERED** that Plaintiff's claim under the ADA against Defendant in his judicial (or official) capacity **shall be DISMISSED with prejudice** and without further Order of this Court **UNLESS, within THIRTY (30) DAYS** from the issuance of this Decision and Order, Plaintiff files an **Amended Complaint** curing the pleading defects in that claim identified in the Report-Recommendation; and it is further

**ORDERED** that, should Plaintiff file such an Amended Complaint, the Amended Complaint must be a complete pleading that supersedes and replaces his original Complaint in all respects and does not incorporate by reference any portion of that original Complaint; and it is further

**ORDERED** that, should Plaintiff file an Amended Complaint in this action, the Amended Complaint shall be automatically referred to Magistrate Judge Hummel for review pursuant to 28 U.S.C. § 1915(e).

**ORDERED** that Plaintiff's motion to appoint counsel and for access to electronic filing (Dkt. No. 4) is **DENIED without prejudice**; and it is further

**ORDERED** that Plaintiff's second motion to appoint counsel (Dkt. No. 7) is **DENIED without prejudice**.

The Court certifies that an appeal from this Decision and Order would not be taken in good faith.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2115265

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| 1. **Docket 1:21-CV-01215**<br>Terpening v. McGinty | — | N.D.N.Y. | Nov. 09, 2021 | Docket |

 © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (4)**

**Direct History (2)**

1.  Terpening v. McGinty
2022 WL 2657291 , N.D.N.Y. , Apr. 28, 2022

*Report and Recommendation Adopted by*

2.  Terpening v. McGinty
2022 WL 2115265 , N.D.N.Y. , June 13, 2022

**Related References (2)**

3.  Terpening v. McGinty
2022 WL 17418268 , N.D.N.Y. , Oct. 05, 2022

*Report and Recommendation Adopted by*

4.  Terpening v. McGinty
2022 WL 17415121 , N.D.N.Y. , Dec. 05, 2022

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 8575100

2020 WL 8575100
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Gyspy CARDONA
v.
COMMISSIONER OF SOCIAL SECURITY

3:20 CV 558 (RMS)
|
Signed 12/02/2020

**Attorneys and Law Firms**

Keegan A. Drenosky, Shipman & Goodwin, Stamford, CT, for Gypsy Cardona.

Nicol Fitzhugh, SSA-Office of the General Counsel, Kansas City, MO, for Commissioner of Social Security.

RULING ON THE PLAINTIFF'S
MOTION TO APPOINT COUNSEL

Robert M. Spector, United States Magistrate Judge

**\*1** On April 27, 2020, the plaintiff, proceeding as a self-represented party, commenced this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of a final decision by the Commissioner of Social Security ("SSA") denying the plaintiff Disability Insurance Benefits and Supplemental Security Income benefits. On November 23, 2020, the plaintiff filed a motion to appoint pro bono counsel pursuant to 28 U.S.C. § 1915. (Doc. No. 21; *see also* Doc. No. 22).

I. APPOINTMENT OF COUNSEL IN A CIVIL CASE
"A party has no constitutionally guaranteed right to the assistance of counsel in a civil case[,]" *Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011) (citations omitted), and "Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. § 405." *Kirkpatrick v. Astrue*, No. 08-0407, 2008 WL 879407, at \*1 (W.D. La. Mar. 31, 2008).

The Second Circuit has made clear that a *pro se*, or self-represented, litigant must demonstrate first that she cannot afford counsel, and then must demonstrate the likely merit of her claims before counsel is appointed. *See, e.g., Ferrelli*

*v. River Manor Health Care Ctr.*, 323 F.3d 196, 203-04 (2d Cir. 2003); *Hendricks v. Coughlin*, 114 F.3d 390, 393 (2d Cir. 1997). The plaintiff seeks the appointment of counsel because she "[does not] understand" a "federal social security case." (Doc. No. 21 at 5).

A. INABILITY TO AFFORD COUNSEL
On April 30, 2020, the Court granted the plaintiff's motion for leave to proceed *in forma pauperis* based on an affidavit of her current financial situation. (Doc. No. 10). Thus, the plaintiff has established that she cannot afford counsel.

B. MERITS OF THE CLAIM
Turning to the second prong, the merits of the plaintiff's claim, the plaintiff has demonstrated that she timely filed this action. On May 14, 2020, the plaintiff filed her Notice of Appeals Council Action, dated February 18, 2020. (Doc. No. 13; *see also* Doc. Nos. 11). The plaintiff commenced this action on April 27, 2020. As set forth in 42 U.S.C. § 405(g), "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, ... may obtain a review of such decision by a civil action commenced within sixty days after the mailing to [her] of notice of such decision[.]" The "60-day requirement is not jurisdictional, but rather constitutes a period of limitations." *Bowen v. City of New York*, 476 U.S. 467, 479 (1986). "[T]he date of receipt of ... notice of decision by the Appeals Council shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary." 20 C.F.R. § 422.210(c). The plaintiff, therefore, has 65 days from the date of the final decision notice to file suit. Upon request by the Court, the plaintiff submitted a copy of the Notice of Appeals Council decision, dated February 18, 2020 which raised a statute of limitations issue because this action was not filed until April 27, 2020. The latest date the plaintiff could commence this action would have been April 23, 2020. The administrative record, filed on September 29, 2020, however, contains a notice from the Appeals Council granting the plaintiff's request made on or about March 23, 2020 for an extension of time file her appeal. (Doc. No. 19 at 8). On July 13, 2020, the Appeals Council extended the time for the plaintiff to file this action to April 27, 2020. (*Id.* at 6).

**\*2** The plaintiff demonstrated that she has exhausted her administrative remedies and timely filed this action, so she has established the jurisdictional prerequisites to proceeding with her claim. That said, even in a case in which a litigant's position seems likely of substance, the appointment

of counsel is made only in "exceptional circumstances." *Kirkpatrick*, 2008 WL 879407, at *1. When considering whether such circumstances exist, courts often consider: (1) "the type and complexity of the case;" (2) the litigant's "ability to adequately present and investigate her case;" (3) the presence of conflicting testimony that requires skill in the presentation of evidence and cross examination; and (4) the likelihood that the appointment will benefit the litigant, defendant and the court. *Id.* (citations omitted).

Applying these factors to this case, this is a social security appeal, "which by nature is not unduly complex." *Id.* Because the matter is decided on an administrative record by arguments presented in written memoranda, skill in presenting evidence and cross-examination is not required. *Id.* "The mere fact that plaintiff is a layman and that litigation as a *pro se* plaintiff may have challenges is not sufficient reason to appoint counsel. Indeed, every *pro se* plaintiff faces such challenges, yet resources for appointed counsel in civil matters are extremely limited." *Hyde v. Comm'r of Soc. Sec.*, 5:17-CV-247 (CFH), 2017 WL 11470615, at *1 (N.D.N.Y. Oct. 16, 2017). The plaintiff, while proceeding *pro se*, has sought and was granted an extension to commence this action, timely filed this action on her own, consented to the jurisdiction of the Court, and complied with several orders of the Court. She has, thus far, demonstrated an ability to present her case on her own behalf. If unable to secure counsel, the plaintiff will be able to file a brief which sets forth her belief as to why the Administrative Law Judge erred in his decision that the plaintiff was not entitled to social security benefits.

Additionally, the plaintiff repeats twice that she contacted "Legal Aid" in "6/20" and was told they do "not take federal cases." (Doc. No. 21 at 5). The Second Circuit has made clear that before counsel may be appointed, the movant must demonstrate that she is unable to obtain counsel on her own. *See Saviano v. Local 32B-32J*, 75 F. App'x 58, 59 (2d Cir. 2003). The Court notes that the plaintiff had counsel at the administrative level (*see* Doc. No. 19), and upon request, the Social Security Administration "generally provides the plaintiff with a list of attorneys in the area to take these types of cases." *Kirkpatrick*, 2008 WL 879407, at *2. The Motion to Appoint Counsel form completed by the plaintiff advises: "The Court strongly suggests that you contact a minimum of three attorneys." (Doc. No. 21 at 5). Yet, the plaintiff only reached out to "Legal Aid" in "6/20." (*Id.*). The plaintiff has not demonstrated a diligent effort to obtain private counsel on her own, yet there are resources, including the Connecticut Bar Association, available to the plaintiff to seek counsel.

For these reasons, the Court DENIES the plaintiff's motion to appoint counsel as the plaintiff has not demonstrated "exceptional circumstances" which would warrant the appointment of counsel. *Kirkpatrick*, 2008 WL 879407, at *2.

Currently, the plaintiff's dispositive motion was due on November 30, 2020. The Court will extend this briefing deadline to January 30, 2021 to afford the plaintiff time to seek counsel and comply with the scheduling order.

## II. CONCLUSION

For the reasons set forth above, the plaintiff's Motion to Appoint Counsel (Doc. No. 21) is DENIED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 8575100

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 3:20-CV-00558**<br>Cardona v. Commissioner of Social Security | — | D.Conn. | Apr. 27, 2020 | Docket |

**WESTLAW**   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (3)**

**Direct History (1)**

1. Cardona v. Commissioner of Social Security
2020 WL 8575100 , D.Conn. , Dec. 02, 2020

**Related References (2)**

2. Cardona v. Commissioner of Social Security
2021 WL 621254 , D.Conn. , Jan. 28, 2021

3. Gypsy C. v. Kijakazi
2021 WL 4099607 , D.Conn. , Sep. 09, 2021

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 879407

2008 WL 879407
Only the Westlaw citation is currently available.
United States District Court, W.D. Louisiana,
Shreveport Division.

Tanya Patricia KIRKPATRICK

v.

Michael J. ASTRUE, Commissioner,
Social Security Administration.

Civil Action No. 08-0407.
|
March 31, 2008.

**Attorneys and Law Firms**

Tanya Patricia Kirkpatrick, Haughton, LA, pro se.

John A. Broadwell, U.S. Attorneys Office, Shreveport, LA, for Michael J. Astrue, Commissioner, Social Security Administration.

### *MEMORANDUM ORDER*

KAREN L. HAYES, United States Magistrate Judge.

 **\*1** Currently before the court is a motion for appointment of counsel" [doc. # 3] filed by *pro se* plaintiff, Tanya Kirkpatrick. By this motion, plaintiff seeks to have the court appoint counsel to assist her in the above-captioned social security case.

Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. § 405. Thus, the court must look to the more general authority of 28 U.S.C. § 1915(e)(1) to consider plaintiff's request for court-appointed counsel. Section 1915(e)(1) provides that in *in forma pauperis* proceedings, the "court may request an attorney to represent any person unable to afford counsel." This provision does not, however, empower federal courts to make compulsory appointments. *Mallard v. United States District Court for the Southern District,* 109 S.Ct. 1814 (1989). Further, such requests are generally only made where 'exceptional circumstances' are present. *See Robbins v. Maggio,* 750 F.2d. 405 (5th Cir.1985); *Ulmer v. Chancellor,* 691 F.2d. 209, 212 (5th Cir.1982); and *Jackson v. Cain,* 864 F.2d. 1235, 1242 (5th Cir.1989).

While no precise definition of "exceptional circumstances" is available, the courts often consider the following factors when determining whether to appoint counsel:

  1. the type and complexity of the case;

  2. the petitioner's ability to adequately present and investigate her case;

  3. the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination;

  4. the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination."

*See, Parker v. Carpenter,* 978 F.2d. 190 (5th Cir.1992), citing *Murphy v. Kellar,* 950 F.2d. at 293, n. 14; *see also Ulmer,* 691 F.2d. at 213, (citations omitted), and *Jackson,* 864 F.2d. at 1242.

Additionally, the court can consider whether the plaintiff has demonstrated the inability to secure private counsel on her own behalf. *See Jackson,* 864 F.2d. at 1242; *Ulmer,* 691 F.2d. at 213.

Applying the foregoing factors, the court observes that the instant case is a social security appeal, which by nature is not unduly complex. The matter will be decided by the court upon the existing administrative record and after consideration of the parties' arguments as presented in written memoranda. Thus, skill in the presentation of evidence and in cross-examination is not required. Moreover, because these matters are decided on the existing record and written briefs, a trial will not be held.

In her motion, plaintiff stated that she contacted one prospective law firm. However, a casual count reveals more than 900 attorneys practicing in the Shreveport area. Thus, while it is clear that plaintiff expended some minimal effort to retain counsel, it is also manifest that she only scratched the proverbial surface. Under the circumstances, the undersigned cannot conclude that plaintiff diligently endeavored to obtain counsel.

 **\*2** Most plaintiffs in social security cases experience little difficulty in obtaining representation if they seek it. Upon request, the Social Security Administration generally provides the plaintiff with a list of attorneys in the area willing

**Kirkpatrick v. Astrue, Not Reported in F.Supp.2d (2008)**

2008 WL 879407

to take these types of cases. [1] Additionally, because the Equal Access to Justice Act, 28 U.S.C. § 2412, *et seq.,* provides for the recovery of attorney fees to a prevailing plaintiff, the attorney is assured of payment if the claim is successful.

[1]    One source of low or no-cost legal representation for the indigent is Legal Services of North Louisiana, Inc. Their telephone number is 318-222-7186. Also, the Shreveport Bar Association maintains a lawyer referral service to assist the public in obtaining legal services. Their contact number is 318-222-3643. The Shreveport Bar Association also maintains a webpage for its lawyer referral service: http://www.shreveportbar.com/referral.asp.

For these reasons, the court finds that the motion for appointment of counsel should be denied at the present time as the plaintiff has not demonstrated "exceptional circumstances" which would warrant the appointment of counsel. Accordingly,

IT IS ORDERED that plaintiff's motion for appointment of counsel [doc. # 3] be, and it is hereby DENIED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 879407

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 5:08cv00407**<br>KIRKPATRICK v. SOCIAL SECURITY ADMINISTRATION | — | W.D.La. | Mar. 27, 2008 | Docket |

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Kirkpatrick v. Astrue

**History**

There are no History results for this citation.

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.